# EXHIBIT B-029

**ORIGINAL**

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY
CASE NO. 2022-EX-000024

ISSUED TO: William Ligon

FILED IN OFFICE
JUL 11 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

### RESPONSE TO DISTRICT ATTORNEY'S JULY 8, 2022, MEMORANDUM FOR THE COURT REGARDING GRAND JURY APPEARANCE OF WILLIAM LIGON

On July 8, 2022, the district attorney's office advised the Court that when William Ligon appears at the grand jury on July 13, 2022, the grand jury will ask him questions about a legislative committee report that documented and summarized the testimony from the December 3, 2020, committee hearing. The DA's memo to Judge McBurney indicates that the grand jury intends to question Mr. Ligon about the contents of the committee report, as well as the published minutes of the committee session, and the contents of Mr. Ligon's recorded statements at the subcommittee hearing. The DA argues that these topics of the proposed questioning face no constraint based on the Georgia Legislators' Constitutional Immunity provision, Ga. Const. art. III, § 4, ¶ 9.

The DA suggests that Ligon's "republication" of the committee report on Mr. Ligon's website removes the document (as well as the Senator's statements at the committee hearing) from the protection of the Georgia Speech or Debate Clause. The DA's argument is wrong.

1

Here is what the DA proposed in the first four paragraphs of his memo:[1]

1. Statements made by Mr. Ligon or other witnesses in videos of the subcommittee hearings, which were republished on Mr. Ligon's personal website via hyperlink and are currently publicly available on the website.

2. The Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee, which was republished on Mr. Ligon's personal website via hyperlink and is currently publicly available on the website.

3. The Minutes of the Second Hearing of the Election Law Study Subcommittee, which were republished on Mr. Ligon's personal website via hyperlink and are currently publicly available on the website.

4. The Chairman's Report of the Election Law Study Subcommittee of the Standing Senate Judiciary Committee, which was republished on Mr. Ligon's personal website and is currently publicly available at http://www.senatorligon.com/THE_FINAL%20REPORT.PDF. (This republication has since been removed from the homepage of Mr. Ligon's personal website but was publicly available there at least as early as December 21, 2020; this report appears to have been removed from the homepage of Mr. Ligon's personal website on or about January 7, 2021.)

---

[1] The Fifth category of information in the DA's memo is too vague for the witness to preemptively address.

2

The DA's position is that Mr. Ligon may be questioned about the committee reports because they were "republished" on his personal website. This suggestion is premised on the faulty belief that the Speech or Debate Clause is a privilege that protects confidential communications and that it can be waived by the subsequent publication of otherwise privileged acts. That is not the case. The Speech or Debate Clause shields Members from questioning in connection with all their legislative duties, which clearly includes statements made in committee hearings and the preparation of committee reports. The reports are not confidential when published, whether on the General Assembly's website, a Member's website, or in a newspaper of general circulation. The privilege and the immunity are designed to prevent any inquiry into the preparation of the committee report, wherever the report may be published or republished. The fact that the committee report and that the testimony at the hearing are not confidential is entirely irrelevant to the question of whether the executive or judicial branch can compel a legislator to testify about his or her involvement in the indisputably legislative acts of participating in a committee hearing and preparing the committee's report thereon.[2]

---

[2] This Court, too, indicated that the lack of confidentiality is in some way relevant to determination of whether Legislative Immunity applies in certain situations (third-party conversations) (July 6 Order page 4). This court also misconstrued the genetic basis for the privilege. It is the impropriety of the inquiry from the

