# EXHIBIT B-059

FILED IN OFFICE

AUG 16 2022

DEPUTY CLERK, SUPERIOR COURT
FULTON COUNTY, GA

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE SUBPOENAS FROM MAY 2022 )   Case No. 2022-EX-000024
SPECIAL PURPOSE GRAND JURY      )

**SUBPOENAS ISSUED TO:** Presidential Nominee Electors Mark Amick, Joseph Brannan, Brad Carver, Vikki Consiglio, John Downey, Carolyn Fish, Kay Godwin, Cathy Latham, David Shafer, Shawn Still, CB Yadav

## MOTION FOR RECONSIDERATION OF JULY 25, 2022 DISQUALIFICATION ORDER OR, IN THE ALTERNATIVE, FOR A CERTIFICATE OF IMMEDIATE REVIEW

NOW COME the above-referenced subpoena recipients and move this Court to reconsider its denial of their motion for disqualification of the Fulton County District Attorney and her office or, in the alternative, for a Certificate of Immediate Review, showing this Court as follows:[1]

### INTRODUCTION AND FACTUAL BACKGROUND

On July 15, 2022, Senator Burt Jones, one of the sixteen Republican presidential elector nominees in the 2020 election and current candidate for Lieutenant Governor, moved this Court to disqualify District Attorney Fani Willis and her office from their current investigation through the Special Purpose Grand Jury into alleged disruption in the 2020 election based upon a disqualifying conflict of interest. On July 19, 2022, the above-referenced eleven of the sixteen Republican presidential nominee electors joined in Senator Jones's motion and also moved to quash their subpoenas to appear before the Special Purpose Grand Jury.

On July 25, 2022, this Court determined that DA Fani Willis had a direct, actual, and disqualifying conflict of interest in this investigation and issued an order disqualifying her and her office from investigating or prosecuting Senator Jones only. *See* July 25, 2022 Disqualification

---

[1] If this Court believes that oral argument would be useful in resolving this Motion, we request oral argument.

1

Order ("July 25 Order"). Specifically, the Court determined that DA Willis' decision to headline, in her official capacity, a fundraiser for Senator Jones' opponent for Lieutenant Governor created "a plain – and actual and untenable – conflict." July 25 Order at 4. The Court aptly noted

> [T]he fact that concern about the District Attorney's partiality naturally, immediately, and reasonably arises in the minds of the public, the pundits, and – most critically – *the subjects of the investigation* that necessitates disqualification. *An investigation of this significance*, garnering the public attention it necessarily does and touching so many political nerves in our society, *cannot be burdened by legitimate doubts about the District Attorney's motives*. The District Attorney does not have to be apolitical, but her investigations do.

*Id.* at 5 (emphasis added). The Court, however, limited the disqualification of the DA and her office to the investigation of Senator Jones only and declined to disqualify the DA and her team from the investigation as a whole or the investigation of all of the other Republican presidential nominee electors. *Id.* For the reasons set forth herein, the eleven above-named Republican electors respectfully request that this Court reconsider its July 25 Disqualification Order to disqualify the DA and her office from this entire proceeding, from investigation through any possible prosecution, or in the alternative, to include these nominee electors in the Senator Jones carve-out.

## ARGUMENT AND CITATION OF AUTHORITY

### I. A Disqualifying Conflict of Interest Disqualifies a DA and Her Office From All Proceedings, From Preliminary Investigation Through Trial.

Under Georgia law, "a Georgia district attorney is of counsel in all criminal cases or matters pending in [her] circuit. *This includes the investigatory stages of matters preparatory to the seeking of an indictment as well as the pendency of the case.*" *McLaughlin v. Payne*, 295 Ga. 609, 613 (2014) (quoting *King v. State*, 246 Ga. 386, 389 (1980)) (emphasis added). And, as this Court noted in its July 25 Order, when the elected DA is disqualified from an investigation and/or

2

prosecution, so, too, is her entire office. *See* July 25 Order at 5 n. 11 (citing *McLaughlin*, 295 Ga. at 613).

