# EXHIBIT B-070

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

FILED IN OFFICE
AUG 23 2022
DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN RE:                                          CASE NO.
**SPECIAL PURPOSE GRAND JURY**         **2022-EX-000024**

<u>**RESPONSE IN OPPOSITION TO**</u>
<u>**WITNESS GOVERNOR BRIAN P. KEMP'S MOTION TO QUASH**</u>

**COMES NOW**, Fani T. Willis, District Attorney, Atlanta Judicial Circuit,

in her capacity as the legal advisor to the Fulton County Special Purpose Grand

Jury ("SPGJ") and makes this its Response in Opposition to the Motion to Quash

filed by the witness Governor Brian P. Kemp ("Movant") by showing and stating

the following.

## I. STATEMENT OF FACTS

The investigative posture of this matter necessarily precludes a full airing of

the status of the grand jury's work, and how any individual witness fits into the

whole.  As will be addressed further below, Movant unquestionably has

information relevant, material, and necessary to the grand jury investigation.

Resisting his appearance before the grand jury, however, Movant attaches

Exhibits A through X to his motion to quash.  These attachments primarily

contain a purportedly complete email thread and text correspondence between

Movant's counsel ("counsel") and representatives of the District Attorney's

Office.  The District Attorney submits that these Exhibits warrant this Court's close scrutiny.[1]

First, it is important to note the unexplained absence of emails between counsel and the District Attorney's Office that by virtue of their dates should have been part of counsel's correspondence thread.[2]   Simply put, without

---

[1]      As an aid to the Court, beginning with Movant Exhibits J and L, the same email thread is repeated in subsequent Exhibits M, N, O, Q, and R with the addition (or omission) of only one or two email(s) to the same thread.  Consequently, most of the emails in these Exhibits are simply repeats.  Wading through this correspondence thread inclusive of the emails omitted by counsel in District Attorney's Exhibits A-E (see fn. 2, supra) and given the confusingly repetitious nature of Movant's Exhibits, it is estimated that the District Attorney's Office communicated with counsel approximately thirty-three times about securing testimony, while counsel communicated with the District Attorney's Office approximately twenty-six times, including Motion Exhibits S-V which are four letters sent on four different dates purporting to comply with the subpoena duces tecum.

[2]      See **District Attorney's Exhibit A--*curiously omitted in the email thread in Movant's Exhibits Q and R***: containing July 22, 2022 apology email from counsel and acceptance email from the undersigned.  **District Attorney's Exhibit B--*which should have been part of the email thread in Movant's Exhibits Q and R***: containing: (1) two July 11, 2022 emails between counsel and the D.A.'s Office re Mr. Cody Hall's grand jury testimony, (2) a July 9, 2022 email from counsel to the D.A.'s Office re Mr. Hall's attorney/client privilege assertions, (3) two June 25, 2022 emails between counsel and the D.A.'s Office re service of Mr. Hall's subpoena and scheduling Hall's testimony, (4) two June 23, 2022 emails between the D.A.'s Office and counsel re service of Mr. Hall's subpoena and scheduling his testimony, (5) a June 22, 2022 email from the D.A.'s Office to counsel re service of Mr. Hall's subpoena, (6) a June 9, 2022 email from counsel to the D.A.'s Office re representation of Mr. Hall, and (7) a June 6, 2022 email from the D.A.'s Office to counsel re contact information for Mr. Hall.  **District Attorney's Exhibit C--*which should have been part of the email thread in Movant's Exhibits N, O, Q, and R***:  containing June 15, 2022 emails between the D.A.'s Office and counsel setting up a July 25 meeting time to discuss Movant's testimony.  **District Attorney's Exhibit D--*which should have been part of the email thread in Movant's Exhibits L-O, Q, and R***: containing a May 12, 2022 email from counsel to the D.A.'s Office preparing for their May 12, 2022 meeting about Movant's interview.  **District Attorney's Exhibit E--*which should have been part of the email thread in Movant's Exhibit J-O, Q, and R***: containing (1) a May 10, 2022 email from the D.A.'s Office to counsel trying to set up a meeting on May 12, 2022, (2) a May 11, 2022 email from the D.A.'s Office to counsel trying to set up a meeting on May 12, 2022, and (3) two May 11, 2022 emails between counsel and the D.A.'s Office re a May 12, 2022 meeting time.

explanation Movant omitted some relevant exchanges in the email

correspondence.  Next, some emails had been part of counsel's correspondence

thread in one Exhibit but unexplainedly disappeared from the thread in another

Exhibit.[3]  Additionally, there are references to emails that do not appear in the

thread in *any* Exhibit.[4]  These examples clearly illustrate a rather unsophisticated

manipulation of counsel's correspondence to shape the narrative in favor of

Movant's self-serving bullet points.  Mot. at 2-7.  The manipulation of counsel's

correspondence thread is both unprofessional and disappointing, in addition to

undermining the entire premise of the motion.

What Movant's Exhibits *do* reveal, however, is the clear statement by the

District Attorney to counsel as early as June 21, 2021, that the District Attorney

does **not** provide a witness in a criminal investigation—even Movant—with

interview questions in advance.[5]  Appropriately, information was provided to

Movant about the *topic* of the investigation questions, i.e.,

---

[3]     Compare, e.g., Movant email thread in Exhibits F and H, missing February 7, 2022 email
from counsel; Movant email thread in Exhibits O and Q, missing two June 15, 2022 emails
between counsel and the D.A.'s Office.

[4]     See, e.g., Movant's Exhibit J, April 25, 2022 email from counsel to the D.A.'s Office
referencing the D.A.'s Office's "email below" which was omitted; Movant's Exhibit O, June
15, 2022 email from the undersigned to counsel thanking him for his email which was omitted.

[5]     Mot. Exh. C, June 21, 2021 email from the District Attorney to counsel; Mot. Exh. J,
April 25, 2022 email from the D.A.'s Office informing counsel that "there is no information we
wish to discuss" before the special purpose grand jury begins calling witnesses on June 1.

alleged interference in the administration of the November 2020 election, to include but not limited to the now well-known phone call from our former President to the Georgia Secretary of State.[6]

Yet, it appears that obtaining the interview questions in advance was in fact the purpose of the "attorney proffer" sought by Movant's counsel over the last seventeen months of communications with the District Attorney. This was finally revealed in the telling July 20, 2022 email in which counsel directed the District Attorney in the "measures" he required for her Office to secure Movant's testimony, including providing counsel with the interview "questions in writing by noon on Thursday, July 21, 2022." Mot. Exh. Q. Under these circumstances, it is perhaps not surprising that the District Attorney found counsel's attempts to control the SPGJ's criminal investigation into possible election interference "utterly ludicrous." Mot. Exh. R.

The District Attorney has repeatedly stated that this investigation is not a game.[7] The fact that "gamesmanship" may be a factor in the instant motion to quash is not a deterrent. The baseless and inflammatory accusations of unethical behavior hurled about by Movant—while unpersuasive and unhelpful to the

---

[6]    Mot. Exh. C, June 21, 2021 email from District Attorney to counsel; Mot. Exh. P, June 22, 2022 letter from the D.A.'s Office to Movant detailing information sought by the SPGJ via testimony and subpoena duces tecum to Movant.

[7]    See, e.g., https://www.nbcnews.com/meet-the-press/meetthepressblog/fulton-county-da-expect-subpoenas-trump-associates-rcna36948.

grand jury's work—will not deter the SPGJ or the District Attorney's Office from

securing necessary testimony from any and all relevant witnesses. And to that

end, the District Attorney submits that the instant motion to quash is wholly

without merit.

