# EXHIBIT B-124



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY | 2022-EX-000024 |
|---|---|

## ORDER ON MOTION TO DISQUALIFY

On 20 January 2022, the District Attorney of Fulton County petitioned the Chief Judge of the Superior Court of Fulton County to convene the Superior Court bench to consider the District Attorney's request for a special purpose grand jury. That grand jury's charter, if approved, would be to conduct a criminal investigation into "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia" and to prepare a report and recommendation for the District Attorney advising her whether she should prosecute anyone for such potential crimes. On 24 January 2022, the Chief Judge, having received a majority of the twenty judges' assent, issued an Order authorizing the convening of a special purpose grand jury for this criminal investigation.

On 2 May 2022, the special purpose grand jury was selected and sworn in; in June 2022 it began receiving evidence and investigating the possibility of criminal interference in the 2020 general election. One area of interest for the District Attorney and the special purpose grand jury has been the slate of sixteen "alternate" electors the Republican Party of Georgia advanced in the wake of former President Trump's claims that the official election count showing that Joe Biden had won was somehow wrong. Eleven of these electors are represented collectively by two attorneys, Holly Pierson and Kimberly

1

Debrow.[1] On 3 October 2022, the District Attorney challenged this arrangement by filing a motion to have the pair of lawyers disqualified from their joint representation of the eleven electors. On 10 November 2022, the electors' lawyers filed a response and provided the Court with written waivers of conflict from each of their eleven clients. Based on these pleadings and the waivers each of the lawyers' clients has executed, the Court GRANTS in part and DENIES in part the District Attorney's motion.

This dispute implicates two of Georgia's Rules of Professional Conduct for attorneys. Rule 1.7 of the Georgia Rules of Professional Conduct prohibits a lawyer from representing a client "if there is a significant risk that … the lawyer's duties to another client … will materially and adversely affect the representation of the client." Rule 1.7(a). A client desirous of joint representation can waive such conflicts upon (1) consulting with her lawyer, (2) receiving in writing "reasonable and adequate" information about the risks of joint representation (and the alternatives thereto), and (3) having the opportunity to speak with independent counsel. Rule 1.7(b). However, a client may not waive the conflicts inherent in joint representation if one of the jointly represented clients is asserting a claim against the other in the same proceeding or if it is "reasonably unlikely that the lawyer will be able to provide adequate representation to one or more of the affected clients." Rule 1.7(c).

Rule 1.6 of the Georgia Rules of Professional Conduct provides that a lawyer "shall maintain in confidence all information gained in the professional relationship with a

---

[1] Those eleven individuals are Mark Amick, Joseph Brannan, Brad Carver, Vikki Consiglio, John Downey, Carolyn Fish, Kay Godwin, Cathy Latham, David Shafer, Shawn Still, and Chandra "CB" Yadav. While the Republican Party of Georgia is paying for the legal services Ms. Pierson and Ms. Debrow are providing, each of the eleven individuals has his or her own representation agreement with the two lawyers.

2

client, including information ... the disclosure of which would ... likely be detrimental to the client, unless the client gives informed consent." Rule 1.6(a).

The District Attorney's primary basis for disqualification is her claim that there exists a non-waivable conflict of interest for Pierson and Debrow to represent all eleven alternate electors. The District Attorney posits that, given the electors' different levels of engagement in the alternate elector scheme (and other efforts to unwind the official election results), Pierson and Debrow cannot adequately represent each despite any waiver they may have executed.[2] Rule 1.7(c)(3). The District Attorney additionally argues that it is only a matter of time before some electors begin providing information that is, in effect, a claim against another elector, creating another form of non-waivable conflict. Rule 1.7(c)(2).

Pierson and Debrow respond by asserting that the electors' roles were sufficiently similar as to allow for joint representation. They add that, because nothing illegal occurred at any point in any of the work the electors did on behalf of the Republican Party of Georgia, there are no adverse interests here; each of their clients is *identically* situated in the important sense that each did nothing wrong. Thus, there is no "information" that one elector could provide that would constitute a claim against another elector.

The District Attorney also points to Rule 1.6 as a bar to continued joint representation, arguing that Pierson and Debrow have, through their collective representation of the eleven alternate electors, undoubtedly obtained information from their clients the disclosure of which would be detrimental to one client but beneficial to another, creating an untenable (and non-waivable) scenario in which the lawyers, to

---

[2] The District Attorney's perspective on the electors' differing roles -- as well as the different investigative approaches the District Attorney seeks to take with differently situated electors -- is set forth in the unredacted version of the District Attorney's motion.

3

benefit one client, would need to compromise the confidences of another.[3] Pierson and Debrow have an answer for that concern as well: their clients have all, separately and severally, consented to the sharing of confidential information otherwise prohibited by Rule 1.6. In other words, each elector has authorized Pierson and Debrow to share all information disclosed during their representation with the other electors and, if the lawyers deem it proper, with outside parties such as the District Attorney's Office.

After the District Attorney first raised the concern about the viability of joint representation of all eleven alternate electors, each elector executed an "Informed Consent to Continued Joint Representation." The Court has reviewed these waivers and finds them thorough, sufficient, and knowingly and intelligently executed.[4] In each, the client acknowledges having (1) spoken at length with Pierson and Debrow about the perks and perils of joint representation, (2) received adequate information about alternatives to joint representation, and (3) considered the opportunity to consult with independent counsel. The waivers satisfy the requirements of Rule 1.7(b).

Of course, the best waiver in the world cannot fix a non-waivable conflict. But here, at this phase of the District Attorney's investigation, when the end product of the special purpose grand jury is not formal criminal charges but rather a recommendation on how best to proceed towards such charges (if any), the Court finds very few such conflicts. It is true that, someday -- *if* charges are brought, *if* those charges include any of the alternate electors, and *if* Pierson and/or Debrow continue to represent any of the electors -- one

---

[3] Rule 1.7 also prohibits a waiver of conflict if the continued representation would violate another Rule of Professional Conduct. Rule 1.7(c)(1).

