**EXHIBIT B-142**



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY | 2022-EX-000024 |
|---|---|

**ORDER RE: SPECIAL PURPOSE GRAND JURY'S FINAL REPORT**

On 20 January 2022, the District Attorney of Fulton County petitioned the Chief Judge of the Superior Court of Fulton County to convene the Superior Court bench to consider the District Attorney's request for a special purpose grand jury. That grand jury's charter, if approved by the Court, would be to conduct a criminal investigation into "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia" and to draft and submit a report recommending whether anyone should be prosecuted for such potential crimes. On 24 January 2022, the Chief Judge, having received a majority of the twenty judges' assent, issued an Order authorizing the convening of a special purpose grand jury for this criminal investigation.

On 2 May 2022, the special purpose grand jury was selected and sworn in; in June 2022 it began receiving evidence and investigating the possibility of criminal interference in the 2020 general election. The special purpose grand jury, after hearing months of testimony from dozens of witnesses, submitted its final report to the undersigned in December 2022 pursuant to O.C.G.A. § 15-12-101(a). In issuing its final report, the special purpose grand jury also recommended that its report be published. O.C.G.A. § 15-12-80. Upon reviewing that report, the undersigned subsequently recommended to the Honorable Chief Judge Ural Glanville that the special purpose grand jury be dissolved.

O.C.G.A. § 15-12-101(b). Chief Judge Glanville then polled the Superior Court bench, a majority of which voted to dissolve the special purpose grand jury. Following that vote, the undersigned dissolved the special purpose grand jury by way of an Order entered on 9 January 2023.

On 17 January 2023, the undersigned convened a hearing on the question of whether the special purpose grand jury's final report should be made public. The District Attorney presented argument, as did counsel for a broad collection of media interests. Having considered those arguments and relevant statutory and case law, and for the reasons set forth below, the undersigned concludes that much of the final report should not be disclosed until such time as the District Attorney completes her investigation, although two parts may now be published, consistent with protecting the due process rights of all involved.

As a threshold matter, the Court rejects the media intervenors' contention that the special purpose grand jury's final report is somehow a "court record" and thus subject to the public's general right of access to such things.[1] *See, e.g., In re Atlanta Journal-Constitution*, 271 Ga. 436, 437 (1999). The media intervenors' literalist argument that the final report is a court record because (1) the Court convened the special purpose grand jury and (2) the final report was delivered to the Court is unpersuasive. The final report, as the District Attorney argued, was ultimately destined for her, not the Court. It will inform her investigative decision-making process, not the Court's. She requested it, she petitioned the Chief Judge to convene a special purpose grand jury for it, and she and her

---

[1] A corollary of this conclusion is that the Court is not bound by the sealing requirements of Uniform Superior Court Rule 21, although the Court notes that, incidentally consistent with Uniform Superior Court Rule 21.1, the Court held a hearing on the topic of disclosure and the Court will, in this Order, be addressing many of the factors it would be obligated to consider under Rule 21 if it were making a decision to seal a court record.

staff worked with that special purpose grand jury for months in an effort to provide the grand jury with sufficient evidence to generate the report for her. Moreover, the only physical copy of the report is in the District Attorney's possession, not the Court's; it sits in no docket or official court or clerk file. That the report, per statutory process, incidentally passed through the Court's hands does not make it an official record of the court any more so than a wiretap application or a search warrant affidavit. All three documents -- report, application, and affidavit -- are parts of criminal investigative processes, not court proceedings.[2]

There is also the matter of the special purpose grand jury's "recommendation," made pursuant to O.C.G.A. § 15-12-80, that its final report be published. The statutory language is somewhat misleading. An O.C.G.A. § 15-12-80 "recommendation" is more than a mere suggestion or request: if a grand jury recommends publication, "the judge *shall* order the publication as recommended." O.C.G.A. § 15-12-80 (emphasis added). Indeed, in general, the only screening function the supervising judge has, when faced with an O.C.G.A. § 15-12-80 "recommendation" to publish, is to ensure that those portions, if any, that are the product of *ultra vires* investigation by the grand jury are redacted. *In re July-August, 2003 DeKalb Cnty. Grand Jury*, 265 Ga. App. 870, 871 (2004). In other words, if the grand jury exceeded the scope of its authority in investigating (and subsequently reporting), that unauthorized part of the grand jury's presentment must be removed before publication.[3]

---

[2] Later, when the criminal investigation is complete and an indictment has been obtained, the wiretap application and the search warrant affidavit do become part of the court record through discovery and pre-trial litigation. *At that point* the public's right of access accrues. The special purpose grand jury's final report is no different.

