# EXHIBIT B-159



**IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA**

| | |
|---|---|
| IN RE: SPECIAL PURPOSE GRAND JURY | Case No.: 2022-EX-000024 |

**MOTION OF *AMICI CURIAE* FORMER FEDERAL AND GEORGIA STATE
PROSECUTORS TO FILE A BRIEF IN OPPOSITION TO MOTION TO QUASH THE
SPECIAL PURPOSE GRAND JURY REPORT, TO PRECLUDE THE USE OF ANY
EVIDENCE DERIVED THEREFROM, AND TO RECUSE THE FULTON COUNTY
DISTRICT ATTORNEY'S OFFICE**

*Amici curiae*, Donald Ayer, John Farmer, Stuart Gerson, Tanya Miller, J. Tom Morgan,

Sarah Saldaña, William F. Weld, and Shan Wu, respectfully seek leave of this Court to appear as

*amici curiae* and file their brief in opposition to Donald J. Trump's Motion to Quash the Special

Purpose Grand Jury Report, to Preclude the Use of Any Evidence Derived Therefrom, and to

Recuse the Fulton County District Attorney's Office.  The brief is attached to this Motion as

Exhibit A.  In support of this motion, *amici curiae* state the following.

**Interest of Amici Curiae**

*Amici curiae* are a bi-partisan group of former federal and Georgia state prosecutors[1] who

collectively have decades of experience with the structure and process of law enforcement

---

[1] Mr. Ayer served as Deputy Attorney General at the U.S. Department of Justice from 1989 to
1990, Principal Deputy Solicitor General of the United States from 1986 to 1989; and U.S.
Attorney for the Eastern District of California from 1981 to 1986.

Mr. Farmer served as an Assistant U.S. Attorney, New Jersey Attorney General, Senior Counsel
to the 9/11 Commission, and Dean of Rutgers Law School.

Mr. Gerson served as the Acting Attorney General of the United States in 1993, as Assistant
Attorney General from 1989 until 1993, and as Assistant United States Attorney for the District of
Columbia from 1972 until 1975. As an Assistant United States Attorney, Mr. Gerson represented
the United States in litigation under the Uniform Act with respect to matters related to the initial
Watergate prosecution.

investigations, grand jury procedures, charging decisions, and ethical rules and restrictions that apply to prosecutors and judges.  Additionally, they have a strong interest in ensuring that all parties potentially subject to criminal investigation abide by the well-established processes and precedent governing ongoing criminal matters.  Based on their years of experience with the very issues raised in Trump's Motion, *amici* respectfully submit that their amicus brief may assist the Court in its decisional process and in its evaluation of the legal issues raised in this matter.  The amicus brief is narrowly tailored to key issues before the Court and granting leave would not cause any delay or prejudice to the parties.

WHEREFORE, *amici curiae* request this Court accept and consider the brief attached hereto.

Respectfully submitted, this 19th day of May, 2023.

Brian Kammer (Ga. 406322)
241 E Lake Dr
Decatur, GA 30030
(678) 235-4964
attybkammer@gmail.com

Norman Eisen

Ms. Miller served as an Assistant United States Attorney in the U.S. Department of Justice from 2001 to 2003. She also served as the Chief Assistant District Attorney in the Fulton County, Georgia District Attorney's Office from 2005 to 2013.

Mr. Morgan served as the District Attorney for DeKalb County, Georgia from 1992 until 2004.

Ms. Saldaña served as the U.S. Attorney for the Northern District of Texas from 2011 to 2014 and Director of U.S. Immigration and Customs Enforcement from 2014 to 2017.

Mr. Weld served as the U.S. Attorney for Massachusetts from 1981 to 1986, as the Assistant U.S. Attorney General in charge of the Criminal Division from 1986 to 1988, and as Governor of Massachusetts from 1991 until 1997.

Mr. Wu served as Counsel to Attorney General Janet Reno from 1998 until 2000 and as an Assistant United States Attorney in Washington, D.C. from 1990 until 2001.

STATES UNITED DEMOCRACY CENTER
1101 17th Street, NW, Suite 250
Washington, D.C. 20036
Tel.: (202) 999-9305
norm@statesuniteddemocracy.org

Maithreyi Ratakonda
STATES UNITED DEMOCRACY CENTER
1 Liberty Plaza, 165 Broadway, Office 2330
New York, NY 10006
Tel.: (202) 999-9305
mai@statesuniteddemocracy.org

Jonathan Williams
STATES UNITED DEMOCRACY CENTER
400 NW 7th Ave. #14310
Fort Lauderdale, FL 33311
Tel.: (202) 999-9305
jonathan@statesuniteddemocracy.org

Fred Wertheimer
DEMOCRACY 21 EDUCATION FUND
2000 Massachusetts Ave. NW
Washington, DC 20036
Tel: (202) 355-9600
fwertheimer@democracy21.org

Brad S. Karp
Harris Fischman
David K. Kessler
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Ave. of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
bkarp@paulweiss.com
hfischman@paulweiss.com
dkessler@paulweiss.com

Matthew J. Disler
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K St. NW
Washington, DC 20006
Tel: (202) 223-7300
mdisler@paulweiss.com

