# EXHIBIT B-171



IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| | |
|---|---|
| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY | 2022-EX-000024 |

### ORDER ON MOTION TO QUASH, PRECLUDE, AND RECUSE

On 20 March 2023, former President Trump filed a motion to quash the Special Purpose Grand Jury's Final Report, to preclude any State prosecuting agency from using any evidence derived from the Special Purpose Grand Jury's work, and to disqualify the Fulton County District Attorney's Office from further investigation into/prosecution of alleged interference with the 2020 general election in Georgia.[1] On 28 April 2023, Cathleen Latham, one of the "alternate" presidential electors advanced by Georgia's Republican Party in the aftermath of the 2020 general election, filed a motion joining Trump's motion. On 15 May 2023, the District Attorney responded to the two motions and certain media intervenors did the same -- although the intervenors' response was limited to opposing Trump and Latham's efforts to suppress the Final Report. Finally, on 19 May 2023, a "bipartisan" collection of former federal and state prosecutors submitted an *amicus* brief opposing all relief sought by Trump and Latham.[2] At that point, the record was complete, as the Court declined Trump's request to file a reply brief, finding the 500+ pages of pleadings ample and sufficient to resolve the issues presented.

---

[1] Trump also sought to have either the Chief Judge of the Atlanta Judicial Circuit or "a duly assigned Fulton County Superior Court judge" other than the undersigned consider his motion. Trump mot. at 1. Counsel for Trump -- seasoned Georgia practitioners -- are all no doubt familiar with Uniform Superior Court Rule 25, which prescribes the method for seeking the recusal of the judge assigned to a matter. That required approach was not followed here in any respect and so the motion necessarily remains with the judge originally randomly assigned to supervise the Special Purpose Grand Jury.

[2] The 19 May 2023 filing was more specifically a motion to allow the *amici* to file a brief for the Court's consideration. That motion is hereby GRANTED; the *amicus* brief is part of the universe of pleadings the Court considered in reaching its conclusions in this Order.

1. Precluding Further Prosecution

Having reviewed the pleadings, the Court now finds that neither Trump nor Latham enjoys standing to mount a challenge -- at this pre-indictment phase of the proceedings -- to the continued investigation into and potential prosecution of possible criminal interference in the 2020 general election in Georgia. The movants' asserted "injuries" that would open the doors of the courthouse to their claims are either insufficient or else speculative and unrealized. They are insufficient because, while being the subject (or even target) of a highly publicized criminal investigation is likely an unwelcome and unpleasant experience, no court *ever* has held that that status alone provides a basis for the courts to interfere with or halt the investigation.[3] Trump knew this, and now Latham does too: "No doubt the threat of prosecution can weigh heavily on the mind of anyone under investigation. But without diminishing the seriousness of the burden, that ordinary experience cannot support extraordinary jurisdiction." *Trump v. United States*, 54 F.4th 689, 700 (11th Cir. 2022) (citations omitted); *see also Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993) ("if the mere threat of prosecution were allowed to constitute irreparable harm, every potential defendant could point to the same harm and invoke the equitable powers of the court").[4]

---

[3] And for some, being the subject of a criminal investigation can, à la Rumpelstiltskin, be turned into golden political capital, making it seem more providential than problematic. Regardless, simply being the subject (or target) of an investigation does not yield standing to bring a claim to halt that investigation in court.

[4] Both *Trump* and *Ramsden* involve our federal district courts' limited equitable jurisdiction in the context of pre-indictment challenges to search warrants brought pursuant to Federal Rule of Criminal Procedure 41. It is true that federal standing requirements -- which are "grounded in Article III's limitation of the federal judicial power to only certain kinds of 'cases' and 'controversies'" -- do not control standing analysis in Georgia's courts. *Sons of Confederate Veterans v. Henry Cnty. Bd. of Commissioners*, 315 Ga. 39, 45 (2022). Nonetheless, "from the earliest days" Georgia's courts "have understood the power of courts -- the judicial power -- to be limited to cases involving actual controversies, which requires a showing of some injury." *Id.* at 62. Thus, *Trump* and *Ramsden's* analysis of what constitutes actual injury, in the context of pre-indictment criminal investigations, is instructive -- if not memorable to Trump and his legal team.

