# Exhibit A



FILED IN OFFICE

AUG 29 2022

DEPUTY CLERK SUPERIOR COURT
FULTON COUNTY, GA

IN THE SUPERIOR COURT OF FULTON COUNTY
STATE OF GEORGIA

| IN RE 2 MAY 2022 SPECIAL PURPOSE GRAND JURY -- SUBPOENA FOR GOVERNOR KEMP | 2022-EX-000024 |
|---|---|

### ORDER DENYING MOTION TO QUASH

On 20 January 2022, the District Attorney of Fulton County, the elected official responsible for investigating, charging, and prosecuting felony criminal offenses in this Circuit, petitioned the Chief Judge of the Superior Court of Fulton County to convene the entire Superior Court bench to consider the District Attorney's request for a special purpose grand jury. That grand jury's charter, if approved, would be to conduct a criminal investigation into "the facts and circumstances relating directly or indirectly to possible attempts to disrupt the lawful administration of the 2020 elections in the State of Georgia" and to prepare a report and recommendation for the District Attorney advising her whether she should seek to prosecute anyone for such potential crimes. On 24 January 2022, the Chief Judge, having received a majority of the twenty judges' assent, issued an Order authorizing the convening of a special purpose grand jury for this criminal investigation.[1]

On 2 May 2022, the special purpose grand jury was selected and sworn in; in June 2022 it began receiving evidence and investigating the possibility of criminal interference in the 2020 general election. On 4 August 2022, the District Attorney issued a subpoena to Governor Brian Kemp; that subpoena, just like those received by the Attorney General

---

[1] Nothing in the convening request (or the subsequent convening Order) indicated that the District Attorney, the Superior Court bench, or the special purpose grand jury would be considering civil violations or the possibility of bringing any civil action. The focus and purpose were and have been ever since to investigate *criminal* violations and consider *criminal* charges.

1

and the Secretary of State, directed the Governor to appear before the special purpose grand jury so that that investigative body could learn more about whether criminal conduct had occurred in connection with alleged efforts to interfere with the 2020 general election in Georgia.  According to both the pleadings from and the lawyers for the Governor and the District Attorney, this subpoena came only after weeks of tortured and tortuous negotiations over obtaining an interview with the Governor -- the details of which do not bear repeating here, other than to note that both sides share responsibility for the torture and the tortuousness.

The date of the Governor's subpoenaed appearance before the special purpose grand jury was changed at least once, at his lawyer's request.  On the eve of the most recently agreed-upon date for the Governor to appear, his lawyers filed a motion to quash the subpoena.  The motion invoked sovereign immunity and asserted that this Court lacked jurisdiction to issue, enforce, or even consider the subpoena.  The State promptly responded and, on 25 August 2022, the Court held a public hearing on the matter. Having considered the pleadings, oral arguments, and relevant case law, the Court finds that it does enjoy jurisdiction and that the subpoena should not be quashed; the motion is DENIED.  However, the Court will delay the Governor's appearance before the special purpose grand jury until some date soon after the 8 November 2022 general election.

*   *   *

In Georgia, one cannot sue "the State" unless the State has enacted a specific waiver, legislative or constitutional, that permits a particular species of civil claim -- tort, contract, declaratory judgment, etc. -- to be brought against it. That is, the State and its agencies and agents (of which the Governor is one) enjoy sovereign immunity, a constitutional doctrine that "forbids our courts to entertain a lawsuit against the State

2

without its consent." *Lathrop v. Deal*, 301 Ga. 408, 408 (2017); *see also* Ga. Const. art. I, § 2, ¶ IX(e). Absent that consent, Georgia's courts lack jurisdiction to consider the claim brought against the State. *McConnell v. Dept. of Labor*, 302 Ga. 18, 18-19 (2017) (if sovereign immunity applies, a court "lacks authority to decide the merits of a claim that is barred"); *see also City of Coll. Park v. Clayton Cnty.*, 306 Ga. 301, 314-15 (2019).

