# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| THE STATE OF GEORGIA, | Case Nos. 1:23-cv-3621 |
| Plaintiff, | 1:23-cv-3721 |
| v. | |
| MARK R. MEADOWS, | |
| Defendant, | |
| and | |
| JEFFREY B. CLARK, | |
| Defendant. | |

## PROPOSED BRIEF FOR FORMER JUDGES, PROSECUTORS, AND STATE AND FEDERAL EXECUTIVE OFFICIALS AS *AMICI CURIAE* IN SUPPORT OF REMAND

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................... ii

INTEREST OF AMICI ............................................................................1

INTRODUCTION ...................................................................................1

ARGUMENT ..........................................................................................3

I.    Mr. Meadows And Mr. Clark Were Indicted For Electioneering
      Conduct Unrelated To Any Duty Of Their Offices.........................................3

II.   Mr. Meadows And Mr. Clark Have No Colorable Federal Defense.............11

III.  Removal Here Would Not Serve The Purpose Of The Federal-Officer
      Removal Statute.............................................................................16

CONCLUSION .....................................................................................19

APPENDIX

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Arizona v. Manypenny*, 451 U.S. 232 (1981)..........................................2, 11, 12, 14

*Baucom v. Martin*, 677 F.2d 1346 (11th Cir. 1982) ................................13

*Bond v. United States*, 572 U.S. 844 (2014) ......................................................2

*Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135 (11th Cir. 2017) ............................................................................................5

*Charudattan v. Darnell*, 834 F.App'x 477 (11th Cir. 2020) ..................................10

*Clinton v. Jones*, 520 U.S. 681 (1997)........................................................6

*County of San Mateo v. Chevron Corporation*, 32 F.4th 733 (9th Cir. 2022) ................................................................................4, 16

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949) ..................................14

*Jefferson County v. Acker*, 527 U.S. 423 (1999) ....................................2, 4

*Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286 (5th Cir. 2020).................4, 5, 9

*Maryland v. Soper*, 270 U.S. 9 (1926)........................................................4

*Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178 (4th Cir. 2022) .................................................................................5, 11

*Michigan Welfare Rights Organization v. Trump*, 2022 U.S. Dist. LEXIS 215474 (D.D.C. Nov. 28, 2022)..........................................8, 9

*Minnesota by Ellison v. American Petroleum Institute*, 63 F.4th 703 (8th Cir. 2023)................................................................................5, 9

*Myers v. Bowman*, 713 F.3d 1319 (11th Cir. 2013) ................................10

*New York v. Trump*, 2023 U.S. Dist. LEXIS 124733 (S.D.N.Y. July 19, 2023) ..................................................................................6

*Roudebush v. Hartke*, 405 U.S. 15 (1972) ................................................6

*Salkin v. Labrosse*, 2019 U.S. Dist. LEXIS 215160 (D.N.J. Dec. 13, 2019) ................................................................................10

*Tennessee v. Davis*, 100 U.S. 257 (1879) ................................................17

*Thompson v. Trump*, 590 F.Supp.3d 46 (D.D.C. 2022)...........................7, 11, 12, 13

*United States ex rel. Drury v. Lewis*, 200 U.S. 1 (1906) ........................12

*United States v. Sandlin*, 575 F.Supp.3d 16 (D.D.C. 2021) .....................7

*United States v. Stevens*, 559 U.S. 460 (2010) ........................................14

*United States v. Williams*, 553 U.S. 285 (2008) ......................................15

*Vote Forward v. DeJoy*, 490 F.Supp.3d 110 (D.D.C. 2020) ....................8

*Watson v. Philip Morris Companies*, 551 U.S. 142 (2007).............................17, 18

*Willingham v. Morgan*, 395 U.S. 402 (1969) .........................................5, 11, 14, 17

## STATUTES

3 U.S.C. §§15-18.........................................................................................7

28 U.S.C. §1442........................................................................................1, 3, 11

Act of March 3, 1863, 12 Stat. 757...........................................................17

Removal Clarification Act of 2011, Pub. L. 112-51, §2, 125 Stat. 545 (2011) ......................................................................................................4

Violation of Oath by Public Officer, O.C.G.A. §16-10-1 ......................15

## CONSTITUTIONAL PROVISIONS

U.S. Const. art. I, §4................................................................................1, 7

U.S. Const. art. II, §1 .............................................................................1, 7, 8

