# EXHIBIT D

*This letter was opposed by A/AG + OLC.*

**Donoghue, Richard (ODAG)**

**From:** Donoghue, Richard (ODAG)
**Sent:** Monday, December 28, 2020 5:50 PM
**To:** Clark, Jeffrey (ENRD)
**Cc:** Rosen, Jeffrey A. (ODAG)
**Subject:** RE: Two Urgent Action Items

*Discussed w/ POTUS on January 3, 2021, and he rejected AAG Clark's idea to send it.*

Jeff,

I have only had a few moments to review the draft letter and, obviously, there is a lot raised there that would have to be thoroughly researched and discussed. That said, there is no chance that I would sign this letter or anything remotely like this.

While it may be true that the Department "is investigating various irregularities in the 2020 election for President" (something we typically would not state publicly), the investigations that I am aware of relate to suspicions of misconduct that are of such a small scale that they simply would not impact the outcome of the Presidential Election. AG Barr made that clear to the public only last week, and I am not aware of intervening developments that would change that conclusion. Thus, I know of nothing that would support the statement, "we have identified significant concerns that may have impacted the outcome of the election in multiple states." While we are always prepared to receive complaints and allegations relating to election fraud, and will investigate them as appropriate, we simply do not currently have a basis to make such a statement. Despite dramatic claims to the contrary, we have not seen the type of fraud that calls into question the reported (and certified) results of the election. Also the commitment that "the Department will update you as we are able on investigatory progress" is dubious as we do not typically update non-law enforcement personnel on the progress of any investigations.

More importantly, I do not think the Department's role should include making recommendations to a State legislature about how they should meet their Constitutional obligation to appoint Electors. Pursuant to the Electors Clause, the State of Georgia (and every other state) has prescribed the legal process through which they select their Electors. While those processes include the possibility that election results may "fail[ ] to make a choice", it is for the individual State to figure out how to address that situation should it arise. But as I note above, there is no reason to conclude that any State is currently in a situation in which their election has failed to produce a choice. As AG Barr indicated in his public comments, while I have no doubt that some fraud has occurred in this election, I have not seen evidence that would indicate that the election in any individual state was so defective as to render the results fundamentally unreliable. Given that, I cannot imagine a scenario in which the Department would recommend that a State assemble its legislature to determine whether already-certified election results should somehow be overridden by legislative action. Despite the references to the 1960 Hawaii situation (and other historical anomalies, such as the 1876 Election), I believe this would be utterly without precedent. Even if I am incorrect about that, this would be a grave step for the Department to take and it could have tremendous Constitutional, political and social ramifications for the country. I do not believe that we could even consider such a proposal without the type of research and discussion that such a momentous step warrants. Obviously, OLC would have to be involved in such discussions.

I am available to discuss this when you are available after 6:00 pm but, from where I stand, this is not even within the realm of possibility.

Rich

---

**From:** Clark, Jeffrey (ENRD) <JClark@ENRD.USDOJ.GOV>
**Sent:** Monday, December 28, 2020 4:40 PM

1

**To:** Rosen, Jeffrey A. (ODAG) <jarosen@jmd.usdoj.gov>; Donoghue, Richard (ODAG) <ricdonoghue@jmd.usdoj.gov>
**Subject:** Two Urgent Action Items

Jeff and Rich:

(1) I would like to have your authorization to get a classified briefing tomorrow from ODNI led by DNI Radcliffe on foreign election interference issues. I can then assess how that relates to activating the IEEPA and 2018 EO powers on such matters (now twice renewed by the President). If you had not seen it, white hat hackers have evidence (in the public domain) that a Dominion machine accessed the Internet through a smart thermostat with a net connection trail leading back to China. ODNI may have additional classified evidence.

(2) Attached is a draft letter concerning the broader topic of election irregularities of any kind. The concept is to send it to the Governor, Speaker, and President pro temp of each relevant state to indicate that in light of time urgency and sworn evidence of election irregularities presented to courts and to legislative committees, the legislatures thereof should each assemble and make a decision about elector appointment in light of their deliberations. I set it up for signature by the three of us. I think we should get it out as soon as possible. Personally, I see no valid downsides to sending out the letter. I put it together quickly and would want to do a formal cite check before sending but I don't think we should let unnecessary moss grow on this

(As a small matter, I left open me signing as AAG Civil — after an order from Jeff as Acting AG designating me as actual AAG of Civil under the Ted Olson OLC opinion and thus freeing up the Acting AAG spot in ENRD for Jon Brightbill to assume. But that is a comparatively small matter. I wouldn't want to hold up the letter for that. But I continue to think there is no downside with as few as 23 days left in the President's term to give Jon and I that added boost in DOJ titles.)

I have a 5 pm internal call [Non-Responsive]. But I am free to talk on either or both of these subjects circa 6 pm+.

Or if you want to reach me after I reset work venue to home, my cell # is (b) (6)        .

Jeff