3

The DA's mistake presumably arises from a misreading of *Gravel*. First, that case did refer to "republication" of certain documents. But what was republished in *Gravel* was not a committee report. Rather, what was republished were the Pentagon Papers. The Pentagon Papers were not subject to the legislative privilege before they were acquired by Senator Gravel or when they were republished by Senator Gravel. The Pentagon Papers were introduced into the committee record, but the Pentagon Papers were not themselves a committee report and were not prepared, or authored by, a Member of the Senate. Second, the Court in *Gravel* held that the republication of the Pentagon Papers was not a legislative act because arranging with a private publisher to publish non-legislative (and perhaps illegally obtained) material was potentially a crime and not "part and parcel of the legislative process." 408 U.S. at 626. It is critical to note that the Court in *Gravel* permitted questioning of the Senator's aide about his involvement of the republication only insofar as "the legislative acts of the Senator are not impugned." *Id.* at 626-27. In other words, nothing in *Gravel* supports the D.A.'s suggestion that Senator Ligon's legislative acts, *i.e.*, his statements during the committee meeting or acts or motivations in preparing the committee report, are not shielded by the privilege simply because they were posted on Senator Ligon's website.

---

executive or judicial branch of government that matters, not the breach of a confidential communication.

4

Unfortunately, there is language in the July 6 Order that may have contributed to this error. In footnote 8 of the July 6 Order, the Court wrote that the republication of a committee report may not be privileged. The Court cites *Hutchinson v. Proxmire*, 443 U.S. 111 (1979), for this assertion. But this Court's suggestion in footnote 8 extended *Proxmire* beyond its express terms. *Proxmire* held that issuing a press release or a newsletter about legislative acts or making a speech about legislative activity is not privileged. But Committee Reports themselves *are* privileged, even when published outside the Senate Chamber:

> Members of Congress could not be held liable for voting to publish a report. Voting and preparing committee reports are the individual and collective expressions of opinion within the legislative process. As such, they are protected by the Speech or Debate Clause. Newsletters and press releases, by contrast, are primarily means of informing those outside the legislative forum; they represent the views and will of a single Member. It does not disparage either their value or their importance to hold that they are not entitled to the protection of the Speech or Debate Clause.

*Hutchinson v. Proxmire*, 99 S.Ct. 2675, 2687, 443 U.S. 111, 133 (1979).

Therefore, the privilege that bars questioning about a legislative act prohibits the grand jury from questioning Mr. Ligon about the preparation of the committee report or anything contained in (or the source of information for) the committee report, and he is absolutely privileged and immune from any interrogation whatsoever about what was said (or why) in a recorded Senate committee hearing.

5

RESPECTFULLY SUBMITTED,

Garland, Samuel & Loeb, PC

*/s/ Donald F. Samuel*
Donald F. Samuel
Special Assistant Legislative Counsel[3]

*/s/ Amanda Clark Palmer*
Amanda Clark Palmer
Special Assistant Legislative Counsel

3151 Maple Drive
Atlanta, Georgia 30305
(404) 262-2225

**GRIFFIN DURHAM TANNER & CLARKSON**

*/s/ James D. Durham*
James D. Durham
Georgia Bar No. 235515
jdurham@griffindurham.com
7 East Congress Street, Suite 703
Savannah, GA 31401
Ph/Fax: 912-867-9140

---

[3] The Special Assistant Legislative Counsels are appearing for the limited purpose of addressing matters relating to legislative privilege.

6

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE: SUBPOENAS FROM SPECIAL PURPOSE GRAND JURY,
CASE NO. 2022-EX-000024

ISSUED TO: Members of the General Assembly (William Ligon; Lt. Governor Duncan; and others)

## CERTIFICATE OF SERVICE

I hereby certify that I have served the foregoing **RESPONSE TO DISTRICT ATTORNEY'S JULY 8, 2022, MEMORANDUM FOR THE COURT REGARDING GRAND JURY APPEARANCE OF WILLIAM LIGON** upon the following counsel this date by hand delivery:

>Fani T. Willis, DA
>Fulton County District Attorney's Office
>Lewis Slaton Courthouse, Third Floor
>136 Pryor Street, S.W.
>Atlanta, Georgia 30305

This the 11th day of July, 2022.

>RESPECTFULLY SUBMITTED,
>
>GARLAND, SAMUEL & LOEB, P.C.
>
>*/s/ Donald F. Samuel*
>Donald F. Samuel
>Special Assistant Legislative Counsel

3151 Maple Drive, N.E.
Atlanta, Georgia 30305
(404) 262-2225
dfs@gsllaw.com

7