In this case, there is a single Special Purpose Grand Jury investigating a specific subject – "any coordinated attempts to unlawfully alter the outcome of the 2020 elections in [Georgia]." *See* DA Willis January 20, 2022 Letter to Chief Judge Brasher Requesting Special Purpose Grand Jury. As the DA stated in her request letter, "the special purpose grand jury would be empowered to review this matter *and this matter only*, with an investigatory focus appropriate to the complexity of the facts and circumstances involved[.]" *Id.* This Special Purpose Grand Jury will issue a single report making recommendations to this DA's Office as to potential indictments.

This Court has properly determined that the DA and her office have a disqualifying conflict in the Special Purpose Grand Jury investigation and subsequent prosecutions. Georgia law provides that this disqualification, therefore, applies to her and her office's participation in the proceedings as a whole, including the entirety of Special Purpose Grand Jury investigation and any subsequent indictments, not merely to one potential target or witness of the grand jury's investigation. Instead of disqualifying the conflicted prosecuting entity as Georgia law suggests is the appropriate remedy, however, the July 25 Order essentially "disqualifies" or carves out Senator Jones, the individual with whom the prosecuting entity has the actual conflict, from the investigation. Neither Senator Jones's motion nor the Court's July 25 Order cites Georgia authority permitting this reverse disqualification or carve-out imposed in the July 25 Disqualification Order, and undersigned counsel has similarly found none.

For these reasons, the above-referenced nominee electors request that this Court reconsider its order limiting the scope of the DA and her office's disqualification and instead order that the DA's disqualification applies to the entire investigation and all subsequent proceedings.

3

## II. Disqualification of the DA and Her Office from Investigating or Prosecuting Senator Jones Alone Does Not Sufficiently Redress the Conflict or Its Implications for the Other Republican Nominee Electors.

The practical implications of and obstacles unsolved by the current reverse disqualification or carve-out of Senator Jones underscore the need for the disqualification to apply to the DA and her team and to do so more broadly. Even if Georgia law permitted carving out those affected by a DA's actual, disqualifying conflict from the purview of a Special Grand Jury investigation and that DA's Office (as opposed to requiring the disqualification of the DA and her office from that process), the July 25 Order's carve-out is too narrow to address the scope of the DA's disqualifying conflicts and personal interests here. Specifically, it leaves behind fifteen other Republican presidential nominee electors, all of whom have significant roles within the Georgia Republican Party and the majority of whom are and have been public and active political and financial supporters, donors, fundraisers, and campaigners for Senator Jones' campaign for Lieutenant Governor specifically.[2] Many of the presidential elector nominees bringing this Motion are officers in the Georgia Republican Party, members of the State Executive Committee of the Georgia Republican Party,[3] leaders in the Georgia Republican Party's unified campaign effort (the Georgia Victory Program) for all Georgia Republican candidates for office, and/or members of the

---

[2] All eleven electors in this Motion have contributed financially to Senator Jones' campaign, assisted him in raising campaign funds, attended his campaign events, or all three of those things.

[3] The nominee electors who are current and immediate past members of the State Executive Committee of the Georgia GOP David Shafer (Chairman), Shawn Still (Finance Chairman), Joseph Brannan (Treasurer), Vikki Consiglio (Assistant Treasurer), Ken Carroll (Assistant Secretary), Brad Carver (District Chairman), Carolyn Fisher (immediate past First Vice Chairman), and Cathy Latham (immediate past representative of County Chairmen). All members of the State Executive Committee are also members of the Georgia Republican State Committee, which is the governing body of the Georgia Republican Party, and Kay Godwin is also a member of the State Committee.

Georgia Republican Party's fundraising arm, the Georgia Republican Foundation,[4] each of which is a critical component of the Party's campaign effort to elect the nominated Republican candidates in the November 2022 election, specifically including the Republican nominee for Lieutenant Governor. *See* **Exhibit A** (Affidavit of Joseph M. Proenza).