## II. ARGUMENT AND CITATIONS OF AUTHORITY

### A. SOVEREIGN IMMUNITY IS NO BAR TO SECURING MOVANT'S COMPLIANCE WITH A LAWFULLY ISSUED *WITNESS* SUBPOENA FOR TESTIMONY BEFORE A GRAND JURY INVESTIGATING THIRD-PARTY CRIMINAL ACTS

Movant claims that his witness subpoena is completely barred by sovereign

immunity "because the DA's Office is seeking to compel the Governor to submit

to the Court's legal process, and the State has not waived immunity to such

process." Mot. at 8. Movant's argument demonstrates a fundamental

misunderstanding of the doctrine of sovereign immunity.

Both Movant and the District Attorney agree that the case of *Lathrop v.*

*Deal*, 301 Ga. 408 (2017) controls this issue. In the first sentence of *Lathrop*, our

Georgia Supreme Court stated plainly the parameters of the doctrine:

> Simply put, the constitutional doctrine of sovereign immunity forbids our
> courts to entertain a **lawsuit against the State** without its consent.

*Id.* (emphasis added).

Thereafter, then-Justice Blackwell writing for the Court traced the 230-year

development of sovereign immunity in Georgia from its English common law

roots through its more recent Constitutional and decisional iterations. *Lathrop,*

supra at 411-425.[8]  Sovereign immunity construed broadly protects all levels of

government from suit, and any lawsuit barred by sovereign immunity is subject to

dismissal by the courts for lack of subject matter jurisdiction. *Conway v. Jones,*

353 Ga. App. 110, 111 (2019); O.C.G.A. § 9-11-12 (b) (1).

The problem for Movant in relation to this doctrine is the very plain

requirement in the cases he cites (and those cited in *Lathrop*) that the state or

government agency involved must be facing a **lawsuit** for sovereign immunity to

even be applicable.[9]  Completely ignoring the fundamental principle that the

sovereign is protected from *suit*, Movant simply hurdles to his legal conclusion

that sovereign immunity protects him from submitting to *this Court's* "legal

---

[8]     *See Tift v. Griffin,* 5 Ga. 185, 189 (1848); O.C.G.A.§ 1-1-10 (c) (10) (codifying adoption
of English common law); *Sheley v. Bd. Of Public Education,* 233 Ga. 487 (1975) (1974
amendment to Ga. Const. of 1945, Art. 1 Sec. II, Par. X gave constitutional status to the
common law doctrine of sovereign immunity); *Martin v. Ga. Dep't of Public Safety,* 257 Ga.
300, 302 (2) (purchase of liability insurance for employees of state department waves sovereign
immunity of the department under new Ga. Const. of 1983, Art 1, Sec. II, Para. IX (d));
*Georgia Dept. of Natural Resources v. Center for a Sustainable Coast,* 294 Ga. 593 (2014)
(doctrine extends to suits for injunctive relief); *Olvera v. Univ. System of Ga. Board of Regents,*
298 Ga. 425, 428 (2016) (doctrine extends to suits for declaratory relief).

[9]     *See* Mot. at 8: *Lathrop,* supra (plaintiffs filed **lawsuit** against twenty state officers
seeking injunctive and declaratory relief); *DNR v. Center for Sustainable Coast,* supra (Center
filed declaratory judgment **lawsuit** against the Department of Natural Resources); *Conway,*
supra (plaintiff filed **lawsuit** against Gwinnett County sheriff); *McConnell v. Dept. of Lab,* 302
Ga. 18 (2017) (plaintiff filed **lawsuit** against Georgia Department of Labor for negligence);
*Dep't of Pub. Safety v. Johnson,* 343 Ga. App. 22 (2017) (plaintiff filed **lawsuit** against
Georgia Department of Public Safety for negligence).

process." Mot. at 8. Taken to its logical conclusion, Movant's position seems to be that the judicial branch of the government has no authority over him unless he agrees to it.[10] Of course, Movant's assertions about "judicial process" are in no way related to the doctrine of sovereign immunity from *suit*. Further, he completely fails to provide any nexus whatsoever between the doctrine's protection from lawsuit and his claim of "protection" from being compelled by this Court to appear as a mere witness—albeit one with necessary information—in a grand jury investigation of third-party criminal acts.

But Movant's argument does not end here. Next, he misapplies case law related to a secondary consideration in those instances where the State **is** facing a lawsuit, and sovereign immunity might apply. This secondary consideration is whether the state entity was acting in an "official capacity" during the *actions that gave rise to the lawsuit*.

To that end—and completely ignoring the "lawsuit" aspect—Movant claims that the subject matter about which the SPGJ seeks his *witness* testimony "arises entirely from the performance of his official duties as Governor," and this Court

---

[10]   *See e.g.*, Mot. at 11 (forcing Movant "to submit to judicial authority" without his consent is "fundamentally inconsistent with the nature of sovereign immunity"); Mot. at 12 ("sovereign immunity applies to 'all unconsented-to legal actions' [cite] which necessarily includes subpoena enforcement"); Mot. at 12 (this Court will "subject the Governor, in his official capacity, to judicial process without the [Governor's] consent. The Court lacks jurisdiction to do that").

cannot "decree" the appearance of the Governor because to do so would control "his actions in his official capacity" which is "forbidden" by sovereign immunity. Mot. at 9. Again, the cases upon which Movant relies involve lawsuits against a government agency/employee.[11] In those cases, the application of sovereign immunity turned on whether the government entity being sued was acting in an individual or official capacity during the actions that gave rise to the lawsuit. That is certainly not the posture in which we find the Movant—who is not being sued at all. Sovereign immunity simply does not apply to Movant who is a mere witness before the special purpose grand jury investigating unlawful election interference in Georgia.[12] Absent a lawsuit to trigger sovereign immunity, the "official" or "unofficial" manner in which Movant obtained pertinent information related to possible unlawful election interference in Georgia is simply irrelevant.[13]

---

[11]    *Dennison Mfg. Co. v. Wright*, 156 Ga. 789 (1923); *Romano v. Georgia Dep't of Corr.*, 303 Ga. App. 347, 350-351 (2010); *Wang v. Moore*, 247 Ga. App 666, 669 (2001).

[12]    The Supreme Court has affirmed that even *sitting Presidents* can be required to comply with and provide evidence for state-level grand jury subpoenas. *See Trump v. Vance*, 140 S. Ct. 2412 (2020).

[13]    *See* Ga. Const. of 1983, Art I, § II, Para. IX (d) (state employees "shall not be subject to **suit or liability, and no judgment** shall be entered against them, for performance or non-performance of their official functions.") (Emphasis supplied).

Perhaps recognizing the requirement of a lawsuit in relation to sovereign immunity, Movant next argues that the doctrine prohibits the grand jury's subpoena regardless of whether the Governor is "a mere witness." Mot. at 10. To make this argument, Movant steps down from the lofty heights of "sovereignty" and turns to the line of federal cases in which,

> a federal employee may not be compelled to obey a subpoena contrary to his federal employer's instructions **under valid agency regulations**.

*Boron Oil Co. v. Downie*, 873 F2d 67, 69 (1989) (emphasis supplied). In *Boron Oil*, the case upon which Movant primarily relies as comporting "perfectly with Georgia law," Mot. at 11, the 4th Circuit held that the Environmental Protection Agency's regulation 40 C.F.R. §2.401 authorized the agency head to prevent a subordinate employee from testifying about agency matters in a state civil suit. Here, of course, Movant is not a subordinate federal employee, and he cannot be instructed by his federal employer to refuse to testify. Most importantly, Movant completely discounts that his cited cases required a valid federal rule or regulation that authorized the federal agency head to prevent the dissemination of information about agency matters.[14] It seems obvious that this line of federal

---

[14]     *See Smith v. Cromer*, 159 F3d 875, 879 (4th Cir. 1999) (DOJ regulation 28 C.F.R. §§ 16.21, *et seq.* authorized quashing subpoena); *In re Elko Cnty. Grand Jury*, 109 F3d 554 (9th Cir 1997) (USDA regulation 7 C.F.R. § 1.211 (c) prevented Forest Service employee's testimony); *Houston Bus. J., Inc. v. Off. of Comptroller of Currency, U.S. Dep't of Treasury*, 86 F3d 1208 (D.C. Cir. 1996) (documents protected by bank-examination privilege and "final agency action" pursuant to 5 U.S.C. § 704).

cases does *not* comport "perfectly" with Georgia law; indeed, the cases have nothing to do with Georgia law whatsoever.