[4] The eleven waivers are included as a sealed exhibit to this Order, as is the thirteen-page single-spaced memorandum Pierson and Debrow provided each client addressing the concerns raised by the District Attorney about persisting with joint representation and the risks and benefits of doing so.

4

elector might be called upon to testify against another during a criminal trial. And at that point, the Rules of Professional Conduct (and the caselaw applying them) are clear: Pierson and Debrow likely could not represent either such elector. *See, e.g., Registe v. State*, 287 Ga. 542, 544 (2010); *Edwards v. State*, 336 Ga. App. 595 (2016); *see also* Rule 1.9 of the Georgia Rules of Professional Conduct. But that is a remote and hypothetical scenario that does not now exist. The Court finds that the allegations of current or near-term potential conflict that the District Attorney has iterated in the redacted portions of her pleading are waivable and have been effectively waived -- in most instances.

The exception is David Shafer. Given the information before the Court about his role in establishing and convening the slate of alternate electors, his communications with other key players in the District Attorney's investigation, and his role in other post-election efforts to call into question the validity of the official vote count in Georgia, the Court finds that he is substantively differently situated from the other ten clients jointly represented by Pierson and Debrow. His signed waiver may be identical, but his situation is not. He is not just another alternate elector; his lawyers' repeated incantation of the "lawfulness" of the 2020 alternate electoral scheme and invocation of a separate electoral process from 60 years ago and 4,500 miles away do not apply to the additional post-election actions in which Shafer engaged that distinguish him from the ten individuals with whom he shares counsel. His fate with the special purpose grand jury (and beyond) is not tethered to the other ten electors in the same manner in which those ten find themselves connected.

This imbalance in exposure to the District Attorney's investigation makes it impractical and arguably unethical for Pierson and Debrow to represent all eleven together:

5

> Loyalty to a client is impaired when a lawyer cannot consider, recommend or carry out an appropriate course of action for the client because of the lawyer's other competing responsibilities or interests. The conflict in effect forecloses alternatives that would otherwise be available to the client.

Comment 2 to Rule 1.7; *see also Cohen v. Rogers*, 338 Ga. App. 156, 170 (2016). The Court need not detail the obvious steps Pierson and Debrow cannot take to advance the other ten electors' interests during this investigation because of competing obligations to elector/Chairman Shafer.

Thus, while courts "must recognize a presumption in favor of an [individual's] counsel of choice,"[5] that presumption "may be overcome not only by a demonstration of actual conflict of interest but by a showing of a serious potential for conflict." *Heidt v. State*, 292 Ga. 343, 346 (2013), quoting *Wheat v. United States*, 486 U.S. 153, 164 (1988) (punctuation omitted). Here that potential is profound and growing as the special purpose grand jury approaches the end of its work.

The Court appreciates that "lawyers are not fungible." *Lewis v. State*, 312 Ga. App. 275, 280, n.8 (2011). Requiring Shafer (or the ten other electors) to obtain new counsel brings unwelcome consequences, "including the loss of time, money, choice of counsel, and specialized knowledge of the disqualified attorney." *Hodge v. URFA–Sexton, LP*, 295 Ga. 136, 138 (2014).[6] The Court is also mindful that a motion to disqualify "should be viewed with caution ... for it can be misused as a technique of harassment," Comment 15

---

[5] The District Attorney has urged the Court to weigh less heavily an individual's right to counsel of his choosing in the context of this special purpose grand jury proceeding. *See, e.g., United States v. Mandujano*, 425 U.S. 564, 581 (1976); *United States v. Gaddy*, 894 F.2d 1307, 1315 (11th Cir. 1990). The argument is moot, given the Court's findings here, but also ironic, given how forcefully the District Attorney has previously articulated that these are criminal proceedings with very real ramifications for the individuals involved.

[6] Given that the Republican Party of Georgia has paid for Shafer's representation to date, pecuniary loss is minimal or non-existent. Presumably the Party will obtain new (and independent) counsel for its Chair or the other ten electors.

6

to Rule 1.7, and that disqualification is "an extraordinary remedy that should be granted sparingly." *Hodge*, 295 Ga. at 139. But here the Court is confronted with an extraordinary situation: the same lawyers are representing not one or two but *eleven* different targets of the District Attorney's investigation. While those lawyers have made a convincing case that all their clients have elected to maintain joint representation, even after having been elevated to the status of target, the lawyers have not made a sufficient showing that David Shafer should remain in that pool of jointly represented clients:

> when a disinterested lawyer would conclude that the client should not agree to the representation under the circumstances, the lawyer involved cannot properly ask for such agreement or provide representation on the basis of the client's informed consent.

Comment 5 to Rule 1.7. A disinterested lawyer would not advise the other ten electors to share counsel with David Shafer. As such, the joint representation must end.[7]

Attorneys Pierson and Debrow may represent David Shafer or the other ten alternate electors -- but not both -- in connection with the special purpose grand jury's investigation into potential criminal interference with the 2020 general election in Georgia. Given the terms of the eleven executed waivers (including Shafer's), either option is legally and ethically tenable, but that is a decision for those parties and their lawyers to make.

SO ORDERED this 30th day of November 2022.

Judge Robert C.I. McBurney
Superior Court of Fulton County

---

[7] A client's waiver of his attorney's conflict of interest "does not always cure the problem, because courts have an independent interest in ensuring" that criminal matters "are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Registe v. State*, 287 Ga. 542, 544 (2010). The Court finds that Shafer's waiver is just such a non-curative waiver.

7