[3] The District Attorney argues that O.C.G.A. § 15-12-80 does not apply to the special purpose grand jury's final report because § 15-12-80 speaks only to "general presentments" and not "final reports". The Court

Having reviewed the final report, the undersigned concludes that the special purpose grand jury did not exceed the scope of its prescribed mission. Indeed, it provided the District Attorney with exactly what she requested: a roster of who should (or should not) be indicted, and for what, in relation to the conduct (and aftermath) of the 2020 general election in Georgia. Thus, facially, the final report should be published *in toto* pursuant to O.C.G.A. § 15-12-80.

But, as with many things in the law, it is not that simple. This special purpose grand jury investigation was, appropriately, largely controlled by the District Attorney. She and her team decided who would be subpoenaed, when they would appear, what questions would be asked, and what aspects of the general election would be explored. The grand jurors were, of course, able to question the witnesses as well, but the process was essentially an investigative tool designed to enable the District Attorney to gather more information about what actually happened in the days following the general election in Fulton County (and elsewhere) so that she could make a more informed decision on whether Georgia law was violated and whether anyone should be charged for doing so. It was -- again, entirely appropriately -- a one-sided exploration. There were no lawyers advocating for any targets of the investigation.[4] Potential future defendants were not able

---

rejects this semantics-over-substance argument. Regular grand juries issue (1) indictments (and, formerly, "special presentments," which, like indictments, were charging documents in which crimes were formally alleged against a defendant) and (2) general presentments. General presentments are, in both form and substance, *reports* of grand jury investigations. Special purpose grand juries, unlike regular grand juries, may not issue indictments (or special presentments), *Kenerly v. State*, 311 Ga. App. 190 (2011), which leaves them only general presentments (or reports) as an end product. A general presentment by any other name remains subject to O.C.G.A. § 15-12-80's strictures.

[4] Many of the witnesses subpoenaed to appear before the special purpose grand jury had lawyers (and some had many). None, however, was permitted to have those lawyers appear beside him during the questioning, given the rules of grand jury proceedings. There was thus no opportunity for a witness's attorney to object to a question from a prosecutor or to elicit testimony from her client that might rebut or justify or explain the witness's answers or conduct.

to present evidence outside the scope of what the District Attorney asked them. They could not call their own witnesses who might rebut what other State's witnesses had said and they had no ability to present mitigating evidence. Put differently, there was very limited due process in this process for those who might now be named as indictment-worthy in the final report.[5] That does not mean that the District Attorney's investigative process was flawed or improper or in any way unconstitutional. By all appearances, the special purpose grand jury did its work by the book. The problem here, in discussing public disclosure, is that that book's rules do not allow for the objects of the District Attorney's attention to be heard in the manner we require in a court of law.

The consequence of these due process deficiencies is not that the special purpose grand jury's final report is forever suppressed or that its recommendations for or against indictment are in any way flawed or suspect. Rather, the consequence is that those recommendations are for the District Attorney's eyes only -- for now. Fundamental fairness requires this, as a report that may recommend that criminal charges be sought against specific individuals but which was

> drafted after a secret investigation and based on an uncertain standard of proof, may be remembered long after ... denials or objections from its targets are forgotten. And the report's readers may understandably but incorrectly assume that at least the rudiments of due process -- notice and an opportunity to be heard -- were offered the accused.

---

[5] It is true that every witness had the ability to pause the proceedings and consult with his or her lawyer outside the grand jury room -- and that lawyer could then escalate concerns to the supervising judge if necessary (which some did quite liberally) -- but that is a poor and insufficient proxy for the right to have counsel present in the grand jury room, able to object, able to examine her own client, and able to call other witnesses. (Again, this is not a critique of the grand jury's investigative process; it occurred exactly as the grand jury rules envisioned. It is rather an effort to highlight how imbalanced, incomplete, and one-sided the process is for someone who might be the target of the District Attorney's (and grand jury's) attention.)