# EXHIBIT A

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

IN RE: SPECIAL PURPOSE GRAND JURY

Case No.: 2022-EX-000024

**BRIEF OF *AMICI CURIAE* FORMER FEDERAL AND GEORGIA STATE PROSECUTORS IN OPPOSITION TO MOTION TO QUASH THE SPECIAL PURPOSE GRAND JURY REPORT, TO PRECLUDE THE USE OF ANY EVIDENCE DERIVED THEREFROM, AND TO RECUSE THE FULTON COUNTY DISTRICT ATTORNEY'S OFFICE**

Fred Wertheimer
DEMOCRACY 21 EDUCATION FUND
2000 Massachusetts Ave. NW
Washington, DC 20036
Tel: (202) 355-9600
fwertheimer@democracy21.org

Brad S. Karp
Harris Fischman
David K. Kessler
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
1285 Ave. of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
bkarp@paulweiss.com
hfischman@paulweiss.com
dkessler@paulweiss.com

Matthew J. Disler
PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
2001 K Street, NW
Washington D.C., 20006
Tel: (202) 223-7300
mdisler@paulweiss.com

Brian Kammer (Ga. 406322)
241 E Lake Dr
Decatur, GA 30030
(678) 235-4964
attybkammer@gmail.com

Norman Eisen
STATES UNITED DEMOCRACY CENTER
1101 17th Street, NW, Suite 250
Washington, D.C. 20036
Tel.: (202) 999-9305
norm@statesuniteddemocracy.org

Maithreyi Ratakonda
STATES UNITED DEMOCRACY CENTER
1 Liberty Plaza, 165 Broadway, 23rd Floor,
Office 2330
New York, NY 10006
Tel.: (202) 999-9305
mai@statesuniteddemocracy.org

Jonathan Williams
STATES UNITED DEMOCRACY CENTER
400 NW 7th Ave. #14310
Fort Lauderdale, FL 33311
Tel.: (202) 999-9305
jonathan@statesuniteddemocracy.org

# INTRODUCTION[2]

A special purpose grand jury ("SPGJ") was impaneled on May 2, 2022 in Fulton County, Georgia to investigate "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia."[3]  Over the next eight months, approximately two dozen residents of Fulton County heard testimony from dozens of witnesses and examined electronic and physical evidence.[4]  The SPGJ then issued a report under seal making findings and recommending charges.

Prior to the SPGJ's recommendations becoming public, and prior to any indictments being issued—which must be done through a separate, regular grand jury—former President Donald J. Trump seeks what in *Amici*'s experience is extraordinary and unwarranted relief from this Court. Ignoring that SPGJs have been utilized in Georgia for decades, Trump challenges the entire SPGJ system as unconstitutional.  He also seeks to suppress the SPGJ's findings, disqualify the Fulton County District Attorney's Office ("FCDA") from any further involvement in this matter and reassign the motion to a different judge—all before knowing if he is even indicted.  Cathleen A. Latham, a former Coffee County Republican Party chair and one of the sixteen individuals who cast Electoral College ballots falsely claiming Trump won the 2020 presidential election, joins in Trump's motion.[5]

---

[2] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund the preparation or submission of this brief.  No person other than *Amici* or their counsel made a monetary contribution to the preparation or submission of this brief.

[3] *In re Request for Special Purpose Grand Jury*, No. 2022-EX-000024, Order Approving Request for Special Purpose Grand Jury Pursuant to O.C.G.A. § 15-12-100, *et seq.*

[4] Special Purpose Grand Jury Report, *In re 2 May 2022 Special Grand Jury*, No. 2022-EX-000024, at 1 ("SPGJ report").

[5] As Latham incorporates Trump's motion in its entirety, all arguments in this brief apply to Latham's motion as well.  Latham's few additional arguments are specifically addressed.

This Court should not grant the sweeping and unprecedented relief that Trump's motion seeks. Being subject to criminal investigation and potential indictment is not a cognizable injury that can support standing.  Indeed, Trump and Latham do not know whether the SPGJ has recommended charges be brought against them, whether the FCDA will seek to obtain indictments against them in front of a separate, regular grand jury, or whether that separate grand jury will vote to indict them—contingencies that must all be met before they can claim to have any injury at all. Seeking relief now is premature.  Moreover, longstanding prudential reasons make courts loathe to interfere in ongoing investigations, as they recognize that such interference will amount to an egregious violation of the separation of powers between the judicial and executive branches of government.

Even if this Court were to consider Trump's arguments on the merits, they are entirely baseless.  Trump's due process rights cannot be violated by statutes that merely establish SPGJ procedures, and in any case, such statutes are not vague.  Indeed, courts have already rejected several of the arguments he raises, finding them to be "manifestly without merit."[6]  He also cannot show that there is any conflict sufficient to disqualify the FCDA from continuing this investigation, including an absolute lack of any improper "private interest" that the FCDA has for investigating him.  Nor are the comments made by the FCDA, grand jurors, or the presiding judge improper— and in any event, no prejudice resulted from such comments.  *Amici* respectfully request Trump's motion be denied.

## **ARGUMENT**

Through their decades of experience investigating and prosecuting criminal cases, *Amici* recognize the vital importance of thorough, unbiased, and independent investigations.  Trump's

---

[6] *Georgia v. Meadows*, No. 2022-001604, 2022 WL 17335653, at *1 (S.C. Nov. 29, 2022).

request for this Court to intervene in an ongoing criminal investigation, dictate the evidence which prosecutors may consider when making investigative and charging decisions, and disqualify an entire prosecutor's office before an indictment even issues is a dramatic departure from established criminal procedures. Indeed, Trump cites no precedent for such a significant encroachment into the quintessentially executive-branch realm of law enforcement. What is more, Trump seeks this relief based on a series of arguments that are entirely meritless. The motion should be denied in full.

## I.  Trump's premature motion improperly seeks to interfere with an ongoing criminal investigation and charging decisions.

Trump seeks extraordinary relief that would significantly interfere with the FCDA's ongoing investigation—by disqualifying the FCDA from investigating him and prohibiting and suppressing "[a]ll evidence derived from the SPGJ" and preventing "any prosecuting body" from using that evidence. Mot. 51. Trump cites no precedent for thwarting an ongoing criminal investigation in this way, and in *Amici*'s view, his arguments, if accepted, pose a significant risk of improper interference in ongoing investigations  Indeed, courts have already rejected such arguments. Under established law, Trump has no cognizable injury, and separation-of-powers and other prudential principles recognized by courts in Georgia and across the country prohibit such intervention in criminal investigations.

### A.  Trump has not suffered a cognizable injury.

Georgia courts have long recognized "the requirement that plaintiffs have a cognizable injury in order to invoke the power of the courts." *Sons of Confederate Veterans v. Henry Cnty. Bd. of Commr's*, 315 Ga. 39, 62 (2022). Trump cannot establish such an injury here and therefore lacks standing. This deficiency alone requires denying the motion.

4

Trump argues he is injured because he has been "inextricably intertwined with this investigation since its inception," and has been mentioned in court filings and media coverage of the investigation. Mot. 11, 13. But that is not enough to establish standing, nor is it cause for limiting an ongoing criminal investigation. To be sure, the "threat of prosecution can weigh heavily on the mind of anyone under investigation." *Trump v. United States*, 54 F.4th 689, 700 (11th Cir. 2022); *see also Manafort v. U.S. Dep't of Justice*, 311 F. Supp. 3d 22, 31 (D.D.C. 2018). But "without diminishing the seriousness of the burden," it is not enough to justify judicial intervention. *Trump*, 54 F.4th at 700; *Manafort v. U.S. Dep't of Justice*, 311 F. Supp. 3d 22, 31 (D.D.C. 2018); *Deaver v. Seymour*, 822 F.2d 66, 69 (D.C. Cir. 1987). Enduring investigation and even prosecution is "one of the painful obligations of citizenship" and is "not generally an injury for constitutional purposes." *Stolt-Nielsen, S.A. v. United States*, 442 F.3d 177, 184 (3d Cir. 2006) (rejecting request for injunction against future indictment) (quoting *Cobbledick v. United States*, 309 U.S. 323, 325 (1940)).[7]

These same reasons apply to Latham. Latham argues she has standing because the FCDA has identified her as a "target" of the investigation, but the single case she cites does not support this. *See Bo Fancy Prods., Inc. v. Rabun Cnty. Bd. of Comm'rs*, 267 Ga. 341, 344 (1996) (stating in the First Amendment context that "the only prerequisite to attacking the constitutionality of a statute is a showing that it is hurtful to the attacker," with no mention of targets of investigations (internal quotation marks omitted)). Here, Latham, like Trump, has no cognizable injury, and

---

[7] Trump also claims he has standing based on three cases where individuals named in grand jury reports claimed that certain information about them in the reports should not be publicly released because it was prejudicial or because the grand jury was acting *ultra vires*. *See* Mot. at 11. But those cases do not support standing here. In a carefully reasoned order, the Court has already ruled that the indictment recommendations should not be publicly released at this time, in order to "protect[] the due process rights of all involved." Order re: Special Purpose Grand Jury's Final Report, at 2 (Feb. 13, 2023).

courts have repeatedly held that an individual who is the subject of an investigation lacks standing to enjoin the investigation. *See, e.g.*, *Stolt-Nielsen*, 442 F.3d at 184; *Manafort*, 311 F. Supp. 3d at 30.

There can be no cognizable injury here for the additional reason that Trump is challenging aspects of a SPGJ proceeding, not those of a regular grand jury. As he admits, an SPGJ cannot issue indictments. Any indictments will issue from a regular grand jury—a separate body that independently reviews the evidence. Trump therefore cannot claim that any alleged defects in the SPGJ process, where he has not been subpoenaed to testify, can result in a cognizable injury to him.

The Georgia Supreme Court held as much in *State v. Lampl*, 296 Ga. 892 (2015). There, the court rejected due process-based attempts to quash an indictment and suppress evidence resulting from an allegedly purposefully *ultra vires* SPGJ investigation. "Even if such egregious ill intent were borne out in the record," the court reasoned, "Lampl's current indictment was returned not by the allegedly manipulated special purpose grand jury but rather by an independent, properly constituted regular grand jury." *Id.* at 897. The court also confirmed that there was nothing improper about the regular grand jury considering evidence that "emanated from the unlawful investigation by the special purpose grand jury"—one of Trump's chief complaints here. *See id.* at 898. *Lampl* thus squarely forecloses Trump's argument that the SPGJ report and evidence could taint any future indictment.

**B. *Courts do not interfere in criminal investigations.***

Trump's motion is premature for the additional reason that it contravenes the longstanding practice of courts in Georgia and across the country to avoid interfering in criminal investigations where an individual will later have an opportunity to challenge any resulting indictment. In *Dean*

*v. Bolton*, for example, the Georgia Supreme Court declined to restrain the Attorney General's "disclosure or use" of information obtained through an allegedly unconstitutional investigation, explaining that "any attempt to suppress evidence in a criminal case must be raised by motion in that case." 235 Ga. 544, 547 (1975). Many other courts have reached the same conclusion. *See, e.g., Manafort*, 311 F. Supp. 3d at 26 (refusing to "interfere with or enjoin an ongoing criminal investigation when the defendant will have the opportunity to challenge any defects in the prosecution in the trial court or on direct appeal"); *accord In re Sealed Case*, 829 F.2d 50, 62 n.60 (D.C. Cir. 1987).

This rule against pre-indictment injunctions also reflects a basic principle of equity: that injunctions are available only when there is no adequate remedy at law. But the target of a criminal investigation has an adequate remedy for any alleged flaws investigative flaws "in the form of a motion to dismiss his indictment, if one is handed down." *Blalock v. United States*, 844 F.2d 1546, 1550 (11th Cir. 1988) (rejecting pre-indictment due process argument); *see also* O.C.G.A. § 9-5-2 ("Equity will take no part in the administration of the criminal law.").[8] (To be clear, *Amici* are aware of no such flaws.) Likewise, Trump's argument that DA Willis's alleged bias disqualifies her and her office must be raised after indictment. *See In re Stanford*, 68 F. Supp. 2d 1352, 1359 (N.D. Ga. 1999) (refusing to consider motion to disqualify during an ongoing investigation for both jurisdictional and prudential reasons); *Blalock*, 844 F.2d at 1548 (rejecting target's efforts to restrain investigation by prosecutor who allegedly said his goal was to "break [the target] or run him out of business").[9] Trump nowhere suggests that he will not be able to later assert his

---

[8] While Latham explicitly states that she is seeking injunctive relief, Trump does not. However, the relief he is seeking through his motion is the same as Latham.

[9] This Court's previous decision to address disqualification as it relates to Senator Burt Jones is not to the contrary. *See* Order Disqualifying District Attorney's Office 2 (July 25, 2022). That

arguments if he is indicted, nor could he.  Georgia law establishes procedures for challenging an indictment promptly following arraignment.  *See* O.C.G.A. § 17-7-110 *et seq*.  This is not the time to do so.

Courts' refusal to interfere with ongoing investigations reflects "bedrock separation-of-powers limitations," as criminal investigations form part of the "sphere of power committed to the executive branch."  *Trump*, 54 F.4th at 698, 701; *see United States v. Nixon*, 418 U.S. 683, 693 (1974) (recognizing prosecutors' "exclusive authority and absolute discretion to decide whether to prosecute a case").  Similarly, because the judicial branch may only decide "controvers[ies] appropriate for judicial determination," courts refrain from adjudicating hypothetical disputes, including about the propriety of criminal charges that may never be filed.  *Cheeks v. Miller*, 262 Ga. 687, 688 (1993).  Indeed, the case for deferring adjudication of these issues until after indictment is all the more compelling here because many of Trump's arguments involve constitutional issues. *See Deaver*, 822 F.2d at 71; *see also Sons of Confederate Veterans*, 315 Ga. at 65 ("[W]e must not address a constitutional question where it is unnecessary to do so.").[10]

Apart from separation-of-powers concerns, courts' resistance to deciding issues until after an indictment is filed reflect practical considerations.  In *Amici*'s view, allowing pre-indictment challenges to criminal charges would invite a "flood" of claims seeking to hobble even the most nascent investigations, "prompting prosecutors to forego investigations of 'obstreperous

---

decision arose in the context of a "challenge[] to the validity of a grand jury subpoena"—one of the "few situations" in which courts entertain challenges to grand jury proceedings before an indictment is issued.  *Blalock*, 844 F.2d at 1549-50.

[10] Latham's reliance on *Gordon v. Holder* is misplaced, as the case did not involve an attempt to interfere with an ongoing criminal investigation. *See* 721 F.3d 638, 641-42 (D.C. Cir. 2013) (considering due process challenge to law regulating tobacco sales).

litigants.'" *Deaver*, 722 F.2d at 71; *see also In re Stanford*, 68 F. Supp. 2d at 1359; *Hartford Assocs. v. United States*, 792 F. Supp. 358, 365 (D.N.J. 1992).

Indeed, just last year, the Eleventh Circuit rejected Trump's effort to interfere with another criminal investigation by obtaining a court order requiring the Department of Justice to cease use of documents seized from his Mar-a-Lago resort. *See Trump*, 54 F.4th at 697. Citing the "'familiar rule that courts of equity do not ordinarily restrain criminal prosecutions,'" the court held that Trump, like any other defendant, could not stop the government from investigating him. *Id.* (quoting *Douglas v. City of Jeannette*, 319 U.S. 157, 163 (1943)). It refused to "write a rule that allows any subject of a search warrant to block government investigations after the execution of the warrant." *Id.* at 701. Nor would it create a rule that "allows only former presidents to do so." *Id.*

In short, Trump must follow the same rules that apply to any other person faced with criminal investigation in Georgia. If he is indicted, he will have a chance to challenge the indictment and any evidence supporting it.

## II. Trump's arguments fail on the merits.

Even if it were proper to consider Trump's premature arguments, they are meritless.

### A. The statutes governing SPGJ proceedings are not unconstitutionally vague.

To begin, Trump argues that the decades-old SPGJ statutes are unconstitutionally vague on their face and as applied to him. This misapprehends the vagueness doctrine, which applies only to laws that govern private conduct. The statutory scheme establishing the SPGJ governs that public body and does not govern *private* conduct, so vagueness claims do not apply here. But even if they did, the statutes governing the SPGJ are not unconstitutionally vague.

"[V]agueness doctrine applies only to laws that regulate the primary conduct of private citizens." *United States v. Matchett*, 837 F.3d 1118, 1119 (11th Cir. 2016) (W. Pryor, C.J.,

statement respecting denial of rehearing en banc). The doctrine ensures that laws give "fair notice that [a person's] contemplated conduct is forbidden." *Baker v. State*, 280 Ga. 822, 823 (2006); *see also Smith v. State*, 285 Ga. 725, 726 (2009). It follows that rules that "do not regulate the public by prohibiting any conduct" are simply "not amenable to a vagueness challenge." *Beckles v. United States*, 580 U.S. 256, 265-66 (2017); *see O'Handley v. Weber*, 62 F.4th 1145, 1164 (9th Cir. 2023) (rejecting due process challenge to law establishing agency's mission because the law did "not attempt to prohibit anything"); *Nyeholt v. Sec'y of Veterans Affairs*, 298 F.3d 1350, 1356 (Fed. Cir. 2002); *Soules v. Kauians for Nukolii Campaign Cmte.*, 849 F.2d 1176, 1184 (9th Cir. 1988). This fundamental principle dooms Trump's due process claims. While Trump identifies many ways he thinks the SPGJ statute could be more specific, he identifies no conduct of his own—or anyone else's—whose legality is not established with sufficient clarity by the SPGJ statutes.

In any event, even if the vagueness doctrine were to apply here, the SPGJ statutes are not vague. SPGJs in Georgia have long been governed by a series of statutes applying to both regular grand juries, O.C.G.A. § 15-12-60 *et seq.*, and special purpose grand juries, O.C.G.A. § 15-12-100 *et seq.* These statutes govern a variety of SPGJ procedures, including how jurors are chosen (or disqualified); their duties, their communications, and how and when SPGJs are to be dissolved.

Set against this comprehensive statutory framework, Trump's main argument seems to be that it is unclear whether this specific SPGJ was a civil or criminal body, and that this ambiguity impacted whether out-of-state courts will compel witnesses to testify under a separate law, the Uniform Act to Secure the Attendance of Witnesses from Without the State, O.C.G.A. § 23-13-90 *et seq.*

But this issue has already been litigated multiple times, and courts, including the presiding judge in this case, have consistently held that the SPGJ is a criminal body. *See* Order Denying Motion to Quash (Governor Brian Kemp) (Aug. 29, 2022). The South Carolina Supreme Court, for example, rejected a similar vagueness argument from Trump's former Chief of Staff Mark Meadows as "manifestly without merit." *Meadows*, 2022 WL 17335653, at *1. Other courts have reached the same result. Order, *In re Flynn*, Case Nos. 2D22-3725, 2D22-3925 (Fla. 2d DCA Dec. 6, 2022) (refusing to stay order requiring testimony before SPGJ based on similar argument); Order Directing Witness to Appear in the Superior Court, Fulton County, Georgia, *In re Gingrich*, Case No. KM 2022-623 (Va. Cir. Ct. Nov. 9, 2022).[11]

Moreover, the only people allegedly affected by any purported vagueness concerns were those out-of-state witnesses who were compelled to testify before the SPGJ—not Trump. Trump acknowledges that he did not testify before the SPGJ, Mot. 10, leaving him without standing to raise this issue. *See Ga. Dep't of Hum. Servs. v. Steiner*, 303 Ga. 890, 899 (2018) (recognizing that litigants generally lack standing to assert third-party rights).[12]

Trump's argument that the statutory authorization to publish a SPGJ report is vague fares no better. Grand juries' power to recommend publication has operated essentially unchanged since 1889. *See* O.C.G.A. § 15-12-80; Ga. Laws of 1889, p. 199, § 1. Trump acknowledges that this Court was able to interpret the relevant statutes and due process issues and reach a decision about publication of the SPGJ's report. *See* Mot. 20. He faults various provisions for not being as

---

[11] Trump's citation to a dissenting opinion from a case dismissed as moot before briefing hardly shows meaningful disagreement. *See In re Pick*, 644 S.W.3d 200, 2022 WL 4003842 (Tex. Ct. Crim. App. 2022).

[12] Trump likewise seeks to improperly invoke the rights of others when he complains about whether "targets" of the SPGJ received adequate protections when they testified and inferences that the SPGJ may or may not have made about witnesses who invoked the Fifth Amendment during their testimony. *See* Mot. 27-31.

specific as he would like, but the vagueness doctrine does not "invalidate every statute . . . [that] could have been drafted with greater precision." *Rose v. Locke*, 423 U.S. 48, 49 (1975). Nor does the "mere fact that a regulation requires interpretation" or enables a judge to exercise discretion make it vague. *Ridley v. Mass. Bay Transp. Auth.*, 390 F.3d 65, 93 (1st Cir. 2004). Trump's vagueness arguments each fail.

### B. Trump identifies no reason to disqualify the FCDA.

Like his attempt to suppress evidence and quash the SPGJ's report, Trump's attempt to disqualify the FCDA is premature and meritless. This is well-supported by binding caselaw and *Amici*'s extensive experience with the ethical rules that apply to prosecutors. Even post-indictment, disqualification is "an extraordinary remedy that should be granted sparingly." *Hodge v. URFA-Sexton, LP*, 295 Ga. 136, 139 (2014). Georgia courts have identified only two scenarios in which disqualification of a prosecutor may be proper: when the prosecutor has a conflict of interest, and when the prosecutor commits "forensic misconduct." *Williams v. State*, 258 Ga. 305, 314 (1988).[13] Neither applies here.

#### i. There is no disqualifying conflict of interest.

Trump argues that because this Court previously determined DA Willis had a conflict of interest with respect to *one* person—Lieutenant Governor Burt Jones—the FCDA must be disqualified from the entire investigation. The Court has already correctly rejected this argument. *See* Order Disqualifying District Attorney's Office (July 25, 2022) ("Disqualification Order").

As this Court has noted, only in the "rarest of cases" in which a conflict is "actual and palpable, not speculative and remote" can an appearance of impropriety support disqualification.

---

[13] Courts have also recognized that "there is no clear demarcation line between conflict of interest and forensic misconduct, and a given ground for disqualification of the prosecutor might be classifiable as either." *Williams*, 258 Ga. at 314 n.4.

Disqualification Order at 4 n.6 (internal quotation marks omitted); *see Blumenfeld v. Borenstein*, 247 Ga. 406, 407-08 (1981); *Whitworth v. State*, 275 Ga. App. 790, 793 (2005). The Court previously found a disqualifying interest as to Jones only because DA Willis hosted a fundraiser for Jones's opponent in a then-ongoing political campaign. Disqualification Order at 2-5. But the Court rejected this same disqualification argument when raised by other false electors who could not show an actual conflict akin to that found with respect to Jones. Disqualification Order at 6.

Like the other false electors, Trump cannot show that DA Willis has any conflict of interest that would support disqualification from investigating or indicting him. Courts have long recognized that merely having opposing political affiliations, or having made private donations to a politician's opponents, is not sufficient to trigger disqualification. Disqualification Order at 3 n.4 (citing *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868, 884 (2009). Those interests do not demonstrate an "appearance of a prosecution unfairly based on private interests rather than one properly based on vindication of public interests." *Head v. State*, 253 Ga. App. 757, 758 (2002). Trump alleges no facts indicating that the FCDA has a private interest in his prosecution.

Trump's argument that the FCDA should be disqualified from the entire investigation relies heavily on *Young v. United States ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987). *See* Mot. at 32, 34-36, 40. But *Young* does not support his position. There, a court appointed a private attorney to prosecute criminal contempt charges related to violation of an injunction, where demonstrating a violation of the injunction would directly benefit his client's financial interests. *Id.* at 791-92, 805. In that unique circumstance, the attorney's ethical obligations to his client *"require[d]"* that that he consider those interests when pursuing contempt charges against potential defendants, thus creating an "inherent conflict in roles." *Id.* at 807 (emphasis in original). The situation here is entirely different: the only conflict this Court has identified involved DA Willis's support for an

opponent of Jones in a now-concluded campaign. There can be no similar concerns that any prosecution of Trump would be so "unfairly based on private interests" as to make this case one of the rare instances in which disqualification is required. *Head v. State*, 253 Ga.App. 757, 758 (2002). Trump has not demonstrated that the FCDA must be disqualified from investigating or prosecuting him.

### ii. DA Willis's public statements do not amount to forensic misconduct.

Trump also cannot claim that DA Willis's public statements about the investigation constitute forensic misconduct. The Georgia Rules of Professional Conduct contemplate that public statements may be "necessary to inform the public of the nature and extent of the prosecutor's action" and "serve a legitimate law enforcement purpose." Bar Rule 4-102(d), GRPC 3.8(g); *see also* Am. Bar Ass'n, Crim. Just. Standards for the Prosecution Function, Standard 3-1.10(c) (4th ed. 2017). This investigation into attempts to alter the results of the 2020 election has attracted much public attention. Trump has fueled this attention by repeatedly commenting on the investigation in public remarks and on social media posts to millions of followers.[14] In *Amici*'s view, it was therefore appropriate, and certainly no grounds for disqualification, for DA Willis to explain not just why the actions at issue merited investigation, but also to explain the circumstances that might be relevant in deciding to investigate or pursue charges.

---

[14] *See, e.g.*, Remarks by Donald J. Trump at Mar-a-Lago (Apr. 4, 2023) https://www.rev.com/blog/transcripts/trump-makes-statement-from-mar-a-lago-following-ny-arraignment-transcript ("In the wings, they've got a local racist democrat district attorney in Atlanta who is doing everything in her power to indict me over an absolutely perfect phone call, even more perfect than the one I made with the president of Ukraine."); *see also* @realDonaldTrump, Truth Social (Apr. 9, 2023, 9:48 PM) https://truthsocial.com/@realDonaldTrump/posts/110171998277493593 ("Just like New York, the Racist District Attorney in Atlanta, who presides over one of the most deadly and violent jurisdictions in the U.S. (and does nothing about it!), is having an impossible time showing that my "PERFECT" phone call was bad . . . .").

14

Moreover, Georgia law does not require DA Willis's communications on these issues to have been flawless. Instead, disqualification for forensic misconduct is appropriate only for "egregious" misconduct, as when a prosecutor engages in a "calculated plan evincing a design to prejudice the defendant in the minds of the jurors." *Williams*, 258 Ga. at 314. DA Willis's public comments do not approach this line. Trump even concedes that DA Willis's statements "might not be sufficient for disqualification." Mot. 42. There is a "quantum leap" between "extra-judicial statements made by [a] prosecutor [that may be] improper" and disqualification. *Williams*, 258 Ga. at 314. Trump therefore has not demonstrated that District Attorney Willis, or her entire office, should be disqualified from prosecuting this case.

### C. *Statements made by grand jurors who do not have the power to return an indictment do not prejudice Trump and in any event show no legal errors.*

Trump argues that several statements made by members of the SPGJ warrant suppressing the evidence developed by that body, because they reveal "deliberations" in violation of Georgia law, and because they show the SPGJ improperly considered "outside sources" and did not have a proper understanding of the Fifth Amendment right against self-incrimination. Mot. at 48. Trump claims these errors "will negatively impact the due process rights of the named individuals" in the SPGJ report. Mot. 48.

These arguments should be rejected. First, regardless of any purported errors, the SPGJ findings and evidence should not be suppressed. Under Georgia Supreme Court precedent, supposed errors in the SPGJ process cannot result in suppression of evidence because a separate regular grand jury will consider whether to issue indictments in a separate proceeding with its own procedural and constitutional safeguards. *See Lampl*, 296 Ga. at 897-98 (holding it was of "no moment" if the defendants' due process rights were in fact violated because the "current indictment

15

was returned . . . by an independent, properly constituted regular grand jury"). Second, in any event, there were no errors.

### i. The statements did not violate Georgia's grand jury secrecy laws.

As Trump acknowledges, Georgia law addressing grand jury secrecy is "relatively permissive compared to other jurisdictions." Mot. 44. Georgia law requires that grand jurors "keep the *deliberations* of the grand jury secret," O.C.G.A. § 15-12-67(b) (emphasis added), but "not all things occurring in the grand jury room," *Olsen v. State*, 302 Ga. 288, 291 (2017). Grand jurors in Georgia therefore may disclose, for example, their own mental impressions, the evidence considered, and the jury's high-level recommendations, because these are not "deliberations." *See id.* at 291; *see also id.* at 294 (explaining that grand jurors are not "bound to secrecy regarding the evidence presented to the grand jury"); *Howard v. State*, 4 S.E.2d 418, 423 (Ga. Ct. App. 1939) (allowing general recommendations from a widely-followed corruption investigation to be published in a local newspaper because they did not violate any "oath of secrecy"); *see also* O.C.G.A § 15-12-73 (excluding only "communications among grand jurors"). Indeed, Georgia courts have long endorsed this degree of transparency, reasoning that avoiding "secret or star-chamber court proceedings" is "a fundamental part of our judicial system," with the sole exception being "the deliberations of the juries." *Zugar v. State*, 194 Ga. 285, 289-90 (1942).

Here, Trump can point to no evidence that the statements by the foreperson and other grand jurors revealed "deliberations" or conversations that occurred outside the presence of prosecution or witnesses in violation of Georgia law. Nearly all of the statements concern individual mental impressions about evidence that was reviewed or statements by witnesses or prosecutors.[15] In any

---

[15] For example, Kohrs stated that Senator Lindsey Graham was "forthcoming." *See,* Blayne Alexander & Dareh Gregorian, *Georgia Grand Jury Recommended Indictments for More than a*

case, even if there were any disclosures regarding deliberations—and there were not—Trump cannot demonstrate that these statements are prejudicial. While errors in regular grand jury proceedings may be challenged after indictment if a defendant "present[s] evidence of actual prejudice," *Olsen*, 302 Ga. at 293, *Lampl* forecloses due process claims such as those presented here in the SPGJ context, *see Lampl*, 296 Ga. at 897-98.

>    *ii. The statements also do not indicate that the proceeding were tainted by any other errors.*

As a fallback, Trump argues that even if grand jurors' statements did not disclose deliberations, they reveal that the investigation was flawed because jurors relied on outside influences from the news media and drew improper inferences from witnesses' invocation of the Fifth Amendment. Neither of these arguments succeeds.

To start, there is nothing prohibiting Georgia grand jurors from accessing media sources, and Trump does not cite anything to the contrary. Similarly, despite acknowledging that, "the grand jurors recalled that the FCDA's office 'repeatedly' told the grand jurors they 'should not perceive someone invoking his or her Fifth Amendment right against self-incrimination as an admission of guilt,'" Trump claims the SPGJ's understanding and application of Fifth Amendment protections were so flawed that it must result in suppression of all SPGJ findings. Mot. 46. But as the jurors have explicitly stated, they did not draw adverse inferences from invocations of the Fifth Amendment; rather, "[w]hen people would take the Fifth over and over, we could kind of go, ugh," but "[n]ot because we're like oh my gosh you're guilty, whatever. It was like we are going

_____

*Dozen People in Trump Probe, Foreperson Says*, NBC News (Feb. 21, 2023), https://www.nbcnews.com/politics/donald-trump/georgia-grand-jury-recommended-indictments-dozen-people-trump-probe-fo-rcna71675.

to be here all day."[16]  Exasperation with the length of proceedings is not an inference of guilt. There is no reason to quash the SPGJ's report or suppress its findings.

**III. This Court's Statements Give No Reason to Quash the SPGJ Report.**

Trump argues the entire SPGJ process is flawed and any evidence obtained by the SPGJ must be suppressed because of isolated remarks made by this Court regarding other witnesses— not Trump—at a hearing where the grand jurors were not present.  *See* Mot. 48-50.  This cannot be so.  Indeed, while Trump claims that the remarks evidence a violation of the right against self-incrimination, the record shows no such thing.  *See id.*, Ex. 12 at 26-29.  At the hearing, this Court heard arguments on whether the false electors should be compelled to appear before the SPGJ. There were no determinations as to inferences that can be made from witnesses asserting their Fifth Amendment right against self-incrimination, and certainly no instructions to jurors regarding the same, as no jurors were present.  *See Baxter v. Palmigiano*, 425 U.S. 308, 319 (1976) (recognizing that precedent prohibits, during a criminal trial, "the judge and prosecutor from suggesting *to the jury* that it may treat the defendant's silence as substantive evidence of guilt" (emphasis added)).  In any case, as the Georgia Supreme Court has recognized, evidence from a purportedly unlawful or improper investigation from a SPGJ does not result in suppression of such evidence, where a separate body—a regular grand jury—is the one that issues any indictments. *Lampl*, 296 Ga. at 897-98.  The right against self-incrimination is not at issue here.

---

[16] Tamar Hallerman & Bill Rankin, *EXCLUSIVE: Behind the Scenes of Trump Grand Jury; Jurors Hear Third Leaked Trump Call*, Atlanta Journal Constitution (last updated Mar. 16, 2023), https://www.ajc.com/politics/exclusive-behind-the-scenes-of-the-trump-grand-jury/6CXLKTFMKNDU7O6TER4B7UTZPE/.

Finally, Trump asks that his motion be heard by a judge other than the presiding judge, but cites no reason for this extraordinary relief.[17]   The presiding judge has overseen the SPGJ proceedings for the past year, is well-versed in the facts and proceedings of this case, and has made careful, well-reasoned rulings, including on some of the issues raised in Trump's motion.   There is no cause for recusal here, and certainly the statements referred to above create none.

## CONCLUSION

Trump cannot establish any cognizable injury, he cannot seek the relief he does at this point in the investigation, and his substantive arguments are meritless.   Moreover, his proposed relief—seeking to quash the SPGJ report and suppress any findings from the SPGJ proceedings by calling into question the constitutionality of all SPGJs under Georgia law, and seeking to prohibit the FCDA from further involvement in this case—is, in *Amici*'s collective decades of prosecutorial experience, extreme and in contravention of established norms governing the criminal justice system.  This Court should not countenance these efforts. *Amici* respectfully request that Trump's motion be denied in its entirety.

Respectfully submitted this 19th day of May, 2023.

Brian Kammer (Ga. 406322)
241 E Lake Dr
Decatur, GA 30030
(678) 235-4964
attybkammer@gmail.com

Norman Eisen
STATES UNITED DEMOCRACY CENTER
1101 17th Street, NW, Suite 250

---

[17] Trump also does not cite the standard for judicial recusal or provide supporting affidavits that explain how the presiding judge's actions fall within that standard so that recusal is required. *See, e.g.*, *Mayor & Alderman v. Batson-Cook Co.*, 291 Ga. 114, 115 (2012) (listing limited circumstances under which recusal is required in the state).

Washington, D.C. 20036
Tel.: (202) 999-9305
norm@statesuniteddemocracy.org

Maithreyi Ratakonda
STATES UNITED DEMOCRACY CENTER
1 Liberty Plaza, 165 Broadway, Office 2330
New York, NY 10006
Tel.: (202) 999-9305
mai@statesuniteddemocracy.org

Jonathan Williams
STATES UNITED DEMOCRACY CENTER
400 NW 7th Ave. #14310
Fort Lauderdale, FL 33311
Tel.: (202) 999-9305
jonathan@statesuniteddemocracy.org

Fred Wertheimer
DEMOCRACY 21 EDUCATION FUND
2000 Massachusetts Ave. NW
Washington, DC 20036
Tel: (202) 355-9600
fwertheimer@democracy21.org

Brad S. Karp
Harris Fischman
David K. Kessler
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
1285 Ave. of the Americas
New York, NY 10019-6064
Tel: (212) 373-3000
bkarp@paulweiss.com
hfischman@paulweiss.com
dkessler@paulweiss.com

Matthew J. Disler
PAUL, WEISS, RIFKIND, WHARTON
& GARRISON LLP
2001 K Street, NW
Washington D.C., 20006
Tel: (202) 223-7300
mdisler@paulweiss.com

## CERTIFICATE OF SERVICE

I hereby certify that I have this day caused a true and correct copy of the foregoing Motion to File Amicus Brief to be filed with the Clerk of Court and by electronic mail to the following counsel of the parties.

> Jennifer L. Little
> Jennifer Little Law, LLC
> Jlittle@jllaw.com
>
> Drew Findling
> Marissa Goldberg
> Findling Law Firm
> drew@findlinglawfirm.com
> marissa@findlinglawfirm.com
>
> Kieran J. Shanahan
> Shanahan Law Group, PLLC
> kieran@shanahanlawgroup.com
>
> Fani T. Willis
> Will Wooten
> Office of the District Attorney
> Fani.willisda@fultoncountyga.gov
> Will.wooten@fultoncountyga.gov

This 19th day of May.

Brian Kammer