The professed injuries are also speculative and unrealized because there is, as of yet, no indictment that creates the genuine controversy required to confer standing.[5] Trump and Latham presently theorize that evidence derived from the Special Purpose Grand Jury will be used to secure whatever indictment(s) may be imminent. They further suppose that they will be named in one or more charging documents. Perhaps and perhaps. Alone, that *possibility* is not enough to create a controversy, cause an injury, or confer standing. So Trump and Latham necessarily further allege that the information from the Special Purpose Grand Jury is fatally tainted due to procedural missteps made by the grand jury and the supervising judge.[6] Assuming without finding that there were procedural infirmities, relief continues to elude the pair at this pre-indictment juncture:

> Even if ... some of the evidence presented to the regular grand jury emanated from the unlawful investigation by the special purpose grand jury, this in itself is of no moment, for grand juries, unlike petit juries, are authorized to consider evidence without regard to its eventual admissibility at trial.

*State v. Lampl*, 296 Ga. 892, 897–98 (2015); *see also Mitchell v. State*, 239 Ga. 456, 459 (1977) (evidence which the grand jury receives in finding a true bill is "not subject to inquiry").[7]

---

[5] The Court appreciates that "a wrongful indictment is no laughing matter; often it works a grievous, irreparable injury to the person indicted. The stigma cannot be easily erased. In the public mind, the blot on a man's [or woman's] escutcheon is seldom wiped out by a subsequent judgment of not guilty." *United States v. Search of Law Office, Residence, & Storage Unit Alan Brown*, 341 F.3d 404, 410 (5th Cir. 2003) (punctuation and citation omitted). However, in this situation, movants' rather overwrought allegations of prosecutorial overreach and judicial error do not suffice to show that there is a significant risk of a "wrongful" indictment (or even a blot on an escutcheon).

[6] The pair also argue that the statutes authorizing special purposes grand juries are unconstitutionally vague. While this Court finds such an argument unpersuasive -- as a plain language reading of the statutes (and the case law interpreting them) demonstrates -- it is not reaching the merits of that position, given the ruling on standing.

[7] It is further important to note, in considering injury and standing (and lack thereof), that neither Trump nor Latham appeared before the Special Purpose Grand Jury. Thus, the litany of procedural and constitutional shortcomings that they allege infected the Special Purpose Grand Jury's work are all applicable to... someone not named Trump or Latham. Moreover, several of their challenges to the

Finally, there are sound policy reasons, buttressed by controlling precedent, to defer resolution of these complaints until indictment.[8] Prosecution is an executive branch function; the judicial branch should involve itself sparingly and delicately in the work that precedes formal charges. *See State v. Wooten*, 273 Ga. 529, 531 (2001) ("In the district attorney's role as an administrator of justice, ... she has broad discretion in making decisions prior to trial about who to prosecute [and] what charges to bring"); *Evans v. State*, 356 Ga. App. 438, 440 (2020) ("not even a trial court may interfere with a prosecutor's discretion to pursue criminal prosecution"). After formal charges are brought, the locus of power, authority, and jurisdiction shifts to the courts. Arguments like those being made prematurely in the pending motions can be more effectively (and reasonably) presented and ruled upon when the full picture of who is being charged with what has been painted. Guessing at what that picture might look like before the investigative dots are connected may be a popular game for the media and blogosphere, but it is not a proper role for the courts and formal legal argumentation.[9]

---

constitutionality of the statutory scheme that authorizes special purpose grand juries -- to include in particular their assertion that, in Georgia, special purpose grand juries can only conduct civil investigations and thus cannot compel the attendance of out-of-state witnesses -- were repeatedly rejected by the many foreign jurisdictions that were confronted with such arguments.

[8] "A robust standing doctrine is necessary to ensure that courts remain the least dangerous branch of government. When we decide only cases brought by parties seeking redress for actual harm, we limit ourselves to exercising only that power granted us by the Georgia Constitution." *Parker v. Leeuwenburg*, 300 Ga. 789, 793 (2017) (Peterson, J., dissenting).

[9] A further bar to the form of relief being sought by Trump and Latham is O.C.G.A. § 9-5-2, which mandates that equity "will take no part in the administration of the criminal law." *See also GeorgiaCarry.org v. Atlanta Botanical Garden, Inc.*, 299 Ga. 26, 31 (2016) (requesting injunctive relief that would enjoin the State from prosecuting the movant "squarely implicates the administration of criminal law and, thus, is improper"). Latham is more explicit in her motion, demanding "permanent injunctive relief" from (1) the use of any evidence derived from the Special Purpose Grand Jury's work and (2) the Fulton County District Attorney's Office continued participation in the "investigation or prosecution of this matter." Latham Mot. at 5-6. Trump's requests are no different, even if not so transparent in their nomenclature.

There will be a time and a forum in which Trump and Latham can raise their concerns about the constitutionality of the special purpose grand jury statutes, about the performance of this particular Special Purpose Grand Jury (and the judge supervising it), and about the propriety of allowing the Fulton County District Attorney to remain involved with whatever criminal prosecution -- if any -- results from the work of this Special Purpose Grand Jury. That time is not now and that forum is not here. Should either (or both) movant be indicted, they can raise all these issues (as they undoubtedly will) before the judge who is actually confronted with a case and controversy, whether that judge be here in the Superior Court of Fulton County or instead in the Northern District of Georgia.[10]

2. Quashing the Final Report

Trump and Latham both seek to have the Special Purpose Grand Jury's final report locked away from public view forever. Such permanent silencing of that investigative body is not what either statutory or case law generally allows. *See* O.C.G.A. § 15-12-80 (when a grand jury recommends to the court that its presentments be published, "the judge *shall* order the publication") (emphasis added); *In re Gwinnett Cnty. Grand Jury*, 284 Ga. 510, 513 (2008) (holding that USCR 21, which restricts the courts' ability to limit access to court files, encompasses "presentments made by the grand jury in open court at the conclusion of the grand jury's investigation"). However, a more complete analysis of Trump and Latham's claimed due process rights concerning publication of the Final Report -- assuming, *arguendo*, that they are named in it -- is unnecessary at this time because those portions of the report that have not been released will, per this Court's

---

[10] *See* 28 U.S.C. 1442.

earlier Order entered on 13 February 2023, remain out of the public's eye until the District Attorney's final charging decision, which she has widely advertised will occur sometime in the first two weeks of August. After that, the Court will, as promised, revisit the question of releasing the remainder of the Final Report. Until then, motions to quash or expunge are MOOT.[11]

### 3. Disqualifying the District Attorney

Finally, Trump and Latham seek to have the District Attorney and her office "disqualified from any further involvement in this matter." Trump Mot. at 1. This is a bold request; a significant showing must be made to grant such uncommon relief.[12] There are two primary grounds for disqualification of a prosecuting attorney: (1) conflict of interest and (2) "forensic misconduct." *Williams v. State*, 258 Ga. 305, 314 (1988). Neither ground has been shown here. The conflicts of interest that typically suffice to support a motion to disqualify arise when the prosecutor previously represented the defendant with respect to the crimes charged, when she consulted with the defendant in

---

[11] There is one potential intervening event that could require reconsideration of this mootness finding: the media intervenors have appealed this Court's 13 February 2023 Order restricting publication of certain portions of the Final Report. *See In re: 2 May Special Purpose Grand Jury*, Case No. A23A1453, filed 4 May 2023. Should the Court of Appeals reverse this Court's ruling and direct the Court to enter a revised Order mandating the release of the remainder of the report *before* the District Attorney completes her charging process, the Court will revisit Trump and Latham's arguments about quashal (and expungement), as well as the media intervenor's and *amici*'s arguments opposing such relief.

[12] As both the movants and the District Attorney note, such a showing was made earlier as to a lone subject of the investigation, Lieutenant Governor Burt Jones (who, at the time, was candidate Burt Jones). In that situation -- in stark contrast to this one -- the District Attorney had lent her name and her public office to the fundraising purposes of a political opponent of Jones, creating an unavoidable and profound appearance of partiality. That decision injected direct partisanship into a criminal investigation that should remain as politically neutral as possible. For that reason, the District Attorney and her office were disqualified from pursuing charges against Jones for any possible criminal interference in the general election of 2020. *See* Order of 25 July 2022 in this docket. Neither movant has demonstrated anything of the sort in their cases -- indeed, it is unclear how Latham could, given that she was not a candidate for any office. Public comments about the need for and importance of the investigation fall far short of the type of bias, explicit or implicit, that must be found.

a professional capacity with regard to such crimes, or when she "has acquired a personal interest or stake in the defendant's conviction." *Ventura v. State*, 346 Ga. App. 309, 310–11 (2018) (citation omitted). Forensic misconduct occurs when, for example, the prosecutor improperly expresses her "personal belief in the defendant's guilt." *Williams*, 258 Ga. at 314.

None of that has happened -- yet. There is no evidence (or even a contention) that the District Attorney (or any of her many assistants) ever represented Trump or Latham or consulted with them in a professional legal capacity. Nor is there evidence of any direct financial interest that any member of the District Attorney's Office has in the outcome of the case, unlike the sole case upon which movants rely: the fractured, inapposite, and unpersuasive opinion in *Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787 (1987).[13] And as for "forensic misconduct" -- while both sides have done enough talking, posting, tweeting ("X'ing"?), and press conferencing to have hit (and perhaps stretched) the bounds of Georgia Rules of Professional Conduct 3.6(a) and 3.8(g) -- neither movant has pointed to any averments from the District Attorney or her team of lawyers expressing a belief that Trump or Latham is guilty or has committed this or that offense. Rather, the consistent -- and persistent -- theme has been the standard fare of "pursuing the evidence where it leads us," "holding everyone accountable," and "no one being above the law." The drumbeat from the District Attorney has been neither partisan (in the political sense)

---

[13] The speaking engagements, book deals, etc., that will inevitably flow from this investigation are equal opportunity prospects for prosecutors and defense attorneys alike -- and not linked to any particular outcome, as the O.J. Simpson case illustrated. And the claim Trump raises in his amended petition for mandamus (discussed in n. 14 below) that the District Attorney has an improper financial stake in the investigation because of unsolicited political support she is receiving is similarly a non-starter: that private citizens who take a dim view of the former President have responded to *third-party* urgings to support the District Attorney's re-election campaign is neither remarkable nor disqualifying. If it were, no elected prosecutor could ever take on a politically polarizing case.

nor personal, in marked and refreshing contrast to the stream of personal invective flowing from one of the movants.

Put differently, the District Attorney's Office has been doing a fairly routine -- and legally unobjectionable -- job of public relations in a case that is anything but routine. None of what movants cite rises to the level of justifying disqualification and all of it, collectively, falls far short of what prompted the District Attorney's disqualification from the investigation into Lieutenant Governor Jones. The prosecutor is not a neutral party and does not need to pretend to be: she has a cause she has sworn to pursue, and in that pursuit of justice, she "is necessarily a partisan in the case. If [s]he were compelled to proceed with the same circumspection as the judge and jury, there would be an end to the conviction of criminals." *State v. Sutherland*, 190 Ga. App. 606, 607 (1989) (citation omitted). For these reasons, Trump and Latham's motions to disqualify the District Attorney are DENIED.[14]

\*   \*   \*

---

[14] There is an additional basis for denial, not reached here but certainly one preserved for pursuit should this Order be appealed: waiver. As the District Attorney noted in her response, a motion to disqualify the prosecutor in a criminal case "must be raised promptly after the defendant learns of a potentially disqualifying matter." *Reed v. State*, 314 Ga. 534, 546 (2022). Much, if not all, of what serves as the movants' grounds for disqualification is quite dated, having occurred months before their motions were filed -- and movants offer no explanation for their delay in seeking disqualification.

Former President Trump and alternate Elector Latham's motions to preclude any State prosecuting agency from using evidence derived from the Special Purpose Grand Jury's work are DISMISSED for lack of standing. Their motions to quash (or expunge) the Final Report of the Special Purpose Grand Jury are DENIED as moot. And their motions to disqualify the District Attorney and her office are DENIED.[15]

SO ORDERED this 31st day of July 2023.

Judge Robert C.I. McBurney
Superior Court of Fulton County

---

[15] Perplexingly, prematurely, and with the standard pugnacity, Trump has filed not one but *two* mandamus actions against the District Attorney and this Court -- one in the Supreme Court of Georgia (case S23O1134, which the Supreme Court has already dismissed) and one in the Superior Court of Fulton County (Civil Action 2023CV382670). Peculiarly, neither petition requests the sole relief available under mandamus: an order "compel[ling] a public officer to perform a required duty." *Love v. Fulton Cnty. Bd. of Tax Assessors*, 311 Ga. 682, 692 (2021) (citation omitted). That "required duty," though it is only obliquely referenced in the twin mandamus petitions, could only be for this Court to rule on the pending motion. Perhaps the conspicuous omission of a demand for such relief is due to petitioner's counsel's familiarity with O.C.G.A. § 15-6-21(b). Pursuant to that statute, a superior court judge in a county with more than 100,000 inhabitants (such as Fulton County) must decide all motions within 90 days after briefing is complete. Basic calendar math shows why mandamus relief is not (yet) available: the State's response was filed on 15 May 2023, per the Court's amended (and unobjected to) Scheduling Order of 1 May 2023. Ninety days from 15 May 2023 is 13 August 2023 -- which is a Sunday -- making the statutory deadline for the Court's Order 14 August 2023. Before that date, there is nothing to compel. We are several weeks from that date and here is the Order. This filing, while it will indubitably generate an appeal, should render moot Civil Action 2023CV382670 as to the supervising judge. In the future, counsel is encouraged to follow the professional standard of inquiring with chamber's staff about timing and deadlines before burdening other courts with unnecessary and unfounded legal filings.