Both sides agree with the foregoing -- as they should, as it is well-settled law. Where they diverge is whether sovereign immunity applies in the context of this special purpose grand jury's criminal investigation. The Governor insists he is immune to the subpoena because there is no waiver, legislative or constitutional, that would allow the grand jury to require him (or, presumably, any other state agent, including the Secretary of State and Attorney General[2]) to appear in what he characterizes as a civil proceeding. The District Attorney argues that sovereign immunity does not apply in this context because, first, there is no lawsuit being brought against the State (or the Governor), and second, sovereign immunity simply has no application in criminal matters.

The Governor relies primarily on *State v. Bartel*, 223 Ga. App. 696 (1996), in support of his claim that what this special purpose grand jury is doing is conducting a civil investigation.[3] *Bartel* does not provide the support his claim needs because *Bartel* does

---

[2] Who, interestingly, is the lead signatory on the Governor's motion seeking quashal (despite having himself appeared before the special purpose grand jury without incident, objection, or invocation of the doctrine of sovereign immunity).

[3] He additionally relies on two cases that establish that a grand jury cannot conduct *civil* investigations of state offices and officials; rather, a grand jury's civil authority is limited by statute -- and likely by sovereign immunity, although these cases do not reach that doctrine -- to investigations of county-level entities. These cases are inapposite because this special purpose grand jury is engaged in a criminal investigation. Moreover, one of the two cases, *Floyd Cnty. Grand Jury v. Dep't of Family & Children Servs.*, 218 Ga. App. 832 (1995), suggests, albeit in dicta, that had the grand jury in that case been engaged in a criminal investigation, it would have been authorized to subpoena state agents. The Governor's legal team also points the Court to *Kenerly v. State*, 311 Ga. App. 190 (2011), but that case merely reaffirmed what the District Attorney has always acknowledged: special purpose grand juries do not have the authority to issue indictments. *Kenerly* in no way prohibits special purpose grand juries from engaging in criminal investigations and indeed the special purpose grand jury impanelment statute explicitly allows it. O.C.G.A.

3

not say what he says it does. In *Bartel*, a witness who had appeared before a special purpose grand jury in Floyd County was later prosecuted for allegedly having perjured himself while testifying. The *Bartel* special purpose grand jury was convened to conduct a civil investigation into "alleged irregularities in the operations of the Floyd County Hospital Authority." 223 Ga. App. at 696. Contrary to the Governor's presentation at the hearing on his motion to quash, the court in *Bartel* did *not* "conclude[] that special purpose grand juries conduct only civil investigations." (Movant's PowerPoint at Slide 3). No such language can be found in *Bartel*, which dealt with the nature of the oath the witnesses took before testifying.[4] It is correct to say that the special purpose grand jury in *Bartel* had, as its purpose, a civil investigation. It is incorrect to say that the Court of Appeals in *Bartel* in any way concluded that the *only* purpose a special purpose grand jury can have is civil.

Which brings us back to *this* special purpose grand jury. As described at the outset of this Order, its purpose is unquestionably and exclusively to conduct a criminal investigation: its convening was sought by the elected official who investigates, lodges, and prosecutes criminal charges in this Circuit; its convening Order specifies its purpose as the investigation of possible criminal activities; and its final output is a report recommending whether criminal charges should be brought. Unlike the special purpose grand jury in *Bartel*, it is not investigating "irregularities" in hospital administration. It

---

§ 15-12-100(a) ("The chief judge of the superior court of any county ... on his or her own motion [or] on motion or petition of the district attorney ... may request the judges of the superior court of the county to impanel a special grand jury for the purpose of investigating any alleged violation of the laws of this state...."). That a special purpose grand jury engaged in a criminal investigation cannot issue an indictment does not diminish the criminal nature of its work or somehow transmogrify that criminal investigation into a civil one. Police officers, too, lack the authority to indict anyone, but their investigations are plainly criminal.

[4] Indeed, hopefully due only to inadvertence, the Governor's legal team, in its visual presentation making this unfounded claim about the holding of *Bartel*, directed the Court via citation to a page of the opinion (699) that does not exist.

4

will not be recommending whether anyone should be sued or should be referred for civil administrative proceedings; it will be recommending whether anyone should be prosecuted for crimes. Put simply, there is nothing about this special purpose grand jury that involves or implicates civil practice.[5]

Because neither the special purpose grand jury nor the District Attorney has brought (or is even contemplating) a lawsuit (*i.e.*, a civil proceeding) against the Governor, his office, or any of his agents, there is no sovereign immunity to invoke. Again, to quote *Lathrop*, that doctrine "forbids our courts to entertain a lawsuit against the State without its consent." 301 Ga. at 408. It is clear that the Governor is not consenting to this subpoena. It is also clear that his lack of consent is of no jurisdictional moment to this Court because there is before it no civil proceeding, suit, or action. The Governor must honor the subpoena -- as have the Secretary of State and the Attorney General and many other agents of the State in these criminal proceedings. Sovereign immunity wards off civil actions, not criminal ones.[6]

Given that decision, the Court turns next to the process concerns raised by the Governor: about what must he testify and when? As with several other witnesses who, in response to their lawful subpoenas, raised concerns about various privileges, the Governor's questioning will have limits. Neither the District Attorney nor the grand

---

[5] The one exception to date has been the lack of civility among the attorneys involved. As the streams of publicly revealed e-mails demonstrate, that all-too-common and always unwelcome aspect of civil litigation has intruded upon these criminal proceedings.

[6] That this is so was made all the more plain at the hearing by (1) the fact that *every* sovereign immunity case the Governor's well-resourced legal team cited in court and in its motion to quash involved civil proceedings; (2) the Court's observation that "the State" is the ultimate instigator of any legal proceedings that will flow from this investigation (*i.e.*, an indictment styled "The State of Georgia versus Defendant X"), which would explain why there are no "criminal" sovereign immunity appellate cases asserting that the State is immune from itself; and (3) the District Attorney's apt example of what would happen in a world in which sovereign immunity applied to criminal actions: police officers could flout subpoenas, GBI forensic experts could resist summonses on the basis that they work at the State level and not the "local" level, etc.

5

jurors may ask the Governor about the contents of any attorney-client privileged communications. The Court is aware of several conversations of interest to the investigation in which the Governor participated and to which the attorney-client privilege applies. As with those other witnesses, questioning must cease about the contents of the communications if the privilege is validly raised. Undoubtedly, other issues will arise that do not fall neatly into this category of privilege. If they cannot be resolved by the fleet of lawyers on each side, they should be brought to the Court for resolution (or at least helpful direction).[7]

Remaining is the question of when the Governor will need to honor his subpoena. The answer is after the 8 November 2022 general election. The Governor is in the midst of a re-election campaign and this criminal grand jury investigation should not be used by the District Attorney, the Governor's opponent, or the Governor himself to influence the outcome of that election. The sound and prudent course is to let the election proceed without further litigation or other activity concerning the Governor's involvement in the special purpose grand jury's work. Once the election is over, the Court expects the Governor's legal team promptly to make arrangements for his appearance.[8]

SO ORDERED this 29th day of August 2022.

_____
Judge Robert C.I. McBurney
Superior Court of Fulton County
Atlanta Judicial Circuit

---

[7] The Court declines the Governor's invitation to import wholesale into Georgia law the concept of executive privilege. Its time may come, but this is not it.

[8] The Court also declines to issue a certificate of immediate review of this decision because it is clear that sovereign immunity does not apply to criminal matters. *See Rivera v. Washington*, 298 Ga. 770, 777 (2016) (recommending issuance of certificate of immediate review when resolution of immunity issue is not clear).

6