## LEGISLATIVE MATERIALS

9 Cong. Deb. 461 (1833).............................................................................17

# OTHER AUTHORITIES

The Federalist No. 68 (Hamilton) (Clinton Rossiter ed., 2003) ...............................8

The Federalist No. 81 (Hamilton) (Clinton Rossiter ed., 2003) ...............................1

Office of Special Counsel, *Federal Hatch Act Advisory: Candidate Visits to Federal Agencies* (Feb. 15, 2018) ...........................................................10

*Payment of Expenses Associated with Travel by the President and Vice President*, 6 Op. O.L.C. 214 (1982) ...........................................................10

*Transcript: President Trump's Phone Call With Georgia Election Officials*, N.Y. Times (Jan. 3, 2021), https://www.nytimes.com/ 2021/01/03/us/politics/trump-raffensperger-georgia-call-transcript.html ...................................................................................................9, 16

Volokh, Eugene, *The "Speech Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981 (2016)..................................................14, 15

## INTEREST OF AMICI

Amici are former judges, prosecutors, and state and federal executive officials with experience in both state and federal court, including experience with the federal-officer removal statute, 28 U.S.C. §1442, as well as with respect to drawing the line between the official and political activities of the president and other senior executive officeholders.  As such, amici have an interest in the proper division of responsibility between state and federal courts as well as in the just enforcement of criminal laws.[1]

## INTRODUCTION

The Constitution of the United States confers upon the 50 States a compelling interest in prosecuting—in their own courts—criminal interference with their administration of federal elections.  *See* U.S. Const. art. I, §4; *id*. art. II, §1.  Consistent with the States' constitutional authority over the integrity of the federal elections they administer, the federal-officer removal statute, 28 U.S.C. §1442, does not permit removal here.

In conceiving our federal system, the Framers insisted that "the fitness and competency of [state] courts should be allowed in the utmost latitude."  The Federalist No. 81 (Hamilton) at 485 (Clinton Rossiter ed., 2003).  And "[p]erhaps

---

[1] No counsel for a party authored this brief in whole or in part, and no entity or person other than amici and their counsel made a monetary contribution intended to fund the preparation or submission of this brief.

the clearest example of traditional state authority is the punishment of local criminal activity." *Bond v. United States*, 572 U.S. 844, 858 (2014).  To preserve that longstanding tradition, the Supreme Court has recognized a "strong judicial policy against federal interference with state criminal proceedings." *Arizona v. Manypenny*, 451 U.S. 232, 243 (1981).  In keeping with that "strong judicial policy," removal of a state criminal prosecution to federal court is permitted by the federal-officer removal statute only where a federal officer both (1) faces criminal charges for conduct arising under color of his office and (2) identifies a colorable federal defense.  *See Jefferson County v. Acker*, 527 U.S. 423, 431 (1999).  Because neither of those elements is satisfied here, the Court should remand these cases to the Fulton County Superior Court.

The conduct charged here by the Fulton County District Attorney—interference by Mark Meadows and Jeffrey Clark with the 2020 presidential election in Georgia in order to aid Donald Trump's candidacy—bore no connection to any duty of Mr. Meadows's, Mr. Clark's, or Mr. Trump's office.  Neither the president nor anyone else in the executive branch has any duty to superintend or participate in a State's selection of its presidential electors.  And there is no plausible basis for Mr. Meadows or Mr. Clark to claim Supremacy Clause immunity, protection under the First or Fourteenth Amendment, or any other federal defense to the charges.  Finally, the purpose of the federal-officer removal

2

statute—to protect federal operations by preventing retribution in state court for locally unpopular exercises of federal authority—would not be served by removal here. To the contrary, removal would be perverse, as this prosecution arises from interference with *state*-government operations and seeks to vindicate Georgia's voice in a federal election, the very contest from which federal authority flows.[2]

## ARGUMENT

### I.   MR. MEADOWS AND MR. CLARK WERE INDICTED FOR ELECTIONEERING CONDUCT UNRELATED TO ANY DUTY OF THEIR OFFICES

The federal-officer removal statute provides that an officer may remove a state prosecution only if it is "for or relating to any act under color of [his] office." 28 U.S.C. §1442(a)(1). That requirement is not remotely met here. Mr. Meadows and Mr. Clark are charged for their efforts to pressure election officials in Georgia to award the State's electoral votes to Mr. Trump in the 2020 presidential election, as well as for supporting similar pressure applied by Mr. Trump himself. None of that conduct was grounded in any official duty of either Mr. Meadow's position (White House chief of staff), or either of Mr. Clark's positions (Assistant Attorney General for the Justice Department's Environment and Natural Resources Division and Acting Assistant Attorney General for the Justice Department's Civil

---

[2] Although the State has not yet moved for remand in *The State of Georgia v. Jeffrey B. Clark*, No. 1:23-cv-3721, amici agree with the State that Mr. Clark's notice of removal is, like Mr. Meadows's, "deficient," State Response to Clark Emergency Motion at 3. Amici therefore submit this brief in support of remand in both cases.

Division).  Indeed, neither the Constitution nor any other source of federal law affords these officeholders *any* role in the selection of a State's presidential electors.  To the contrary, the executive branch is deliberately (and understandably) walled off from that selection process.  There is thus no basis for removal.

A.     "The defendant has the burden of proving by a preponderance of the evidence that the requirements for removal jurisdiction have been met." *County of San Mateo v. Chevron Corporation*, 32 F.4th 733, 746 (9th Cir. 2022), *cert. denied*, 143 S.Ct. 1797 (2023).  Historically, defendants invoking the federal-officer removal statute have had to show "a causal connection between the charged conduct and asserted official authority." *Acker*, 527 U.S. at 431.  In other words, the prosecution had to be "based on or arise[] out of" conduct the officer performed "under authority of federal law in the discharge of his duty and only by reason thereof." *Maryland v. Soper*, 270 U.S. 9, 33 (1926).

In 2011, Congress amended the federal-officer removal statute by inserting the words "or relating to" in the phrase "for or relating to any act under color of such office."  Removal Clarification Act of 2011, Pub. L. 112-51, §2, 125 Stat. 545, 545 (2011).  While courts have disagreed on the precise effect of that amendment, every court that has applied the amended statute has agreed that it permits removal only where a case is at least "*connected* or *associated*[] with acts under color of federal office," *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286,

292 (5th Cir. 2020) (en banc).  That includes the Eleventh Circuit, which interprets the phrase "relating to" as requiring at least "a 'connection' or 'association' between" the charged conduct and some official duty.  *Caver v. Central Alabama Electric Cooperative*, 845 F.3d 1135, 1144 (11th Cir. 2017).  Courts also agree that the connection between the charged conduct and an official duty may be "too remote," *Minnesota by Ellison v. American Petroleum Institute*, 63 F.4th 703, 715 (8th Cir. 2023), or "too tenuous to support removal," *Mayor & City Council of Baltimore v. BP P.L.C.*, 31 F.4th 178, 234 (4th Cir. 2022), *cert. denied*, 143 S.Ct. 1795 (2023).  And in a criminal case, as here, a defendant seeking removal must make a "more detailed showing" of the required connection, owing to the "more compelling state interest in conducting criminal trials in the state courts." *Willingham v. Morgan*, 395 U.S. 402, 409 n.4 (1969).[3]

> B.     Neither Mr. Meadows nor Mr. Clark can identify any official duty bearing any connection to the conduct for which he is charged.  Both are charged with efforts to manipulate Georgia officials who had roles in administering the presidential election in their State: Mr. Meadows for attempting to manipulate the

---

[3] Mr. Clark is wrong to assert (Removal Notice at 9) that his notice of removal "removes not just the Fulton County Action itself but also the Special Purpose Grand Jury proceedings that preceded" the indictment.  The only action pending against Mr. Clark is a criminal indictment.  As he concedes (*id.* at 21), the Special Purpose Grand Jury (which never charged him with anything) "was dissolved … on January 9, 2023."  There is thus no other proceeding over which this Court could assume jurisdiction.

Georgia Secretary of State, *see* Indictment at 50 (count 1, act 112), 87 (count 28), and the Secretary's Chief Investigator, *see id*. at 44 (count 1, act 93), 45 (count 1, act 96), and Mr. Clark for attempting to manipulate the governor, the Speaker of the Georgia House of Representatives, and the President Pro Tempore of the Georgia Senate, *see id*. at 45 (count 1, act 98), 46 (count 1, act 99), 50 (count 1, act 110), 83 (count 22).  Mr. Meadows is also charged with attempting to infiltrate a signature-match audit taking place in Cobb County, Georgia.  *See id*. at 44 (count 1, act 92).  And while Mr. Clark's position qualified him as a federal officer for purposes of the removal statute at the time of his alleged conduct (this brief takes no position on the unsettled question whether the president or White House chief of staff qualifies as a federal officer under the statute), "[n]ot every act of or on behalf of a federal officer is an act under color of office," *New York v. Trump*, 2023 U.S. Dist. LEXIS 124733, *20 (S.D.N.Y. July 19, 2023); *see also Clinton v. Jones*, 520 U.S. 681, 695 (1997).  The acts charged here certainly were not under color of either man's office.

      1.     Neither the president, his chief of staff, nor the Department of Justice has *any* duty (or authority, for that matter) to superintend state election officials' administration of a federal election in the manner alleged.  As the Supreme Court has explained, the Constitution "empowers *the States*" and "*Congress*" "to regulate the conduct of [federal] elections." *Roudebush v. Hartke*, 405 U.S. 15, 24 (1972)

(emphases added); *see also* U.S. Const. art. I, §4 (Elections Clause); *id.* art. II, §1 (Electors Clause).  Likewise, while the Electoral Count Act assigns duties to various congressional officials—"the presiding officer [i.e., the vice president acting as president of the Senate], the Speaker [of the House], the Senators, the Representatives, the tellers [who count electoral votes], and others"—it prescribes *no* role for the president, the White House chief of staff, or the U.S. Department of Justice.  *United States v. Sandlin*, 575 F.Supp.3d 16, 23 (D.D.C. 2021); *see also* 3 U.S.C. §§15-18.  To the extent the Department of Justice has any responsibilities touching on federal elections, they do not include superintendence of the States' administration of federal elections, and in any event are not within the offices Mr. Clark held.

Nor did the Constitution's Take Care Clause vest Mr. Trump, Mr. Meadows, or Mr. Clark with any relevant duty.  That is because the clause "does not extend to government officials over whom [the president] ha[d] no power or control," *Thompson v. Trump*, 590 F.Supp.3d 46, 78 (D.D.C. 2022) (emphasis omitted).  The clause thus did not confer on Mr. Trump, Mr. Meadows, or Mr. Clark any duty to manage or direct the congressional officials with roles prescribed by the Electoral Count Act—those officials were members "of a co-equal branch[] not subject to Executive Branch control," *id.*—much less to manage or direct state election officials.

This is not by accident.  It is instead by design that "our country has a highly decentralized system of election administration, in which states and localities are primarily responsible for regulating and managing elections."  *Vote Forward v. DeJoy*, 490 F.Supp.3d 110, 123 (D.D.C. 2020).  Indeed, the Framers ensured "that the election of the President" would be "well guarded … from any sinister bias," not only by fostering a "detached and divided" process "in each State," but also by "exclud[ing] from eligibility" to serve as presidential electors "all those who from situation might be suspected of too great devotion to the President in office."  The Federalist No. 68 (Hamilton) at 410-411; *see also* U.S. Const. art. II, §1, cl. 2.  Surely, then, the Framers did not contemplate supervision of a presidential election by a sitting president himself (or senior members of the executive branch).

As another court recently concluded, therefore, Mr. Trump's interference with state election officials cannot "possibly constitute executive action in defense of the Constitution."  *Michigan Welfare Rights Organization v. Trump*, 2022 U.S. Dist. LEXIS 215474, *13 (D.D.C. Nov. 28, 2022).  The same goes for Mr. Meadows's and Mr. Clark's interference, as well as their support of Mr. Trump's. And it makes no difference whether Mr. Trump, Mr. Meadows, or Mr. Clark believed they were addressing suspected voter fraud or election irregularities in Georgia (suspicions, it bears noting, that have never been substantiated).  As in the case just cited, Mr. Trump (and Mr. Meadows and Mr. Clark) cannot "offer any

reason to believe [their] efforts to expose 'election fraud' were part of any executive effort." *Id*.

2.      Even if the law were otherwise, such that the president (and thus perhaps his chief of staff) or the Justice Department (particularly the divisions Mr. Clark headed) *had* a role in ensuring that state election officials fairly administer the presidential election in their State, that is *not* what Mr. Meadows or Mr. Clark is alleged to have done.  The required connection between the alleged conduct and any official duty would therefore still be missing, or at least "too remote" to support removal, *Ellison*, 63 F.4th at 715.  Mr. Meadows and Mr. Clark are charged for their efforts to "change the outcome of the election in favor of Trump," Indictment at 14; for efforts, that is, in service of Mr. Trump's candidacy.  Such conduct constitutes electioneering; it is not "connected or associated" with any official duty, *Latiolais*, 951 F.3d at 292 (emphasis omitted).[4]

---

[4] Count 28 alleges that on January 2, 2021, Mr. Meadows and Mr. Trump "unlawfully solicited, requested, and importuned Georgia Secretary of State Brad Raffensperger" to "unlawfully influenc[e] the certified returns for presidential electors."  This communication's purpose was unquestionably to aid Mr. Trump's candidacy.  Mr. Trump told Secretary Raffensperger that he needed to "find 11,780 votes"—in Mr. Trump's words, exactly "one more than" he needed, as a *candidate*, to win in Georgia.  *Transcript: President Trump's Phone Call With Georgia Election Officials*, N.Y. Times (Jan. 3, 2021), https://www.nytimes.com/ 2021/01/03/us/politics/trump-raffensperger-georgia-call-transcript.html.  The precise tailoring of this demand leaves no doubt that it was made in service of Mr. Trump's candidacy, not any official duty.  What's more, the way Mr. Trump prefaced the demand—"*All I want to do is this.*  I just want to find 11,780 votes," *id*. (emphasis added)—makes clear that the communication was made *exclusively*

All three branches of the federal government agree that electioneering is *not* an official function:  Congress distinguished in the Hatch Act between electioneering activities and official conduct, applying restrictions on federal employees' activities in the former category but not the latter.  *See* Office of Special Counsel, *Federal Hatch Act Advisory: Candidate Visits to Federal Agencies* 1-2 (Feb. 15, 2018).  The executive branch's Office of Legal Counsel does not consider expenses for campaign travel to be official expenses.  *Payment of Expenses Associated with Travel by the President and Vice President*, 6 Op. O.L.C. 214, 216-217 (1982).  And federal courts routinely distinguish between official and campaign conduct.  The Eleventh Circuit, for example, has held that the management of a sheriff's campaign webpage was not state action because "'acts of officers in the ambit of their personal pursuits are not done under color of law.'"  *Charudattan v. Darnell*, 834 F.App'x 477, 482 (11th Cir. 2020) (quoting *Myers v. Bowman*, 713 F.3d 1319, 1329 (11th Cir. 2013)).  As another court held in a similar context, "[t]he opposite conclusion would impermissibly stretch the definition of 'under color of law.'"  *Salkin v. Labrosse*, 2019 U.S. Dist. LEXIS 215160, *10 (D.N.J. Dec. 13, 2019).

---

to aid Mr. Trump's candidacy.  The same is manifestly true of the conduct of Mr. Clark charged in count 22:  Composing a baldly false representation and importuning his superiors to send it in order to threaten Georgia officials is nothing other than election interference for a purely political and personal objective.

\*       \*       \*

Put simply, this prosecution is not "for or relating to any act under color of [Meadows's or Clark's] office," 28 U.S.C. §1442(a)(1), because neither the office of president (and *a fortiori* the office of White House chief of staff) nor the Justice Department (and particularly the offices Mr. Clark held) has *any* duty or even authority to participate in the administration of a State's presidential election as alleged here.  And even if those offices *had* such a duty, the charged conduct still would not relate to that duty, because "[t]he Office of the President has no preference for who occupies it," *Thompson*, 590 F.Supp.3d at 82, and the alleged interference with the presidential election in Georgia clearly evinced such a preference.  At the very least, any connection to an official duty is "too tenuous to support removal," *Mayor & City Council of Baltimore*, 31 F.4th at 234.  Neither Mr. Meadows nor Mr. Clark can make the requisite "detailed showing" otherwise, *Willingham*, 395 U.S. at 409 n.4.  Remand is therefore required.

## II.    MR. MEADOWS AND MR. CLARK HAVE NO COLORABLE FEDERAL DEFENSE

Independently, to remove a case against him, a federal officer must "raise a colorable defense arising out of [his] duty to enforce federal law." *Willingham*, 395 U.S. at 406-407.  The Supreme Court imposed this separate requirement because the Court (in its words) "retains the highest regard for a State's right to make and enforce its own criminal laws."  *Manypenny*, 451 U.S. at 243.  To

respect that right, the Court held, federal-officer removal of a "prosecution under state law" must be "limited to assuring that an impartial setting is provided in which the federal defense of immunity can be considered." *Id*. at 242. Mr. Meadows and Mr. Clark fare no better on this requirement than on the requirement discussed in Part I, for essentially the same reasons discussed there.

A.    Mr. Meadows's and Mr. Clark's principal purported federal defense is that their conduct is shielded by Supremacy Clause immunity. *See* Meadows Notice of Removal at 8-12; Meadows Motion to Dismiss at 11-22; Clark Notice of Removal 26, 28. But no such immunity exists where "it [cannot] reasonably be claimed that" the officer's conduct was "in the performance of a *duty imposed by ... Federal law*." *United States ex rel. Drury v. Lewis*, 200 U.S. 1, 8 (1906) (emphasis added). None of the conduct for which Mr. Meadows or Mr. Clark is charged arose from or is related to any duty imposed on him by federal law. As explained in Part I, no federal statute or constitutional provision empowers (let alone requires) the president, his chief of staff, or the Justice Department divisions Mr. Clark headed to interfere in a State's presidential election.

The reasoning of *Thompson v. Trump*, 590 F.Supp.3d 46 (D.D.C. 2022), is instructive. The court there held that Mr. Trump had no official duty to urge the vice president or members of Congress to violate their own federal-law duty to certify electoral votes on January 6, 2021—and thus he was not immune from

12

liability for such exhortation—because, as noted, the president's duties under federal law (including the Constitution's Take Care Clause) do "*not* extend to government officials over whom he has no power or control." *Id*. at 78. Just as Mr. Trump had no power over the vice president or members of Congress performing their prescribed roles in the certification process, so too he (and Mr. Meadows and Mr. Clark) had no power over Georgia officials administering the presidential election in that State. And just as the *Thompson* court explained that the Electoral Count Act "prescribes no role for a sitting President" in the tabulation of votes in the electoral college, *id*. at 77, no statute or constitutional provision permits any role for the relevant federal offices in the administration of a particular State's determination of those votes.

The Eleventh Circuit has held, moreover, that Supremacy Clause immunity does not extend to an officer who "acted because of any personal interest" rather than "to do his duty" under federal law. *Baucom v. Martin*, 677 F.2d 1346, 1350 (11th Cir. 1982). That is the situation here. Again, Mr. Meadows and Mr. Clark are charged for their efforts to "change the outcome of the election in favor of Trump," Indictment at 14; in other words, for their efforts to aid Mr. Trump's candidacy. Because the charged conduct constitutes electioneering, it is, as explained in Part I, personal and not official.

B.     In his motion to dismiss, Mr. Meadows invokes the First and

Fourteenth Amendments as "contingent defenses," should this Court reject his

claim to Supremacy Clause immunity.  Meadows Motion to Dismiss at 23 n.9; *see*

*id*. at 23-25.  To begin with, however, even if there were any merit to those

defenses (and as explained below, there isn't), it is unlikely either could satisfy the

colorable-federal-defense requirement for officer removal.  As noted, the Supreme

Court has both required officers to "raise a colorable defense *arising out of their*

*duty to enforce federal law*," *Willingham*, 395 U.S. at 406-407 (emphasis added),

and held that federal-officer removal must be "limited to assuring that an impartial

setting is provided in which the federal defense *of immunity* can be considered,"

*Manypenny*, 451 U.S. at 242 (emphasis added).  Mr. Meadows has not shown that

either of his "contingent defenses" satisfies these requirements.

In any event, Mr. Meadows has no plausible claim to a defense under the

First or Fourteenth Amendment.

Mr. Meadows's First Amendment defense ignores the "historic and

traditional" exception to the protection of free expression for "speech integral to

criminal conduct," *United States v. Stevens*, 559 U.S. 460, 468 (2010) (citing

*Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490 (1949)).  That disregard is

particularly striking given that "[s]peech integral to criminal conduct is now a

standard item on lists of First Amendment exceptions."  Volokh, *The "Speech*

14

*Integral to Criminal Conduct" Exception*, 101 Cornell L. Rev. 981, 983 (2016) (quotation marks omitted).  Mr. Meadows contends specifically that his and Mr. Trump's January 2, 2021, "discussion with the Georgia Secretary of State" (which is the subject of count 28, *see* note 4, *supra)* receives First Amendment protection because it was "about public issues of political importance."  Meadows Motion to Dismiss at 24.  But the indictment alleges (at 87) that that "discussion" was part of Mr. Meadows's charged crime of soliciting the Georgia Secretary of State "to engage in conduct constituting the felony offense of Violation of Oath by Public Officer, O.C.G.A. § 16-10-1."  And the Supreme Court has specifically held that "solicitation," i.e., speech "intended to induce or commence illegal activities," is "undeserving of First Amendment protection."  *United States v. Williams*, 553 U.S. 285, 298 (2008).  That precedent squarely forecloses Mr. Meadows's First Amendment defense.

Equally groundless is Mr. Meadows's claim (Motion to Dismiss at 25) that his prosecution violates due process because the statutes under which he is charged "are unconstitutionally vague as applied to the charges against" him.  Mr. Meadows offers no actual argument, let alone a colorable one, as to why that is so. *See id*. at 24-25.  And it obviously is not.  Take, for instance, the conduct on which Mr. Meadows's motion focuses: his and Mr. Trump's "discussion with the Georgia Secretary of State."  *Id*. at 24.  As noted, that "discussion" was in fact an

15

exhortation that Secretary Raffensperger—the officer sworn to faithfully certify Georgia's election results—"find 11,780 votes" to swing the election for Mr. Trump, *Transcript: President Trump's Phone Call With Georgia Election Officials*, *supra* note 4. It is hard to imagine a clearer example of soliciting a public officer to violate his oath. Mr. Meadows's suggestion that he lacked fair notice that such an exhortation could constitute criminal solicitation is simply absurd.

C.     Mr. Clark's unsupported invocation of the First Amendment fails for the same reasons. And while he lists other defenses, *see* Clark Notice of Removal at 26, 28, he fails to discuss them (despite his "burden of proving … that the requirements for removal jurisdiction have been met," *County of San Mateo*, 32 F.4th at 746), and in any event they are patently inapplicable.

## III.   REMOVAL HERE WOULD NOT SERVE THE PURPOSE OF THE FEDERAL-OFFICER REMOVAL STATUTE

The federal-officer removal statute reflects Congress's concern that because federal officers may be required by law to take official actions that are unpopular with local populations, they could face unjustified state charges, which could in turn impede federal operations. That concern is not remotely implicated here.

The removal statute's history makes that plain. Congress enacted the first two versions to prevent state laws from defeating the enforcement of federal trade policy. The first version "was part of an attempt to enforce an embargo on trade

with England over the opposition of the New England States, where the War of 1812 was quite unpopular." *Willingham*, 395 U.S. at 405.  The second "was passed in consequence of an attempt by one of the States of the Union to make penal the collection by United States officers within the State of duties under the tariff laws." *Tennessee v. Davis*, 100 U.S. 257, 268 (1879).  As the Supreme Court later explained (quoting Senator Daniel Webster's views from the time of the second version's enactment), "where state courts might prove hostile to federal law, and hence to those who enforced that law, the removal statute would 'give a chance to the [federal] officer to defend himself where the authority of the law was recognised.'" *Watson v. Philip Morris Companies*, 551 U.S. 142, 148 (2007) (quoting 9 Cong. Deb. 461 (1833)).  That remains a core purpose of the removal statute.

During the Civil War, Congress revised the statute both to permit removal of actions brought against officers during the war and to improve the capacity of the federal government to collect revenue.  *See* Act of March 3, 1863, 12 Stat. 757. Shortly thereafter, the Supreme Court explained that without the removal statute, "the operations of the [federal] government [could] at any time be arrested at the will of one of its [member States]." *Davis*, 100 U.S. at 258.  In the latter half of the nineteenth century too, then, Congress and the Court understood the statute as a means to prevent local populations from impeding federal operations.

17

More recently, the Supreme Court has reaffirmed that the removal statute's "purpose is to protect the Federal Government from the interference with its operations that would ensue" were a State able to arrest and try a federal officer for "acting … within the scope of [his] authority." *Watson*, 551 U.S. at 150 (quotation marks omitted). Such "interference" would flow from the fact that "[s]tate-court proceedings may reflect local prejudice against unpopular federal laws or federal officials." *Id.* (quotation marks omitted).

To say the least, the statute's purpose to prevent interference with federal operations would not be served by removing the charges against Mr. Meadows or Mr. Clark from Georgia state court. These prosecutions do not threaten to impede any federal policy or prevent the federal government from carrying out its operations. The charges are not unjustified retribution for a legitimate exercise of federal authority. It is Georgia, not the federal executive, that is responsible for administering the State's selection of its presidential electors—including assuring the integrity of that selection. Allowing it to do so, including by leaving it to the State's own courts to adjudicate any alleged violations of the State's criminal laws, is in no way contrary to, and in fact is fully consistent with, the purpose of the federal-officer removal statute.

\*       \*       \*

The Constitution entrusts the administration of federal elections to the States.  It deliberately insulates such administration from the President and his staff.  Consistent with that constitutional design, the federal-officer removal statute does not permit removal here.

## CONCLUSION

The Court should remand these cases to state court.

August 23, 2023                                    Respectfully submitted,

                                                   _/s/ John Thomas Morgan III_

SETH P. WAXMAN*                                    JOHN THOMAS MORGAN III (522675)
DANIEL S. VOLCHOK*                                 J.TOM MORGAN, ATTORNEY, LLC
JOSEPH M. MEYER*                                   160 Clairemont Avenue, Suite 645
WILMER CUTLER PICKERING                            Decatur, Georgia 30030
HALE AND DORR LLP                                  404-687-6418
2100 Pennsylvania Avenue N.W.                      jtom@jtommorganlaw.com
Washington, D.C. 20037
202-663-6000
seth.waxman@wilmerhale.com

FRED WERTHEIMER*
DEMOCRACY 21 EDUCATION FUND
2000 Massachusetts Avenue N.W.
Washington, D.C. 20036
202-355-9600
fwertheimer@democracy21.org

*Motion for _pro hac vice_ admission
pending

# APPENDIX

# List of Amici Curiae

**Donald B. Ayer**
U.S. Deputy Attorney General in George H.W. Bush Administration (1989-1990)
U.S. Principal Deputy Solicitor General in Reagan Administration (1986-1988)
U.S. Attorney for the Eastern District of California in Reagan Administration
   (1981-1986)

**John J. Farmer Jr.**
Acting Governor of New Jersey (January 8, 2002)
New Jersey Attorney General (1999-2002)
Chief Counsel to Governor Whitman of New Jersey (1997-1999)
Deputy Chief Counsel to Governor Whitman of New Jersey (1996-1997)
Assistant U.S. Attorney for the District of New Jersey in George H.W. Bush and
   Clinton Administrations (1990-1994)

**Charles A. Fried**
Associate Justice of the Massachusetts Supreme Judicial Court (1995-1999)
U.S. Solicitor General in Reagan Administration (1985-1989)
Special Assistant to the U.S. Attorney General in Reagan Administration (1984-
   1985)

**Stuart M. Gerson**
Acting U.S. Attorney General in Clinton Administration (1993)
U.S. Assistant Attorney General for the Civil Division in George H.W. Bush and
   Clinton Administrations (1989-1993)
Assistant U.S. Attorney for the District of Columbia in Nixon and Ford
   Administrations (1972-1975)

**J. Michael Luttig**
Judge of the U.S. Court of Appeals for the Fourth Circuit (1991-2006)
U.S. Assistant Attorney General for the Office of Legal Counsel in George H.W.
   Bush Administration (1990-1991)
Assistant Counsel to President Reagan (1980-1981)

**Alan Charles Raul**

General Counsel to the U.S. Department of Agriculture in George H.W. Bush
   Administration (1989-1993)

General Counsel to the Office of Management and Budget in Reagan
   Administration (1988-1989)

Associate Counsel to President Reagan (1986-1988)

**Stanley A. Twardy, Jr.**

Chief of Staff to Governor Weicker of Connecticut (1991-1993)

U.S. Attorney for the District of Connecticut in Reagan and George H.W. Bush
   Administrations (1985-1991)

**William F. Weld**

Governor of Massachusetts (1991-1997)

U.S. Assistant Attorney General for the Criminal Division in Reagan
   Administration (1986-1988)

U.S. Attorney for the District of Massachusetts in Reagan Administration (1981-
   1986)

## CERTIFICATE OF COMPLIANCE

The foregoing has been prepared in accordance with the requirements of

Local Rule 5.1.

*/s/ John Thomas Morgan III*
JOHN THOMAS MORGAN III

## CERTIFICATE OF SERVICE

On this 23rd day of August, 2023, I electronically filed the foregoing using

the Court's CM/ECF system.  Counsel for all parties to the case are registered

CM/ECF users and will be served by that system.

*/s/ John Thomas Morgan III*
JOHN THOMAS MORGAN III