As explained in the attached affidavit, the Georgia Republican Party, acting through its State Executive Committee, funds and directs ground support for the Georgia Republican candidates, especially those for state-wide office, which effort is called "Georgia Victory." Georgia Victory hires field organizers and field directors to serve as the "ground game" for the Republicans on the ballot, and it organizes paid staff and volunteers to campaign for the Republican candidates by knocking on voters' doors to share information and literature about the candidates. *Id.* Georgia Victory 2022 specifically includes campaign efforts for Senator Burt Jones' campaign for Lieutenant Governor. *Id.* The Georgia Republican Foundation financially supports all of the efforts of the Georgia Republican Party, including these campaign functions. *Id.*

Additionally, nominee elector Shawn Still is a candidate for the Georgia Senate on the same Republican ticket as Senator Jones, which is being supported financially and with campaign assistance and resources by the Georgia Republican Party through its officers and the Georgia Victory Program. Like many of the other elector nominees, he has donated to Senator Jones' Lieutenant Governor campaign, and he has raised campaign donations and attended campaign

---

[4] Nominee electors who are currently on the Board of Governors of the Georgia Republican Foundation: Daryl Moody (Chairman), David Shafer, Shawn Still, Vikki Consiglio, Mark Amick. Nominee electors who are current or past members of the Republican Foundation within the last two years: Daryl Moody, David Shafer, Shawn Still, Vikki Consiglio, Mark Amick, Joseph Brannan, CB Yadav, Brad Carver, Mark Hennessy, and Burt Jones.

5

functions for Senator Jones. As of August 20, 2022, Mr. Still and Senator Jones will share campaign space and resources in their Johns Creek office.

Excising Senator Jones from the grasp of the Fulton County DA and the Special Purpose Grand Jury because of the DA's disqualifying conflict while leaving the other presidential elector nominees, particularly these eleven elector nominees who are inextricably intertwined with Senator Jones and his campaign, is akin to removing a naval officer from the ambit of a biased, conflicted court martial tribunal but leaving his fellow officers, lieutenants, and sailors, all of whom are accused of performing the same acts as the naval officer, behind to be judged by that conflicted tribunal. Put another way, this situation is analogous to deciding that the referees in an NCAA basketball game are biased against one of the two team's head coach (and perhaps his team in general) and seeking to cure that bias by removing the head coach from the team but leaving behind the assistant coaches and players to compete in a game refereed by those same biased referees.

Obviously, the stakes in this matter are much higher than a basketball game. But in these analogous scenarios, it seems plain that removing the naval officer or the head coach alone does not cure the disqualifying conflict: instead, the removal of the person or entity with the disqualifying conflict themselves from the playing field is necessary to sufficiently cure the taint and bias. Here, that is the DA and her office. Absent that result, however, and at the very least, the entire hypothetical naval squad should be protected from the biased court martial tribunal, and the entire hypothetical basketball team should be excused from the game with the biased referees.

Indeed, because Senator Jones has been removed from this investigation, there is arguably an even greater likelihood that the officers of his campaign partners, his running mates, his financial supporters, and his key political allies could be treated even more harshly. Having been

prevented by this Court's Disqualification Order from affecting Senator Jones personally any longer, the DA's Office could nonetheless directly impact Senator Jones and his campaign through publicly damaging the reputations and financial resources of his political party and his key political allies and financial supporters, who are the Party's prominent officers, members, donors, and candidates (i.e., the other Republican presidential nominee electors, among others). In at least this way, the limitations of the July 25 Disqualification Order are insufficient to address the legitimate concern identified therein – concern that "the District Attorney's partiality naturally, immediately, and reasonably arises in the minds of the public, the pundits, and – *most critically – the subjects of the investigation.*" July 25 Order at 5 (emphasis added).[5]

Given how inextricably intertwined the other Republican presidential nominee electors are in their capacity as officers of the Georgia Republican Party and as key political allies and financial supporters of Senator Jones' campaign, the DA and her office's disqualifying conflict with Senator Jones spills over onto them, and her involvement in the investigation into and potential indictment of their conduct suffers from the same "entirely reasonable concerns of politically motivated prosecution:" to wit, are these elector nominees -- who are "accused" of performing the same acts and functions as Senator Jones as Republican presidential elector nominees, who are officers in the organization responsible for partnering with Senator Jones' campaign, who are public political and financial supporters of his campaign, and who, at least in one case, is a candidate for office himself and campaigning directly with and on the same Republican ticket with Senator Jones --

---

[5] It also seems contrary to fundamental notions of fairness that Senator Jones, who served as a Republican presidential nominee elector in 2020 in the same material way as did all of the movants here, could have his virtually identical conduct assessed entirely differently by a different, objective prosecutor, potentially resulting in identical conduct being treated and prosecuted (or not prosecuted) very differently. The material actions of the Republican elector nominees in the 2020 election were the same, and the assessment of their righteousness and/or the appropriate consequences (or lack thereof) for those actions logically should rise or fall together.

being singled out or treated more harshly because of a desire to discredit Senator Jones and/or help his opponent. *Id.* As the Court noted in the context of Senator Jones himself, "the actual answer does not matter . . . .[n]or is it knowable, which is another reason to separate the District Attorney and her office from any investigation . . . ." *Id.* and n. 9. Under these circumstances, the public, the pundits, and the subjects of this investigation cannot have any confidence that the investigation and any decisions as to the ultimate prosecution of any of these elector nominees will not have been infected by this personal and political actual conflict the Court has already determined exists.[6]

At this juncture, it is difficult to fully predict all of the practical and legal issues that excising Senator Jones alone instead of disqualifying the DA and her team themselves could ultimately cause, but at least one foreseeable scenario raises significant fairness and due process concerns For instance, if the DA and/or her office were to ultimately indict one or more of the eleven nominee electors still under their purview and such nominee elector were to go to trial, Senator (or perhaps by then Lieutenant Governor ) Jones could be an important or even necessary witness in that person's defense. But because of the DA's disqualifying conflict with Senator

---

[6] Nor is such a result consistent with the DA and her team's ethical obligations not to allow their "professional judgment or obligations to be affected by the prosecutor's personal, political, financial, professional, business, property, or any other relationships. A prosecutor should not allow interests in personal advancement or aggrandizement to affect judgments regarding what is in the best interests of justice in any case." ABA CRIMINAL JUSTICE STANDARD FOR THE PROSECUTION FUNCTION 3-1.7. The ABA Standards for the Prosecution Function are cited favorably in the comments to Georgia Rule of Professional Responsibility 3.8, Special Responsibilities of a Prosecutor. *Cf.* 28 U.S.C. § 528 (requiring Attorney General to "require the disqualification of any officer or employee of the Department of Justice, including a United States attorney or a member of such attorney's staff, from participation in a particular investigation or prosecution if such participation may result in a personal, financial, or political conflict of interest, or the appearance thereof."); USAM 9-27.260 (in determining whether to commence or recommend prosecution, an attorney for the government should not be influenced by, among other things, a person's political association or the attorney's own personal feelings concerning the person, the person's associates, or the possible effect of the decision on the attorney's own professional or personal circumstances).

Jones, he may reasonably fear that testifying in a trial that she or her office is prosecuting creates palpable legal risks for him that he is unwilling to take.

For example, all of the Republican nominee electors have publicly made clear that they did not and could not have committed any crime in relation to the performance of their duties as nominee electors in the 2020 election and that, in fact, their actions are specifically permitted and protected by federal and state law. *See, e.g.,* July 19, 2022 Motion to Quash and Disqualify at 7-18 ("July 19 Motion") (outlining that the nominee electors' actions are required by, protected by, and permitted by federal and state law and that the DA and her office lack jurisdiction to criminalize any such actions). The DA and her team have yet to acknowledge or agree with these facts or legal points, and if they indicted a nominee elector in this hypothetical scenario, they plainly will still not have accepted these truths. Should Senator Jones testify to the true facts establishing the lawful conduct of all of the nominee electors on behalf of any indicted elector, he would run the risk that the DA, who has already been disqualified from investigating or prosecuting him because of her actual conflict of interest, would attempt to indict him for false statements or perjury simply because she does not believe or want to accept his truthful testimony. In other words, to testify in this scenario for his fellow electors, Senator Jones would be forced to place himself back in the crosshairs of a DA's office who has been disqualified from investigating or prosecuting him because of a direct conflict of interest with him.

And should Senator Jones be unwilling to do that (which would not seem unreasonable under those circumstances), the hypothetical indicted fellow elector would be deprived of the benefit of his presumably helpful, perhaps even necessary and exculpatory, testimony. Other similar fairness and due process problems that are not currently foreseeable, at least to the undersigned, would also likely arise. And by the time these circumstances present and reveal

themselves, it will be too late to cure them. These potential fairness and due process problems are presumably at least one of the reasons that Georgia law requires the disqualification of the DA and her team from an investigation when there is an actual conflict of interest, not the siphoning off or carving out of one of the investigated.

Importantly, none of this is necessary, and these potential problems are avoidable. If this investigation is truly aimed at seeking the truth, there is no objective reason another District Attorney's Office appointed by the executive director of the Prosecuting Attorneys' Council of Georgia in accordance with Georgia law could not conduct this investigation adequately, fairly, and free from the existing personal and political conflicts with this DA and her office. The DA's established actual conflict with Senator Jones combined with her targeting of only Republicans, particularly Republican officers, officials, and candidates whose political and financial efforts are inextricably intertwined with Senator Jones' campaign, establish both an actual conflict and the appearance that the DA has acquired a personal and political interest in this investigation and/or subsequent prosecutions, which is a separate and independent ground for her disqualification. *See, e.g., Whitworth v. State*, 275 Ga. App. 790, 793 (2005) (outlining that two grounds for prosecutor disqualification are when there is a conflict of interest and when the prosecutor has acquired a personal interest or stake in the investigation/prosecution).

If this investigation is truly intended to get to truth and be guided by the law and the facts, and not about political or personal advancement, advantage, or persecution, the DA would voluntarily exclude herself and her office from the investigation at this point where an actual, disqualifying conflict of interest that threatens the objectivity and integrity of this investigation and any subsequent proceedings has been found. She could and should have requested the

appointment of a non-conflicted DA and office under O.C.G.A. § 15-18-5(a).[7] As this Court correctly noted, "An investigation of this significance, garnering the public attention it necessarily does and touching so many political nerves in our society, *cannot be burdened by legitimate doubts about the District Attorney's motives*. The District Attorney does not have to be apolitical, *but her investigations do*." *See* July 25 Order at 5 (emphasis added). Under these circumstances and to protect the integrity of this investigatory process, we ask that this Court reconsider its July 25, 2022 Disqualification Order and exclude the DA and her office from this investigation and any subsequent proceedings *in toto* or, in the alternative, to include the other presidential nominee electors in the Court's carve-out from her investigation and future proceedings.

### III. In The Alternative, The Nominee Electors Seek a Certificate of Immediate Review.

If the Court declines to reconsider its July 25, 2022 Disqualification Order, the nominee electors request that this Court issue a Certificate of Immediate Review pursuant to O.C.G.A. § 5-6-34(b). The issues involved in this disqualification analysis turn on facts and circumstances that have not been developed with this level of specificity under Georgia law. Indeed, the current caselaw as to disqualification of a prosecuting attorney's office in Georgia on both grounds -- conflict of interest and personal stake -- is relatively limited and narrow in scope. No appellate Court in Georgia has directly considered the precise issue presented in this case—namely, whether a District Attorney's actual conflict of interest in an investigation or prosecution can be "cured" solely by carving out the individual with whom the DA has the actual conflict as opposed to disqualification of the DA and her office from the investigation

---

[7] This statute provides that when a district attorney's office is disqualified from an investigation or prosecution, the district attorney shall notify the executive director of the Prosecuting Attorneys' Council of the State of Georgia, who shall appoint a replacement.

itself and any subsequent prosecutions.

The importance of ensuring that the disqualification issue is fully and accurately resolved *is* clear under Georgia law: for a prosecutor to have a conflict of interest is "contrary to public policy" and "can warrant a new trial." *McLaughlin*, 295 Ga. at 294 (citations omitted). Getting clear direction from the appellate courts on this critical issue at this early juncture in the process is a compelling and immediate interest. The eleven nominee electors, therefore, respectfully request that the Court grant a Certificate of Immediate Review of its decision if it declines to reconsider its July 25 Disqualification Order.

### IV.   **Conclusion and Prayer for Relief**

For the reasons set forth herein, these eleven nominee electors respectfully request the following relief:

1) Reconsideration of the July 25 Disqualification Order to disqualify the DA and her office from the entire investigation and any subsequent proceedings; or

2) In the alternative, reconsideration of the July 25 Disqualification Order to include all of the Republican presidential nominee electors in the "carve-out" from this investigation and subsequent proceedings previously applied only to Senator Jones; or

3) In the alternative, issue a Certificate of Immediate Review if this Court declines to reconsider its July 25 Disqualification Order; and

4) that this Court grant all other appropriate relief.

# EXHIBIT A

Respectfully submitted this the 16th day of August,

Holly A. Pierson
Georgia Bar No. 579655
PIERSON LAW LLC
2951 Piedmont Road NE
Suite 200
Atlanta, GA 30305
hpierson@piersonlawllc.com
404-353-2316

Kimberly Bourroughs Debrow
Georgia Bar No. 231480
STRICKLAND & DEBROW LLP
246 Bullsboro Drive, Suite A
Newnan, GA 30263
kimberly@debrowlaw.com
678-350-1095

*Counsel for Nominee Electors*

## CERTIFICATE OF SERVICE

I hereby certify that I have filed the foregoing *Motion to Reconsider July 25, 2022 Disqualification Order or, In the Alternative, for a Certificate of Immediate Review* with the Clerk of Court of the Fulton County Superior Court and that date-stamped copy will be hand-delivered to the Fulton County District Attorney's Office today.

Respectfully submitted this the 16th day of August, 2022.

_____
Holly A. Pierson
Georgia Bar No. 579655

14

IN THE FULTON COUNTY SUPERIOR COURT
STATE OF GEORGIA

IN RE SUBPOENAS FROM MAY 2022     )     Case No. 2022-EX-000024
SPECIAL PURPOSE GRAND JURY    )

**SUBPOENAS ISSUED TO:** Presidential Nominee Electors Mark Amick, Joseph Brannan, Brad Carver, Vikki Consiglio, John Downey, Carolyn Fish, Kay Godwin, Cathy Latham, David Shafer, Shawn Still, CB Yadav

## AFFIDAVIT OF JOESEPH M. PROENZA

1. My name is Joseph M. Proenza, and I am over the age of twenty-one (21) and am competent in all respects to testify to the matters set forth herein.

2. I am a professional political consultant, advisor, and campaign manager, and I have served in these capacities since 2018.

3. From May 2019 through May 2021, I served as the Political Director for the Georgia Republican Party.

4. From January 2020 through January 2021, I also served as the Political Director of the Georgia Republican Party's Victory Program.

5. From November 2020 through January 2021, I served as the Deputy Election Day Operations Director (EDO) for the Georgia Republican Party's Victory Program.

6. Since June 2021 through July 2022, I have served as a campaign manager for various Republican candidates for state and federal offices in Georgia. I have stayed apprised of the operations and efforts of the Georgia Republican Party and its Victory Program during this time as well.

7. From my service as the Political Director of the Georgia Republican Party and its Victory Program, I am familiar with the operations and structure of the Georgia

Republican Party. I am also familiar with the operation and structure of the Victory Program.

8. The Georgia Republican Party's governing body is the State Convention. The Georgia Republican State Committee is analogous to the Party's Board of Directors, and the Georgia Republican State Executive Committee is analogous to the Party's C-suite.

9. The Georgia Republican Foundation is one of the Party's main fundraising bodies. It supports all of the operations and efforts of the Georgia Republican Party, including campaign functions.

10. The Georgia Republican Party, acting through its State and Executive Committee, funds and leads a unified campaign effort for the benefit of all Georgia Republican candidates for office called the Victory Program.[1]

11. The Victory Program funds and directs ground support of Georgia Republican candidates, especially those for state-wide office. The Victory Program hires field organizers and field directors to serve as the ground game for these Republicans on the ballot. It organizes paid staff and volunteers to knock on voters' doors to share information and literature about the candidates.

12. The Victory Program is particularly important and helpful to down ballot statewide races like that for Lieutenant Governor. Georgia Victory 2022 specifically includes campaign efforts on behalf of Senator Burt Jones in his bid for the Lieutenant Governor position.

---

[1] The Georgia Republican Party's Victory Program has variations to its name for different elections, but the operations and functions of the Victory Program are largely the same from election to election.

13. Given their roles as officers of the Georgia Republican Party and as key political allies and financial supporters of Senator Jones' campaign, the eleven Republican presidential nominee electors referenced in the case caption above are inextricably intertwined with Senator Jones' Lieutenant Governor campaign and with the Victory Program.

FURTHER AFFIANT SAYETH NOT.

_____
JOSEPH M. POENZA

DISTRICT OF COLUMBIA: SS
Sworn to and subscribed before me
this 16th day of August, 2022.

_____
Notary Public

My Commission Expires
August 31, 2024

3