In the end, Movant's sovereign immunity argument tacks back and forth through unfavorable waters, hoping to catch the wind. None is available:

- Movant cites a case relating to the principle that an action in which a judgment for the plaintiff would affect or control property or action of the state is against the state—regardless of the named defendant. Mot. at 9, 11, *citing Roberts v. Barwick*, 187 Ga. 691, 695 (1939). He, however, ignores that there must be an "action" and a "judgment" that directly affects the purse or actions of the state. Also, his cited case pre-dates the tort consequences of state action established in Ga. Const. of 1983, Art. I, Sec. II, Para. IX (d). *See Miree v. United States*, 490 F. Supp. 768, 772-773 (N. D. Ga. 1980).

- Movant cites *Goolsby v. Regents of Univ. Sys. of Georgia*, 141 Ga. App. 605, 609 (1977), disapproved on other grounds in *Deal v. Coleman*, 294 Ga. 170 (2013), to claim that sovereign immunity withholds the court's jurisdiction over the state "without regard for the basis of the suit"; but he fails to include the fact that there must at least be a suit—regardless of its basis. Mot. at 11.

- Movant claims "a subpoena is itself a 'suit'" and so sovereign immunity protects him from a subpoena/suit. Mot. at 11. Yet, the case he cites in support, *McCobb v. Clayton Co.*, 309 Ga. App. 217, 217-218 (2011), holds no such thing. The case does not address Movant's "subpoena/suit" contention, and moreover the Court of Appeals found sovereign immunity **did not** protect Clayton County from the tort consequences of its actions. *Id.*

- Movant cites the tribal immunity cases of *Bonnet v. Harvest (U.S.) Holdings Inc.*, 741 F3d 1155, 1159-1160 (10th Cir. 2014) and *Alltell Commcn's, LLC v. DeJordy*, 675 F3d 1110, 1105 (8th Cir. 2012) for the notion that a subpoena is a "suit" for purposes of sovereign immunity. Mot. at 12. But those two cases turned on the peculiarities of tribal immunity in relation to federal sovereign immunity per U.S. Const. amend. XI, and have no broader applicability. *United States v. Univ. of Massachusetts, Worchester*, 167 F. Supp., 3d 221, 223-224 (Dist. Ct. Mass. 2016), citing *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 753-759 (1998) and *Hans v. Louisiana*, 134 U.S. 1, 11-15 (1890). For purposes of the state's sovereign immunity under the Eleventh Amendment, a subpoena is not a "suit." *United States v. Univ. of Massachusetts, Worchester*, supra at 223-224; accord *McGhee v. Fla.*

11

*Dep't Corr.*, 4:18mc04-MW/CAS (N. Dist. Fla. 2019) (federal litigation in which the state is not sued or named as a party is not "a suit" against the state).

- Movant cites *Georgia Lottery Corp. v. Patel*, 353 Ga. App. 320 (2019) and argues that this Court cannot *imply* a waiver of sovereign immunity for a subpoena to "the sitting Governor." Mot. at 12 (emphasis in original). However, like the rest of Movant's cases, *Patel* involved a lawsuit against the State, which made both sovereign immunity—and its waiver—relevant issues. These issues are not before this Court.

Ultimately, Movant's sovereign immunity claims (as varied and imaginative as they are) must return to where we all started: *Lathrop v. Deal*, supra, which is dispositive in Georgia: "Simply put, the constitutional doctrine of sovereign immunity forbids our courts to entertain a *lawsuit* against the State without its consent." (emphasis added) *Id.* at 408. Under the circumstances here, Movant has failed to establish sovereign immunity as a basis for quashing the validly issued subpoena for his *witness* testimony before the special purpose grand jury investigating third-party criminal acts relating to election interference. Indeed, the judicial branch's power to enforce Movant's subpoena and compel his submission to the judicial process as a "mere witness" survives his strenuous objections to the contrary.

**B.** **"EXECUTIVE PRIVILEGE" IS NOT APPLICABLE IN THIS MATTER**

As an alternative basis to quash the lawfully issued subpoena, Movant argues that he should be excused from testimony before the grand jury because he enjoys "substantial privileges" necessary "to perform his official duties as Chief Executive Officer of the State," including "executive privilege." Mot. at 13. The District Attorney submits that Movant has failed to show that "executive privilege" is applicable in this matter.

1. Presidential communications privilege.  In *United States v. Nixon*, 418 U.S. 683 (1974), the Court recognized a presidential communications privilege belonging to the *President* because of his "the singularly unique role under Art. II of a President's communications and activities related to the performance of duties under that Article." *Nixon*, supra at 715.  The presidential communications privilege protects communications between the president and his advisors relating to his decision-making processes.  Importantly, the privilege is limited to communications made "in the process of shaping policies and making decisions." *Nixon*, supra at 708.

Based on the above, Movant argues that he as Governor and Chief Executive Officer of Georgia should be afforded a gubernatorial communication privilege analogous to the presidential communication privilege.  Such privilege would allow him to withhold "confidential communications from judicial

subpoena." Mot. at 15.  However, *Georgia courts have not adopted a*

*gubernatorial communications privilege*.  Nor, notably, have the remaining forty-

nine states rushed to bestow such privilege upon their respective governors.  By

way of example, see *State ex rel Dann v. Taft*, 848 N.E. 2d 472 (Ohio 2006):

> For over 200 years, the state of Ohio has existed without a gubernatorial
> communications privilege.  For over 200 years, we have had an open
> government, with an executive branch designed to be limited in power.
> Why now does the governor come before this court claiming a heretofore
> unrecognized privilege?  Are we in the midst of a crisis of state?  No, the
> governor is in the midst of a crisis of politics.

*Id.* at 389 (Pfeifer, J., dissenting).  Indeed, Movant cites only two cases to support

his claim that "*several* states have found the existence of this executive

communications privilege."  Mot. at 15 (emphasis added).[15]

Further, the instant matter seems especially ill-suited for carving out a

brand-new gubernatorial communication privilege, since Movant fails to identify

any potential grand jury witness testimony to which such privilege would apply.

The presidential communication privilege only applies to communications with

advisors made "in the **process** of shaping policies and making decisions," *Nixon*,

supra at 708 (emphasis added); consequently, the privilege does not protect the

policy or the decision, *itself*, but the advisory processes that led to it.  In the litany

of potential grand jury testimony from Movant outlined below, no testimony

---

[15]  *Freedom Found v. Gregoire*, 310 P. 3d 1252 (Wash. 2013) and *Nero v. Nyland*, 386
A.2d 846 (N.J. 1978).

14

would be related to any advisory processes in which Movant might have engaged before he acted.

    2. <u>Deliberative processes privilege.</u>  Generally, this form of executive privilege is invoked when a party files a motion to compel or subpoena duces tecum seeking a *federal* executive agency's documents that may include material related to the deliberations and decision-making processes of agency executives in deciding policies and opinions.

> First, the privilege protects candid discussions within an agency.  Second, it prevents public confusion from premature disclosure of agency opinions before the agency established its final policy.  Third, it protects the integrity of an agency's decision.

*United States v. Zak*, 2021 WL 3556646 (N.D. Ga. 2021), citing *Alexander v. F.B.I.*, 186 F.R.D. 154, 163 (D.D.C. 1999).  To be protected, the information must be (1) "pre-decisional" in that the information was received by the decision maker to assist him in making his decision, and (2) a direct part of the deliberative process in that the information contains "recommendations or expresses opinions on legal policy or matters." *Id.* at 7-8; *Paisley v. CIA*, 712 F2d 686, 698-699 (DC Cir. 1983).  Notably, the executive agency must show prima facie that the deliberative process privilege applies.  *Zak*, supra at 8.  It is also important in this matter that "purely factual" material that does not reflect an executive agency's deliberative processes generally is **not** protected. *Id.*; *In re Sealed Case*, 121 F3d 729, 737 (DC Cir. 1997).

To the extent that Movant is asserting an executive deliberative process privilege with regard to his grand jury witness testimony, he has failed to establish that such privilege even applies in this matter. Movant's *witness* subpoena does not involve the production of potentially privileged documents. Here, the grand jury is seeking factual information from a *witness*—Movant—about his personal knowledge of the contents of his communication with third parties that might be related to possible unlawful election interference. Movant may claim that his

> decision-making before, during, and after the November 2020 election relied heavily on communications with his advisors and on notes and drafts he prepared. Mot. at 16.

But this vague statement establishes no connection at all between Movant's "decision-making" and his witness testimony about the *factual* content of communications with third parties about possibly unlawful election interference. The factual content of his communications with former President Trump or persons connected to Trump can be revealed without disclosing any input he may have received from advisors concerning said conversations. As this Court relevantly held in a related matter,

> What the grand jury may not pursue is any line of questioning about what the [Movant] thought of such proposals or what, if anything, he decided to do based on such input.[16]

---

[16] *In re 2 May 2022 Special Purpose Grand Jury*, 2022-EX-000024 (July 6, 2022, Order pp. 6-7).

16

Movant's failure to establish the applicability of any executive privilege in this matter is especially important since it involves a grand jury's criminal investigation. In *United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991), the Supreme Court reversed the quashing of business records subpoenas, finding that the relevancy **and admissibility** requirements for production announced in *United States v. Nixon*, 418 U.S. 683, 699-700 (1974), simply did not apply in the grand jury context before it. *R. Enterprises*, supra at 296-297. In doing so, the Court reasoned,

> The grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. . . . The function of a grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred.

*Id.* at 297.[17] Consequently, a properly issued grand jury subpoena is "presumed to be reasonable, and the burden of showing unreasonableness must be on the

---

[17] *In re Sealed Case*, supra at 755, held that the Supreme Court's decision in *R. Enterprises* did not apply to the grand jury subpoena before it because,

> *R. Enterprises* concerned a challenge to a grand jury subpoena on grounds of relevance; it does not govern a case, such as this, where the grand jury subpoena [for documents] is being resisted on grounds of privilege.

In that case, the **presidential** communications privilege established in *United States v. Nixon*, 418 U.S. 683 (1974) actually existed and was invoked. Before this Court, however, the grand jury witness subpoena cannot be "resisted on the grounds of privilege" because Movant has not established the existence or applicability of any executive privilege in this matter. Movant's mere inclusion of the words, "executive privilege" in his motion to quash does not magically create such privilege where it does not exist. Consequently, the holding in *R. Enterprises* controls the standards related to the grand jury witness subpoena properly issued to Movant in this matter.

recipient who seeks to avoid compliance." *Id.* at 300-301. Movant cannot make

that showing because the testimony the grand jury seeks from him is related to the

topic of their criminal investigation: unlawful election interference.

In his motion to quash Movant admits only that he received "many public

entreaties by President Trump and others for him to use the power of the

Governor's executive office to alter the administration of the 2020 election in any

way." Mot. at 16. While he considers this sufficient to satisfy the grand jury's

need for his testimony, Movant does not identify the "others"; Movant does not

identify the nature of the "entries" he received and from whom; and Movant does

not identify in what way(s) it was suggested he alter the election. Many extant

facts establish additional lines of grand jury inquiry not mentioned by Movant.

Consider that on September 25, 2021, in Perry, Georgia, former President

Trump gave a rally speech.[18] Mr. Trump told his supporters that Georgia's 2020

election was "a rigged election." (video, min. 31:59). He stated that he "called his

people" and told them to "find out what happened" in Georgia because there was

"something wrong with this election." (video, min 41:14 - 41:18). Mr. Trump

stated that "his people" called Movant repeatedly, but Movant "won't do anything

on election integrity." (video, 41:27 - 42:07). The former President finally said,

---

[18]    *See* Perry Rally Video ("video"): https://www.c-span.org/video/?514951-1/president-trump-rally-perry-georgia.

"Let me handle this. This is easy. You know I got the guy elected." (video, 42:08-42:11).  Mr. Trump stated that he called Movant and told him, "Brian, I hope you can help us out and call a special election and let's get to the bottom of it."  (video, 42:39-42:47).  Mr. Trump stated that Movant told him, "Sir, I'm sorry. I cannot do it" which made Movant a "disaster."  (video 42:56-43:05).  In relation to the Perry rally, Movant can testify inter alia about the existence of any evidence the Trump campaign or operatives provided to support their theory that Georgia's election was "rigged"; Movant can testify about the identity of the people who attempted to communicate with him and whether they identified as representatives of Mr. Trump; he can testify to the number of times he received or made calls related to the Trump campaign's allegations and demands that he take action; he can testify about the specific contents of his phone conversations; he can testify about the contents of his telephone conversation with Mr. Trump; he can testify about whether Mr. Trump told Movant that he "got Movant elected"; he can testify about whether Mr. Trump specifically sought a "special election" or some other form of relief; he can testify about conversations about "election integrity"; he can testify about whether threats were made by Mr. Trump or others; he can testify about his responses to Mr. Trump.  No executive privilege applies to any of these areas of inquiry.

19

Also, during the same Perry rally, Mr. Trump told his supporters that a "disastrous consent decree" in Georgia essentially abolished "signature verifications" on mail-in ballots and "paved the way for massive voter fraud" in Georgia. (video, 45:04 - 45:10). In that regard, Georgia Secretary of State Brad Raffensperger received personal telephone calls from South Carolina Senator Lindsey Graham—an ardent and vocal supporter of Mr. Trump—in the weeks immediately after the November 3, 2020 election. Both Raffensperger and Deputy Secretary of State Gabe Sterling (who was on the line) have publicly discussed the conversations they had with Senator Graham in which the Senator asked Raffensperger about conducting an audit of Georgia mail-in ballots and discarding all mail-in ballots from counties with higher rates of signature verification disparities. As Raffensperger told CBS New in November of 2020, "Senator Graham implied for us to audit the envelopes and then throw out the ballots for counties who have the highest frequency error of signatures."[19] Consequently, before the grand jury, Movant can testify about any factual connections between the telephone calls to Secretary Raffensperger and telephone calls concerning relief being sought from the Movant.

---

[19]    https://www.cbsnews.com/news/georgia-election-brad-raffensperger-lindsey-graham-throw-out-ballots/; https://www.vox.com/2020/11/18/21571684/lindsey-graham-brad-raffensperger-georgia-ballots.

The District Attorney submits that the above clearly relevant information is just the start of what may be revealed through Movant's grand jury witness testimony. Depending on what Movant's testimony reveals, many more evidentiary avenues may be opened, especially in light of the testimony the grand jury has already received from Secretary Raffensperger and others. Further, as outlined above, Movant is uniquely knowledgeable about the election interference matters being investigated by the grand jury since he was personally involved in the conversations at issue. Movant has not spoken publicly in detail about the content of these communications; no "alternative sources" can have Movant's first-hand knowledge of these matters. Under these circumstances, Movant has not and cannot meet

> his unenviable task [] to persuade the court that the subpoena that has been served on him or her could not possibly serve any investigative purpose that the grand jury could legitimately be pursuing.

*R. Enterprises,* supra at 300, citing 1 S. Beale & W. Bryson, Grand Jury Law and Practice § 6:28 (1986).

Since a gubernatorial communication privilege has not been recognized in Georgia, and Movant has not shown that his grand jury witness testimony would be impacted by any deliberative process privilege, "executive privilege" is simply not applicable in this matter. Consequently, Movant has shown no basis for

21

quashing his grand jury witness subpoena seeking testimony about his personal

knowledge of possible third-party criminal acts of election interference.

## C.   MOVANT'S GRAND JURY WITNESS SUBPOENA DOES NOT CALL FOR INFORMATION PROTECTED BY ATTORNEY-CLIENT PRIVILEGE

The parameters of possible grand jury witness testimony as outlined in

Division B (1) (a) above demonstrates that no attorney-client privileged

information is being sought.  The Movant's testimony to be adduced before the

grand jury goes to factual matters within his personal knowledge related to

possible unlawful election interference.  The District Attorney will readily agree to

all procedures established by this Court, and any potential infringement on

legitimate attorney-client privilege will be studiously avoided.

However, the District Attorney's particular concern as it relates to Movant's

testimony is similar to the Court's concern in *R. Enterprises* about "delays and

detours" that would "saddle a grand jury with minitrials and preliminary showings

[that] would assuredly impede its investigation and frustrate the public's interest in

the fair and expeditious administrations of the criminal laws."  *Id.* at 727.  This

Court has been made aware of the dubious authenticity of counsel's attached

Exhibits.  In addition, elements of aggression and distraction are displayed by

counsel in his accusation that the District Attorney's Office "intentionally"

attempted to elicit attorney-client privileged information from a previous grand

jury witness; he complains that the D.A.'s Office "laughed" at the witness and "retaliated" because the witness asserted attorney-client privilege. Mot. at 18. The District Attorney's real concern is that these tactics will not stop, but instead will be used to create further "delay and detours" to interfere with Movant's testimony.

The District Attorney's Office raises these concerns solely to bring them to the Court's attention as possibilities. Meanwhile, the District Attorney fully shares the confidence expressed generally by the Supreme Court in *R. Enterprises* that this Court in particular "will be able to craft appropriate procedures that balance the interest of the subpoena recipient against the strong governmental interests in maintaining secrecy, preserving investigatory flexibility, and avoiding procedural delays." *Id.* at 302. The valid privilege concerns of each of the grand jury witnesses to date have been addressed by the Court, and there is no reason to believe any legitimate privilege assertions by Movant will not be similarly dealt with.[20]

## D.     THE MOVANT'S GRAND JURY WITNESS SUBPOENA IS NOT UNREASONABLE AND OPPRESSIVE

---

[20]     The Court's own personal knowledge of the alleged "abusive tactics" employed by the District Attorney during the testimony of a previous grand jury witness on the topic of privileges puts to rest this particular histrionic accusation. Mot. at 18. As the Court is well-aware, it was not the D.A.'s Office who sought to abuse privilege protections. Further, all privilege assertions made by this witness (and all others) have been dealt with by the Court in a manner that facilitated appropriate questioning by the grand jury while protecting truly privileged information. Movant offers no explanation for why genuine assertions of privilege made during his testimony may not be handled in a similarly efficient manner.

Pursuant to O.C.G.A. § 15-12-100, a January 24, 2022 order was entered convening a Fulton County Special Purpose Grand Jury ("grand jury") and authorizing it to investigate "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia." Before that time, the District Attorney's Office attempted to secure the cooperation of witnesses through voluntary interviews. As the District Attorney wrote in her January 20, 2022 letter to Chief Judge Brasher seeking the empanelment, "We have made efforts to interview multiple witnesses and gather evidence, and a significant number of witnesses and prospective witnesses have refused to cooperate with the investigation." The grand jury began receiving testimony on June 1, 2022—a date specifically chosen to fall after the May primaries. Movant was served with his grand jury witness subpoena on August 4, 2022, for testimony on August 18, 2022. On its face, Movant's grand jury witness subpoena is neither unreasonable nor oppressive in relation to the timing of the empanelment, the beginning of testimony, the date of Movant's subpoena, or the date of his testimony.

However, for eighteen months before the service of Movant's subpoena, the District Attorney's Office sought his voluntary cooperation. It was not forthcoming. The sincerity of Movant's intent to cooperate with the grand jury's investigation is in question given the manipulated correspondence in Motion

Exhibits A-X and in the instant, last-minute August 17, 2022 motion to quash the grand jury's subpoena.  Now, in this last claim of error, Movant though counsel levels egregious charges at the District Attorney's Office, slinging mud that seems only for public relations purposes, since there is no truth to his accusations, and they provide no legal basis for finding his grand jury witness subpoena unreasonable and oppressive.  Most of the claims he levels do not warrant a legal response.  But some cannot go without comment:

- Nine times in seven pages, Movant claims the District Attorney's Office unethically sought his grand jury testimony in the middle of "an election cycle."  Georgia follows the federal definition of an "election cycle."[21] Under O.C.G.A. § 21-5-3 (10), "Election cycle" means the period from the day following the date of an election or appointment of a person to elective public office through and including the date of the next such election of a person to the same public office."  Accordingly, from the moment he was elected, Movant was in an election cycle.  At the time Mr. Trump called Movant in November or December of 2020, Movant was already "in the middle of an election cycle."  At the time the grand jury began taking evidence in June 2022, Movant was "in the middle of an election cycle."

---

[21]   https://www.ncsl.org/blog/2014/06/26/whats-an-election-cycle-depends-where-you-are.aspx.

What Movant is complaining about is that 2022 is an election year *for him*.
And his real aim is not at all subtly contained in the substantive statements
in this alternative basis for relief.  His egregious allegations against the
District Attorney's Office are abusive, untrue, and designed to convince
this Court to delay Movant's grand jury testimony until after the November
2022 election day.[22]

- As originally intended, Movant's grand jury testimony was to be secured
  on August 18, 2022, two and a half months before election day.  His grand
  jury testimony would remain secret, his entry and exit from the grand jury
  could be handled out of public sight, and consequently could not impact his
  election.  Further, the District Attorney has publicly stated that she intends
  to avoid grand jury activity after the commencement of early voting in
  October, a decision made specifically to prevent election distractions.[23]
  Consequently, the District Attorney's Office did not "time" Movant's

---

[22]    *See* Mot. at 19 (D.A.'s deadline for Movant's testimony entirely "self-imposed" to
preclude delay of Movant's testimony until after election); Mot. at 21 (counsel repeatedly
requested D. A. to schedule Movant's grand jury appearance "after the November election");
Mot. at 22-23 (D.A should have delayed its request for Movant's grand jury testimony "until
after the impending election"); Mot. at 23-24 (the D. A. "could also seek testimony from
[Movant] in late 2022 or early 2023").  *See also* Mot. Exh. L, May 12, 2022 email rejection of
counsel's request to delay voluntary interview with Movant until after election day; Mot. Exh.
W, counsel's August 8, 2022 email renewing his request that the interview with Movant be
postponed until after election day.

[23]    https://www.nbcnews.com/meet-the-press/meetthepressblog/fulton-county-da-expect-subpoenas-trump-associates-rcna36948

subpoena to impact the elections; the Office is complying with all relevant instructions related to "election year sensitivities" and ABA Criminal Justice Standards; and the Office is adhering to prosecutorial ethical standards.  In fact, a reasonable observer may well conclude that Movant's current, strident show of non-cooperation with the District Attorney and the grand jury's investigation into election interference by Mr. Trump and his associates—both in the instant motion and before the media[24]—is itself a tactic to influence the November election.

- As the Court is aware, the District Attorney's Office consented to moving back the date of Movant's appearance before the SPGJ after an explicit request from Movant's counsel. The date evidently conflicted with the personal travel plans of Movant's counsel, and after consultation with the Court, the D.A.'s Office agreed to move the date of Movant's appearance by several days to August 18, 2022. Having received this extension with the cooperation of the D.A.'s Office, Movant's counsel waited until August 17, 2022, and then filed the instant motion to quash.

---

[24]   https://www.ajc.com/politics/breaking-kemp-blasts-fulton-da-for-playing-politics-as-he-fights-subpoena/YSGK66OTLRHGZMOGYEA26PXJSE/; compare https://www.bloomberg.com/news/articles/2022-07-25/georgia-governor-kemp-to-testify-in-trump-s-2020-investigation.

- The District Attorney observes that by the time Movant filed this motion and publicly decried the District Attorney's actions, the media believed Movant *had already testified*. Several outlets reported that Movant had provided testimony on July 25, 2022;[25] neither the District Attorney nor Movant said or did anything to contradict that notion. If Movant had simply appeared on August 18, with arrangements made for arriving and exiting the building, absolutely no one would have known. The public perception was that Movant had already cooperated and spoken with the District Attorney's Office, and if he had appeared, that perception would never have changed. Instead, he waited until the day before his appearance and filed this motion accusing the District Attorney of engaging in political games.

- Additionally, Movant exploits this Court's conclusions about the District Attorney's investigation of State Senator Burt Jones in light of her public support for another Lieutenant Governor candidate in the Democratic primary. The District Attorney's Office respects and adheres to the Court's ruling in that instance. However, using that single situation, Movant

---

[25]     See, for example: (1) https://www.ajc.com/politics/breaking-kemp-to-testify-in-fulton-co-trump-probe/PXZ4ZEMJRJCSTCJJBYVU6IK7EU/; (2) https://www.11alive.com/article/news/politics/brian-kemp-subpoena-trump-election-probe-hice/85-d300a6e6-1c61-4005-9245-71eba4337e56; (3) https://www.independent.co.uk/news/world/americas/us-politics/brian-kemp-trump-georgia-probe-b2131801.html; (4) https://www.washingtonexaminer.com/politics/kemp-testifies-georgia-election-inquiry

broadly argues that the District Attorney continually engages in activities that have a "significant potential to conflict" with her "duties and responsibilities as a prosecutor" and has failed to "take corrective action." Mot. at 21-22. Using this Court's words out of context, Movant claims the "optics" of the D. A.'s conduct "are horrific." Mot. at 22.

The District Attorney is confident that this Court is aware of the defined parameters of its holding involving Mr. Jones and the context in which the Court's words were spoken. Yet Movant blatantly disregards both in order to insult the D. A. both personally and professionally—such an attack is unprofessional and untrue. Attention must be paid. The District Attorney's Office will continue to adhere to the level of respect due a sitting Governor, and indeed all witnesses who come before the grand jury. The correspondence of the parties affirms that fact.

- Finally, Motion Exh. S-V reference Movant's apparent cooperation with the subpoena duces tecum served on behalf of the SPGJ by turning over more than 136,000 pages of documents. Mot. Exh. S-V. Lest the Court construe this apparent compliance with actual good faith cooperation with the grand jury investigation, it is worth noting what the June 22, 2022 subpoena requested:

**The following documentary evidence is hereby subpoenaed:**

1. All writings, reports, memoranda, documentary, electronic, digital, audio, video, or any informational medium or platform that records and produces an image that represents, explains, and provides context surrounding the events of the presidential election of November 2020.

2. All writings, reports, memoranda, documentary, electronic, digital, audio, video, or any informational medium or platform that records and produces an image that represents, explains, and provides context to the circumstances, events, words, and actions associated with the 60-days aftermath from November 3, 2020, until January 3, 2021.

3. All writings, reports, memoranda, documentary, electronic, digital, audio, video, or any informational medium or platform that records and produces an image that represents, explains, and provides context to the circumstances, events, words, and actions.

Mot. Exh. P (June 22, 2022 Letter and Subpoena Duces Tecum).

Movant's "responsive" documents include many items not the least bit

responsive to these categories of requests.  The document production has

included such items as: State Employee Benefit Package information,

Medical Records for a deceased BDHDD Patient, Photographs of dogs

apparently related to the purchase of protective canine vests, and a

Cumberland Engineering Consultants Soil Report.

Before this Court, Movant has not shown his grand jury witness subpoena

was either oppressive or burdensome; he has not shown the District Attorney

issued Movant's grand jury witness subpoena to influence the 2022 election for

governor; and he has not shown that the grand jury's investigation has "devolved

into its own mechanism of election interference." Mot. at 24.  In short, his claims

are baseless.  Consequently, Movant has shown no grounds for quashing his

30

lawfully issued witness subpoena for testimony before a grand jury investigating

third-party criminal acts related to unlawful election interference.

### III.   CONCLUSION

For all of the foregoing reasons, the District Attorney respectfully requests

this Court to deny Movant's Motion To Quash the grand jury's witness subpoena

and allow Movant's grand jury testimony to proceed.

Respectfully submitted this the 23rd day of August, 2022.

/s/ Nathan J. Wade
**Nathan J. Wade, Bar. No. 390947**
Special Prosecutor
Atlanta Judicial Circuit
136 Pryor Street Southwest
Third Floor
Atlanta, Georgia 30303

**Certificate of Service**

I hereby certify that on this 23rd day of August, 2022, a true copy of this Response was delivered to the following persons by electronic mail: Brian F. McEvoy, attorney for the movant.

_____Nathan J. Wade_____

NATHAN J. WADE   390947

Special Prosecutor

`

**STATE'S EXHIBIT A**

**From:** Nathan J. Wade <nathan@thewbcfirm.com>
**Sent:** Friday, July 22, 2022 2:27 PM
**To:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Cc:** Willis, Fani <Fani.WillisDA@fultoncountyga.gov>
**Subject:** Re: Governor Kemp

Kind sir:
Thank you for your email wherein you apologize for your behavior, I'm certain it was uncharacteristic of your true self.  I have taken the liberty of adding the rest of the investigative team back to this email chain, as they deserve to benefit from your heart-felt apology equally.  I have been instructed by Madam DA Willis to reach out and address your concerns, to this end, feel free to call Senior Investigator Mike Hill to schedule a time for you and I to speak.
Thank you

On Fri, Jul 22, 2022 at 12:08 PM McEvoy, Brian F. <bmcevoy@bakerlaw.com> wrote:
DA Willis:

David Dove mentioned that he had spoken with you this morning and I was hoping that you are available for a brief call with me sometime this afternoon.  Among other things, I would like to apologize if my advocacy in protecting the Governor's legal interests came across as even the slightest bit discourteous.  I know that the Governor values his relationship with your office and we look forward to working through these issues.

Thanks,
Brian

**Brian McEvoy**
Partner

2

1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com

---

This email is intended only for the use of the party to which it is
addressed and may contain information that is privileged,
confidential, or protected by law. If you are not the intended
recipient you are hereby notified that any dissemination, copying
or distribution of this email or its contents is strictly prohibited.
If you have received this message in error, please notify us immediately
by replying to the message and deleting it from your computer.

Any tax advice in this email is for information purposes only. The content
of this email is limited to the matters specifically addressed herein
and may not contain a full description of all relevant facts or a
complete analysis of all relevant issues or authorities.

Internet communications are not assured to be secure or clear of
inaccuracies as information could be intercepted, corrupted, lost,
destroyed, arrive late or incomplete, or contain viruses. Therefore,
we do not accept responsibility for any errors or omissions that are
present in this email, or any attachment, that have arisen as a result
of e-mail transmission.

--
**Wade, Bradley & Campbell Firm**
1827 Powers Ferry Rd.
Bldg. 23
Atlanta, GA 30339

3

**STATE'S EXHIBIT B**

**From:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Sent:** Monday, July 11, 2022 3:18 PM
**To:** Nathan Wade <nathanwade@lawyer.com>
**Cc:** Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>;
Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>; Hill-DA, Michael
<Mike.Hill@fultoncountyga.gov>; Rafferty, Brian T. <brafferty@bakerlaw.com>;
Zoller, Grace W. <gzoller@bakerlaw.com>; Bauer, S. Derek
<dbauer@bakerlaw.com>; Wooten, Will <Will.Wooten@fultoncountyga.gov>;
Ney, Adam <Adam.Ney@fultoncountyga.gov>; Willis, Fani
<Fani.WillisDA@fultoncountyga.gov>
**Subject:** RE: RE: Follow up

Nathan:

I am available today from 4pm-6pm.  We can also discuss tomorrow before Mr.
Hall's Grand Jury appearance.

Thanks,
Brian

**Brian McEvoy**
Partner

1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com

**From:** Nathan Wade <nathanwade@lawyer.com>
**Sent:** Monday, July 11, 2022 11:16 AM
**To:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>

5

**Cc:** Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>;
Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>; Hill-DA, Michael
<Mike.Hill@fultoncountyga.gov>; Rafferty, Brian T. <brafferty@bakerlaw.com>;
Zoller, Grace W. <gzoller@bakerlaw.com>; Bauer, S. Derek
<dbauer@bakerlaw.com>; Wooten, Will <Will.Wooten@fultoncountyga.gov>;
Ney, Adam <Adam.Ney@fultoncountyga.gov>; Willis, Fani
<Fani.WillisDA@fultoncountyga.gov>
**Subject:** Re: RE: Follow up

Mr. McEvoy:

We are in reciept of your email and Judge Mc Burney will be on standby to
address any legal issues as they arise. Today is a very busy day for our team
however, we are able to carve out some time at 1 pm to discuss further. Please
expect a call from Investigator Hill or Lucas promptly at 1 pm today.
Thanks,

Nathan J. Wade
Special Prosecutor


**Sent:** Saturday, July 09, 2022 at 5:30 AM
**From:** "McEvoy, Brian F." <bmcevoy@bakerlaw.com>
**To:** "Wakeford, FMcDonald" <FMcDonald.Wakeford@fultoncountyga.gov>
**Cc:** "Swanson-Lucas, Trina" <Trina.Lucas@fultoncountyga.gov>, "Hill-DA,
Michael" <Mike.Hill@fultoncountyga.gov>, "Rafferty, Brian T."
<brafferty@bakerlaw.com>, "Zoller, Grace W." <gzoller@bakerlaw.com>,
"Bauer, S. Derek" <dbauer@bakerlaw.com>, "Wooten, Will"
<Will.Wooten@fultoncountyga.gov>, "Ney, Adam"
<Adam.Ney@fultoncountyga.gov>, "nathanwade@lawyer.com"
<nathanwade@lawyer.com>, "Willis, Fani"
<Fani.WillisDA@fultoncountyga.gov>
**Subject:** RE: Follow up

Donald:

In advance of Mr. Hall's Grand Jury appearance on Tuesday, I wanted to make
you aware of potential evidentiary and privilege issues that may arise during Mr.
Hall's testimony.  For instance, Mr. Hall has very limited knowledge that will be
relevant to your office's inquiry that is not covered by the attorney client

privilege.  Accordingly, we request that you acknowledge and respect the existence of this privilege in your or others' questioning of Mr. Hall as we are concerned about any inadvertent disclosure of privileged information.  We will advise the Court of this issue in advance of Mr. Hall's testimony should there be a need for judicial intervention.  Please let me know if you are available to discuss in advance of Tuesday.

Thanks,
Brian


**Brian McEvoy**
Partner


1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com


**From:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Sent:** Saturday, June 25, 2022 1:34 PM
**To:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>; Rafferty, Brian T. <brafferty@bakerlaw.com>; Zoller, Grace W. <gzoller@bakerlaw.com>; Bauer, S. Derek <dbauer@bakerlaw.com>; Wooten, Will <Will.Wooten@fultoncountyga.gov>; Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>; Ney, Adam <Adam.Ney@fultoncountyga.gov>; nathanwade@lawyer.com; Willis, Fani <Fani.WillisDA@fultoncountyga.gov>
**Subject:** RE: Follow up
**Importance:** High


Good afternoon Brian,

7

I hope you are enjoying the weekend. If you follow our email thread, you will note that I asked you earlier this week if you would accept service on behalf of your client Mr. Cody Hall.

When you did not provide response, you were notified Thursday of this week that our investigators were attempting to personally serve Mr. Hall because you had not provided answer.

The attempt to serve Mr. Hall at his residence was unsuccessful and a courtesy copy of the subpoena was provided for his attention and review. Although we appreciate your concerns, I believe we have full understanding of effective service under Georgia law.

By your response, I understand that are accepting service on behalf of Mr. Cody J. Hall. Please see the attached documents.

As shown on the witness subpoena, Mr. Cody Hall is scheduled to appear **Tuesday, July 12 at 0900hrs**. This date is firm.

Additionally, we have requested on multiple occasions that you please provide response to the production subpoena provided by Inv. Lucas on Wednesday, June 22.

Thank you for your assistance and continued cooperation with this investigation.


**From:** McEvoy, Brian F. [mailto:bmcevoy@bakerlaw.com]
**Sent:** Saturday, June 25, 2022 10:59 AM
**To:** Hill-DA, Michael
**Cc:** Swanson-Lucas, Trina; Rafferty, Brian T.; Zoller, Grace W.; Bauer, S. Derek; Wooten, Will; Wakeford, FMcDonald; Ney, Adam; nathanwade@lawyer.com; Willis, Fani
**Subject:** RE: Follow up

Investigator Hill:

My understanding is that someone for your office left a subpoena, in plain view, on the doorstop of Mr. Hall yesterday.  As you may be aware, this is not

8

only **_not_** effective service under Georgia law it is also reckless from a privacy and discretion standpoint. We continue to be concerned about the leaks around this investigation from your office, intentional or otherwise, despite assurances from District Attorney Willis that such information would be held in strict confidence.

Please send a copy of the subpoena to me and we will accept service on behalf of Mr. Hall. I look forward to discussing the scheduling of his appearance once I have received the subpoena.

Thanks,
Brian

**Brian McEvoy**
Partner

1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com

**From:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Sent:** Thursday, June 23, 2022 2:16 PM
**To:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>; Rafferty, Brian T. <brafferty@bakerlaw.com>; Zoller, Grace W. <gzoller@bakerlaw.com>; Bauer, S. Derek <dbauer@bakerlaw.com>; Wooten, Will <Will.Wooten@fultoncountyga.gov>; Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>; Ney, Adam <Adam.Ney@fultoncountyga.gov>; nathanwade@lawyer.com
**Subject:** Re: Follow up

Brian,

9

I am well and I pray you are the same.

Prior to addressing scheduling concerns, I need your response on 2 issues:

1) You advise that you represent Mr. Cody Hall on this matter. Will you accept Supoena service on his behalf? If so, I will forward the witness subpoena via this email thread and we can discuss any potential scheduling concerns after service has been complete.

2) Please provide response regarding the production subpoena Inv. Trina Lucas sent to you yesterday, June 22.

Again, once you have addressed subpoena service, we can discuss scheduling.

Please note, until you advise on authorization of subpoena service, our investigators will attempt to personally serve Mr. Hall.

Please advise.

Thanks.

> On Jun 23, 2022, at 12:42 PM, McEvoy, Brian F. <bmcevoy@bakerlaw.com> wrote:
>
> Mike:
>
> How are you?  Given that we are in the middle of an election cycle, scheduling might be tricky.  Can you please give me a sense of when you would be seeking his appearance?
>
> Thanks,
> Brian

**Brian McEvoy**
Partner

10

1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com

**From:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Sent:** Wednesday, June 22, 2022 8:44 AM
**To:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>;
Rafferty, Brian T. <brafferty@bakerlaw.com>; Zoller, Grace W.
<gzoller@bakerlaw.com>; Bauer, S. Derek
<dbauer@bakerlaw.com>
**Subject:** RE: Follow up
**Importance:** High

Good morning Brian,

Please advise if you are authorized to accept subpoena service on
behalf of your client, Mr. Cody Hall.

Once confirmed, I will forward Mr. Hall's grand jury witness
subpoena.

Thanks.

**From:** McEvoy, Brian F. [mailto:bmcevoy@bakerlaw.com]
**Sent:** Thursday, June 09, 2022 3:03 PM
**To:** Hill-DA, Michael
**Cc:** Swanson-Lucas, Trina; Rafferty, Brian T.; Zoller, Grace W.;
Bauer, S. Derek
**Subject:** RE: Follow up

Mike:

11

How are you?  Yes, my firm is representing Cody Hall in his capacity as a member of the Governor's Executive staff (during the relevant time period).

Please let me know if you would like to discuss.

Thanks,
Brian

**Brian McEvoy**
Partner


1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com

> **From:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
> **Sent:** Monday, June 6, 2022 12:26 PM
> **To:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
> **Cc:** Swanson-Lucas, Trina <Trina.Lucas@fultoncountyga.gov>
> **Subject:** RE: Follow up
> **Importance:** High
>
> Good morning Brian,
>
> Does Mr. Cody Hall still serve as an advisor to Governor Kemp? Or, is he still employed with the Governor's Office in any capacity?
>
> If so, are you able to provide his contact information or that of counsel?
>
> Thanks.

**STATE'S EXHIBIT C**

**From:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Sent:** Wednesday, June 15, 2022 6:31 PM
**To:** Nathan J. Wade <nathan@thewbcfirm.com>
**Cc:** Wooten, Will <Will.Wooten@fultoncountyga.gov>; Wakeford, FMcDonald
<FMcDonald.Wakeford@fultoncountyga.gov>; Hill-DA, Michael
<Mike.Hill@fultoncountyga.gov>; Ney, Adam
<Adam.Ney@fultoncountyga.gov>; Rafferty, Brian T.
<brafferty@bakerlaw.com>; Allen, Sonya <Sonya.Allen@fultoncountyga.gov>;
Zoller, Grace W. <gzoller@bakerlaw.com>; Willis, Fani
<Fani.WillisDA@fultoncountyga.gov>
**Subject:** RE: Follow up

Let's plan to meet at Baker, Hostetler at 10am on July 25.

**Brian McEvoy**
Partner


1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com


**From:** Nathan J. Wade
**Sent:** Wednesday, June 15, 2022 11:00 AM
**To:** McEvoy, Brian F.
**Cc:** Wooten, Will ; Wakeford, FMcDonald ; Hill-DA, Michael ; Ney, Adam ;
Rafferty, Brian T. ; Allen, Sonya ; Zoller, Grace W.
; Fani.WillisDA@fultoncountyga.gov
**Subject:** Re: Follow up

Thank you for your email kind sir, please advise the Governor that I have elected
to conduct his voluntary interview on July 25, 2022. I am happy that we were able
to reach an amicable date. Please ask the Governor for a convenient time and
place, also there will be a court reporter present. I look forward to hearing from
you later today in that regard. Thank you again sir
Wade

14

**STATE'S EXHIBIT D**

**From:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Sent:** Thursday, May 12, 2022 10:32 AM
**To:** Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>
**Cc:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Subject:** RE: Interview Request

Donald:

In advance of our call today and for context, please see the below correspondence with District Attorney Willis.

**Brian McEvoy**
Partner


1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com


Begin forwarded message:

**From:** "Willis, Fani" <Fani.WillisDA@fultoncountyga.gov>
**Date:** June 21, 2021 at 6:29:56 PM EDT
**To:** Brian McEvoy <BMcEvoy@polsinelli.com>
**Cc:** Brian Rafferty <BRafferty@polsinelli.com>, Grace Zoller <GZoller@polsinelli.com>, "Allen, Sonya" <Sonya.Allen@fultoncountyga.gov>, "Baez-Nieves, Raymond" <Raymond.Baez-Nieves@fultoncountyga.gov>
**Subject:** RE: Gov. Kemp Interview Request


**EXTERNAL EMAIL fani.willisda@fultoncountyga.gov**

Greetings Mr. McEvoy:

16

I hope this email finds you well. I apologize for my delay in responding. Your email was buried amongst others.

We will be asking for an interview in August with Governor Kemp. I will be present along with other lawyers and investigators from my team. I can assure you the content of the conversation will not be leaked by my office. We would ask that no one on your team even mention that such an interview is occurring. In terms of a time line we expect to conclude all interviews of witnesses that do not need to go before a Grand Jury by September 30, 2021.

It is not our practice to forecast questions of an interview, but broadly we will be inquiring about any and all information your client may or may not have related to the alleged interference in the administration of the November 2020 election, to include but not limited to the now well-known phone call from our former President to the Georgia Secretary of State.

Please feel free to choose any date convenient for Governor Kemp between August 9 – August 31, and we can meet at a place of your choosing. I hope this answers your concerns and I certainly look forward to meeting with you in person.

**STATE'S EXHIBIT E**

**From:** Wakeford, FMcDonald <FMcDonald.Wakeford@fultoncountyga.gov>
**Sent:** Wednesday, May 11, 2022 4:44 PM
**To:** McEvoy, Brian F. <bmcevoy@bakerlaw.com>
**Cc:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Subject:** Re: Interview Request

Thank you. We will talk to you then.

Sent from my iPhone


On May 11, 2022, at 12:54 PM, McEvoy, Brian F. wrote:


Yes, 2:30 works for me. Thanks.

**Brian McEvoy**
Partner
1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com

> **From:** Wakeford, FMcDonald
> **Sent:** Wednesday, May 11, 2022 12:52 PM
> **To:** McEvoy, Brian F.
> **Cc:** Hill-DA, Michael
> **Subject:** Re: Interview Request
> Good afternoon, Brian,
> I wanted to reach out again to see if we could speak tomorrow
> afternoon. Our available times for a call are between 2:00-3:00 and
> any time after 4:00. It is possible we could be available earlier than
> 2:00, but I won't be able to say until tomorrow. Please let us know if
> you are available.
> Thank you,
> Donald

19

Sent from my iPhone

On May 10, 2022, at 11:14 AM, Wakeford, FMcDonald
<FMcDonald.Wakeford@fultoncountyga.gov> wrote:

Brian, let's try to speak on Thursday afternoon. Any time
2:30 or later will work on our end, so just let me know
what time you'd like to speak, and we'll give you a call
then.
Thank you,
Donald
**From:** Wakeford, FMcDonald
**Sent:** Tuesday, May 10, 2022 9:56 AM
**To:** 'McEvoy, Brian F.' <bmcevoy@bakerlaw.com>
**Cc:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Subject:** RE: Interview Request
Hey, Brian, good morning,
We definitely still intend to speak with the governor. Let
me confer with our team, and we will arrange a time to
speak with you this week about how we plan to proceed.
I will shoot you an email as soon as I've spoken with
them.
Thank you,
Donald
F. McDonald Wakeford
Chief Senior Assistant District Attorney
Fulton County District Attorney's Office
(404) 375-0281
CONFIDENTIALITY NOTICE: The contents of this
email message and any attachments are intended solely
for the addressee(s) and may contain confidential and/or
privileged information and may be legally protected from
disclosure. If you are not the intended recipient of this
message or their agent, or if this message has been
addressed to you in error, please immediately alert the
sender by reply email and then delete this message and
any attachments. If you are not the intended recipient,
you are hereby notified that any use, dissemination,

20

copying, or storage of this message or its attachments is strictly prohibited.

**From:** McEvoy, Brian F.
[mailto:bmcevoy@bakerlaw.com]
**Sent:** Tuesday, May 10, 2022 9:52 AM
**To:** Wakeford, FMcDonald
<FMcDonald.Wakeford@fultoncountyga.gov>
**Cc:** Hill-DA, Michael <Mike.Hill@fultoncountyga.gov>
**Subject:** RE: Interview Request
Donald:
How are you? Please let me know if you would like to discuss the below request. I am available at your convenience. If the state anticipates needing to speak with Governor Kemp, please let me know with as much advance notice as possible.
Thanks,
Brian

**Brian McEvoy**
Partner
1170 Peachtree Street | Suite 2400
Atlanta, GA 30309-7676
T +1.404.256.6696

bmcevoy@bakerlaw.com
bakerlaw.com

21