Page 5 of 8

*Thompson v. Macon-Bibb Cnty. Hosp. Auth.*, 246 Ga. 777, 779 (1980), quoting *In re Grand Jury of Hennepin County*, 271 N.W.2d 817, 819 (1978) (punctuation omitted).[6] This is particularly true if the grand jury's final report includes recommendations involving individuals who never appeared before the grand jury and so had no opportunity, limited or not, to be heard. The constitutionally protected due process rights of anyone who may be named in the final report also require this outcome: when "identifiable individuals referred to in such [reports] are afforded no statutory mechanism by which they may respond to the charges against them, 'serious questions of due process and fairness' are raised." *In re Presentments of Lowndes Cnty. Grand Jury, March Term 1982*, 166 Ga. App. 258, 258 (1983), quoting *Thompson*, 246 Ga. at 778; *see also Kelley v. Tanksley*, 105 Ga. App. 65 (1961) (restriction on publication necessary when grand jury report is critical of identifiable individuals but no indictment is returned).

A rare instance in which a general presentment (a/k/a final report) that was highly critical of the performance of a public figure but which was nonetheless allowed to be published illustrates this point about due process. Vernon Jones, in an earlier political incarnation, served as the Chief Executive Officer of DeKalb County from 2001-2009. A DeKalb County grand jury, following its investigation into Jones's alleged misuse of County funds in demanding and apparently over-deploying a personal security detail, issued a scathing report about his (mis)conduct. Jones sought to quash the report, contending that the grand jury was acting *ultra vires* when it criticized him. A trial judge

---

[6] *Thompson* was a somewhat fractured opinion. Its author, Justice Nichols, secured two full concurrences and three special concurrences (two of which were in the judgment only). There was also a wordless dissent. This splintered outcome seems to have had no impact on *Thompson's* precedential value, as it is routinely cited without reservation or reference to the split decision.

sealed everything and sent the issue to the Court of Appeals, which ruled that the report could be published pursuant to O.C.G.A. § 15-12-80 because

> Jones had an opportunity to testify before the grand jury under oath [and] those individuals that he would have called as witnesses also testified under subpoena; therefore, any of his due process rights under *Thompson v. Macon–Bibb County Hosp. Auth.*, 246 Ga. 777, 273 S.E.2d 19 (1980), were satisfied.

*In re July-August, 2003 DeKalb Cnty. Grand Jury*, 265 Ga. App. 870, 871 (2004). In other words, the Court of Appeals determined, in that unique scenario, that Jones -- who testified and who had all witnesses he would have called if presenting his side of the security detail story testify as well -- enjoyed sufficient due process for the report to be published. Here, however, for anyone named in the special purpose grand jury's final report who was not afforded the opportunity to appear before the grand jury, *none* of those due process rights has been satisfied. And for those who did appear -- willingly or not -- only the right to be heard (although without counsel or rebuttal) was protected. Given that, the Court finds that full disclosure of the final report at this time is not proper under *Thompson*, *Kelley*, and their progeny.

There are, however, three parts of the final report that are ripe for publication. They do not implicate the concerns raised in *Thompson* and *Kelley*, and, while publication may not be convenient for the pacing of the District Attorney's investigation, the compelling public interest in these proceedings and the unquestionable value and importance of transparency require their release. These three portions include the introduction and conclusion to the final report, as well as Section VIII, in which the special purpose grand jury discusses its concern that some witnesses may have lied under oath during their testimony to the grand jury. Because the grand jury does not identify those witnesses, that conclusion may be publicly disclosed at this time.

Therefore, consistent with the special purpose grand jury's recommendation made pursuant to O.C.G.A. § 15-12-80 that its final report be published, those three portions of the report will be placed in the docket for this matter (making those excerpts -- but only those excerpts -- a "court record") on 16 February 2023. The several-day delay will allow the District Attorney's team to meet with the undersigned, if necessary, to discuss logistics of publication and to determine if any portion of those three parts of the final report should be redacted for other reasons (notice of which will be provided in the 16 February 2023 docket entry).

Finally, the Court directs the District Attorney's Office to provide periodic updates on the progress of its investigation so that the Court can reassess if other parts of the special purpose grand jury's final report can properly be disclosed, consistent with the analysis set forth above.

SO ORDERED this 13th day of February 2023.

_____
Judge Robert C.I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit