IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| STATE OF GEORGIA,<br><br>v.<br><br>JEFFREY BOSSERT CLARK,<br><br>DEFENDANT. | Case No. 1:23-cv-3721<br><br>(Related to:<br><br>Case Nos.   1:23-cv-03621-SCJ<br>           1:23-cv-03720-SCJ<br>           1:23-cv-03792-SCJ<br>           1:23-cv-03803-SCJ<br><br>Judge Steve C. Jones<br><br>On Removal from the Fulton County Superior Court |

# JEFFREY B. CLARK'S REPLY
# IN SUPPORT OF REMOVAL

## INTRODUCTION

The propriety of Defendant Clark's Notice of Removal (as supplemented with newly released Special Purpose Grand Jury ("SPGJ") material) stands on its own. Nevertheless, we have reviewed this Court's Order remanding Mark Meadows' removal. Respectfully, it goes astray on three important points: (1) disputes over removal of prosecutions of federal officers should be conducted like mini-trials on the merits; (2) removability should not be conflated with whether removing defendants will be able to prevail on their federal merits defenses; and (3) there is nothing in the test of federal officer removal that involves a separate or distinct balancing of state and federal interests because that balance is already struck by the

language of 28 U.S.C. § 1442 and the case law applying it. This Reply addresses these three points.

## I. APPLICABLE RULES OF EVIDENCE IN REMOVAL HEARING UNDER 28 U.S.C. § 1455.

Under Federal Rule of Evidence 1101(d)(3), those Rules do not apply to "miscellaneous proceedings." The hearing contemplated by 28 U.S.C. § 1455(b)(5) is such a miscellaneous proceeding. *See Stallings v. Georgia-Pac. Corp.*, No. 3:12-CV-00724-H, 2013 WL 1563231, at *3 (W.D. Ky. Apr. 12, 2013) ("Defendants can meet their evidentiary obligations to sustain their notice of removal with declarations and affidavits, depending on the content and source of the information contained therein.").[1] *See* Fed. R. Civ. P. 43(c) (Evidence on a Motion. When a motion relies on facts outside the record, the court may hear the matter on affidavits or may hear it wholly or partly on oral testimony or on depositions."). The Notice of Removal also removed the civil SPGJ proceedings, making Rule 43(c) applicable as well.

## II. STANDARD OF REVIEW OF FEDERAL OFFICER REMOVALS

The federal officer removal statute shields the supremacy of the federal government against encroachment and incursions by state and local governments. "It scarcely need be said that such measures [i.e., the federal officer removal statute]

---

[1] *Hagen v. Benjamin Foster Co.*, 739 F. Supp. 2d 770, 773 (E.D. Pa. 2010) (affidavits sufficient to establish removal in federal contractor case); *Hilbert v. McDonnell Douglas Corp.*, 529 F. Supp. 2d 187, 196–97 (D. Mass. 2008); *Machnik v. Buffalo Pumps, Inc.*, 506 F. Supp. 2d 99, 103 (D. Conn. 2007) (using affidavits in removal).

are to be **liberally construed** to give full effect to the purposes for which they were enacted." *Colorado v. Symes*, 286 U.S. 510, 517 (1932) (emphasis added). "In cases like this one, Congress has decided that federal officers, and indeed the federal government itself, require the protection of a federal forum. This policy should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Willingham v. Morgan,* 395 U.S. 402, 407 (1969). *See also Tennessee v. Davis*, 100 U.S. 257, 262-63 (1879). "'[T]he removal statute 'is broad enough to cover **all cases** where federal officers can raise a colorable defense arising out of their duty to enforce federal law.... In fact, one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court.'" *Mesa v. California*, 489 U.S. 121, 133 (1989) (emphasis added) *citing Willingham*, 395 U.S. at 406-07.

There are three elements that must be established for federal officer removal. ***First***, Mr. Clark must show that he was a federal officer. ***Second***, Mr. Clark must show that the actions for which he is being prosecuted in state court are "for or relating to any act under color of such office." § 1442(a)(1). ***Third***, he must raise a "colorable federal defense." *Caver v. Central Ala. Elec. Coop.*, 845 F.3d 1135, 1142 (11th Cir. 2017); *Georgia v. Heinze*, 637 F. Supp. 3d 1316, 1321 (N.D. Ga. 2022), *citing Mesa*, 489 U.S. at 129.

    1.    FEDERAL OFFICER

The first element, that Mr. Clark was a federal officer, is undisputed. We

nevertheless submit contemporaneously herewith proof of the fact. Mr. Clark was at all times relevant to the Indictment an Assistant Attorney General of the United States and thus, indisputably, a federal officer. This is established by the dates of his Commission and resignation, which bracket the dates of his alleged acts in the Indictment (December 28, 2020 to January 2, 2021). *See* Clark Decl., ¶ 2, Exh. 1. Notably, and contrary to the State's position on the color of law issue, the Commission was not limited to any one Division of the Department of Justice or any stove-piped or siloed area of responsibility. *Id*. Mr. Clark served as the Assistant Attorney General for both the Environment and Natural Resources Division ***and,*** from September 1, 2020 until his resignation on January 14 2021, the Civil Division. *See* Clark Decl. ¶ 4, Exh. 2;  ¶ 8, Exh. 3.

    2.    Color of Law

The second prong of the federal officer removal test is that the actions for which Mr. Clark is being prosecuted are "for ***or relating to*** any act under color of such office." § 1442(a)(1) (emphasis added). This requires "'a causal connection between what the officer has done under asserted official authority and the action against him.'" *Caver*, 845 F.3d at 1142, *quoting Mangin v. Teledyne*, 91 F.3d 1424, 1427 (11th Cir. 1996). Noting that the 2011 amendment to Section 1442(a)(1) added the phrase "relating to," the Court observed:

> The phrase "relating to" is broad and requires only "a connection' or 'association' between the act in question and the federal office." ...

4

"The hurdle erected by this requirement is quite low … .".

*Caver*, 845 F.3d at 1144 (cleaned up).

How does the Court determine whether the officer was acting under color of law? Only a threshold showing is required, and in testing whether the threshold has been met, the Court must credit the officer's theory of the case, not decide the merits:

> Importantly, **the State's allegations do not control the causal-connection analysis**. *Osborn v. Haley*, 549 U.S. 225, 249–50 (2007). Rather, courts **must "credit [the officer's] theory of the case"** to determine whether the officer "ha[s] made an adequate threshold showing that the suit is 'for a[n] act under color of office.'" *Jefferson Cty*. [*Ala. v. Acker*], 527 U.S. [423,] 432 [(1999)] (citation omitted).

*Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017) (emphasis added). The following language from *Kleinert* neatly anticipates and invalidates the State's color of law arguments in this case:

> For example, if, in opposing removal, the state contends that the federal officer was not acting in his official capacity but instead "may have been on a frolic of his own[,]" **then the officer "should have the opportunity to 'present his version of the facts to a federal court**.'" *Osborn*, 549 U.S. at 251 (alterations omitted) (*quoting Willingham*, 395 U.S. at 409). **An officer is not required to definitively "exclude[ ] the possibility that the suit is based on acts or conduct not justified by his federal duty" before removal.** *Id*. at 249.

*Id*. (emphasis added). In other words, the evidentiary hearing under § 1455(b)(5) is not a vehicle for trying the merits of the federal officer's defenses.

In *Jefferson Cty., Ala. v. Acker*, the county imposed an occupational tax on federal district judges and sued to collect the tax. The judges removed under Section 1442(a)(1). The county argued that the judges were being taxed personally, and not

because of anything done under the color of their office. The Supreme Court declined to conflate the merits determination with the removal determination:

> ***To choose between those readings of the Ordinance is to decide the merits of this case.*** Just as requiring a "clearly sustainable defense" rather than a colorable defense would defeat the purpose of the removal statute, *Willingham*, 395 U.S., at 407, so would demanding an airtight case on the merits in order to show the required causal connection.

*Acker*, 527 U.S. 423, 432 (1999). The merits are not at issue at this stage and the removal analysis cannot be conflated with the merits analysis of immunity, etc.

Here, both the Indictment and Mr. Clark's Notice of Removal show that he is being state prosecuted for or relating to acts under the color of his office—actions he took as a double Assistant Attorney General in composing a draft letter—sending it to and discussing it with his superiors at the Department of Justice under highly privileged and confidential circumstances. The State's argument assumes that ***their*** allegations and ***their*** framing of events controls the color-of-law analysis. The Supreme Court has ***repeatedly and flatly*** rejected that errant approach. Instead, the Court must credit Mr. Clark's theory of the case that he was acting under the color of his office.

Instead of following this clearly established law, the State obdurately insists on prematurely arguing the substantive merits of Mr. Clark's immunity defenses. The Court in *Georgia v. Heinze*, 637 F. Supp. 3d 1316 (N.D. Ga. 2022), rejected an analogous set of arguments made by the same District Attorney's office. In *Heinze*,

6

the State argued that under its version of events the defendants were not acting under color of law because they had violated the Fourth Amendment. *Id*. at 1324. Here, the State argues in parallel fashion that by drafting and seeking approval of a letter relating to the election in Georgia, Mr. Clark stepped outside of what it claims was the scope of his responsibilities as the Assistant Attorney General over two DOJ Divisions and thus was beyond the color of law.

> This line of argument was rejected in *Heinze* and should be rejected here, too:
>
> ***The Court finds that this argument [that the defendants had violated the Fourth Amendment] concerns the <u>merits</u> of the criminal charges against the Defendants <u>and is irrelevant</u> to whether the Defendants acted under the color of federal authority for removal purposes***. *See e.g. Screws v. United States*, 325 U.S. 91, 111 (1945) ("Acts of officers who undertake to perform their official duties are included [under the color of law] ***whether they hew to the line of their authority or overstep it***."); *United States v. House*, 684 F.3d 1173, 1200 (11th Cir. 2012) ("[A] law enforcement officer acts under the color of law when he acts with authority by virtue of his employment with the government, or the manner of his conduct ... makes clear that he was asserting the authority granted [to] him and not acting in the role of a private person.") [(cleaned up)]. Thus, **at this juncture**, the Court gives no weight to the State's Fourth Amendment violation arguments.

*Heinze*, 637 F. Supp. 3d at 1324 (emphasis added).

Moreover, even if it were not barred at this stage (and it is), the premise of the State's color-of-law arguments is that Mr. Clark was outside of his lane in addressing anything involving elections. This is incorrect as a matter of both law and fact. As noted above, Mr. Clark's commission was not limited to running only those two Divisions: he was "***an*** Assistant Attorney General." By statute, Mr. Clark was not

limited to any particular delimited set of statutory functions or responsibilities. 28 U.S.C. § 506. The State assumes that it is for the State to determine the scope of the responsibilities of an Assistant Attorney General of the United States. It is not. Constitutionally, that is none of the State's business.

The State's Exh. D, Dkt. 28-4, is an email thread that starts with Mr. Clark's email of December 28, 2020, transmitting his draft letter to Mr. Donoghue and Mr. Clark and requesting their concurrence. The first page of the email has a hand-written note that reads: "This letter was opposed by the A/AG [Acting Attorney General] + OLC [Office of Legal Counsel]. Discussed w/ POTUS [President of the United States] on January 3, 2021 and he rejected AAG Clark's idea to send it." This note was not authenticated by either Rosen or Donoghue in their depositions at Dkt. 30 and 29, respectively. But their testimony regarding the January 3, 2021 meeting with the President confirms the substance of the note.

They described a lengthy and contentious meeting with the President, Mr. Clark, and four others besides themselves: Assistant Attorney General for the Office of Legal Counsel Steven Engel, White House Counsel Patrick Cipollone, Deputy White House Counsel Patrick Philbin, and White House lawyer Eric Herschmann. All six other than Mr. Clark argued against the letter. The President was initially in favor of sending the letter and having Mr. Clark take the helm of the Justice Department. After several hours, however, the President decided not to send the

letter and left Justice Department leadership as it was on January 2, 2021. That was the end of the matter. It was a privileged discussion that never should have become public and it was not leaked by Mr. Clark to the press or Congress.

The significant point about this meeting for removal purposes is that ***the President discussed the letter and election topics directly with Mr. Clark, and directly sought his opinions and advice***, along with that of all others present. The President has the unqualified and illimitable right to seek and obtain such advice from his senior legal advisors. This act by the President conclusively ratified that Mr. Clark's responsibilities included the election-related issues discussed in the draft letter, and that all of his charged conduct was under color of law.

It simply does not matter for purposes of removal that Mr. Rosen or Mr. Donoghue or the others in the meeting with the President were opposed to the letter, nor how vehemently they were opposed. The color-of-law test does not turn on such questions. The Constitution gives ***the President*** the ultimate authority to "take Care that the Laws be faithfully executed," not those other officials. U.S. Const., art. II, § 3, cl. 8. It is sufficient for removal that the President discussed the issue directly with Mr. Clark and others at considerable length before deciding against it.

### 3.  COLORABLE DEFENSES

The third prong of the analysis is that the federal officer seeking removal must raise a "colorable federal defense." "Our Court gives this portion of § 1442(a)(1) a

broad reading so as to encompass all cases where the federal officer can raise a colorable defense arising out of their duty to enforce federal law." *Caver*, 845 F.3d at 1145 (cleaned up), *citing Florida v. Cohen*, 887 F.2d 1451, 1454 n.4 (11th Cir. 1989), *quoting Willingham*, 395 U.S. at 406-407. Mr. Clark does not need to win his case on the merits in order to remove. The defense need only be colorable. Colorable is a "quite low" bar and is easily surmounted in this case. *Caver*, 845 F.3d at 1144.

Under the U.S. Constitution, the President of the United States, not the Attorney General is the chief law enforcement officer under the Take Care Clause because he alone is head of the entire Executive Branch. The Constitution vests all Federal law enforcement power and prosecutorial discretion in the President. The President's discretion in these areas has long been considered "absolute," and his decisions exercising this discretion are presumed regular and are generally deemed non-reviewable. *See, e.g., United States v. Armstrong*, 517 U.S. 456, 464 (1996); *United States v. Nixon*, 418 U.S. 683, 693 (1974); *see generally* Saikrishna Prakash, *The Chief Prosecutor*, 73 GEO. WASH. L. REV. 521 (2005). The Attorney General and other DOJ lawyers, such as Mr. Clark, exercised discretion delegated to them by the President subject to his supervision. They are "the hand" of the President for the discharge of these authorities. *Ponzi v. Fessenden*, 258 U.S. 254, 262 (1922).

To assist the President, he has the right to receive full and frank advice from his advisors. The Opinion Clause imposes on senior federal officers like Mr. Clark

a reciprocal duty to provide such advice upon request. *See* U.S. Const., art. II, § 2, cl. 1 (Opinion Clause); *see generally* Neil Thomas Proto, *Opinion Clause and Presidential Decision-Making*, 44 MISSOURI L. REV. 185 (1979).

In this case, the U.S. Constitution does not allow any state/local government to examine or otherwise regulate the internal deliberations that occur on a daily basis among the President, his office, and senior government officials, including the Acting Attorney General, the PDAG, or any Assistant Attorneys General. Review of the content, direction, and wisdom of policy discussions falls within the President's exclusive sphere, U.S. Const. art. II § 1, cl. 8 (Take Care Clause); art. II § 2, cl. 1 (Opinion Clause); art. II § 2, cl. 2 (Appointments Clause). *See also Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (the President's "absolute immunity" extends to acts "within the 'outer perimeter' of his official duties"); *Klayman v. Obama*, 125 F. Supp. 3d 67 (2015) (sovereign immunity bars RICO action against President and former Secretaries of State for actions taken in their official capacities); *Chugtai v. Obama*, 153 F. Supp. 3d 765 (E.D. Pa. 2015) (President and Air Force officials absolutely immune from Title VII and tort claims).

The Supremacy Clause therefore bars enforcement of any state's criminal law against Mr. Clark based on the content of his confidential internal deliberations at the Department of Justice or with the President. This element of federal supremacy has been clear since *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 427 (1819):

> [N]o principle of [state power] … can be admissible, which would defeat the legitimate operations of a supreme government. It is of the very essence of supremacy, to remove all obstacles to its action within its own sphere, and so to modify every power vested in subordinate governments, as to exempt its own operations from their own influence.[2]

In *Tennessee v. Davis*, 100 U.S. 257 (1880), the immediate issue was federal officer removal, but the Court's discussion well explains the federal supremacy interests that animated the decision:

> Now the execution and enforcement of the laws of the United States, and the judicial determination of questions arising under them, are confided to another sovereign [the federal sovereign], and to that extent the sovereignty of the state is restricted. The removal of cases arising under those laws from state into federal courts is therefore no invasion of state domain. On the contrary, a denial of the right of the general government to remove them, to take charge of and try any case arising under the Constitution or laws of the United States, is a denial of the conceded sovereignty of that government over a subject expressly committed to it.

*Id*. at 266-67.

As the Court in *Tennessee* further explained:

> As was said in *Martin v. Hunter* … "The general government must cease to exist whenever it loses the power of protecting itself in the exercise of its constitutional powers." It can act only through its officers and agents, and they must act within the states. ***If, when thus acting and within the scope of their authority, those officers can be arrested and brought to trial in a state court for an alleged offense against the law of the state, yet warranted by the federal authority they possess,***

---

[2] Similarly, in *Tarble's Case*, 80 U.S. (13 Wall.) 397 (1872), the Court held "[i]t is manifest that the powers of the National government could not be exercised with energy and efficiency at all times, if its acts could be interfered with a controlled for any period by officers or tribunals of another sovereignty." *Id*. at 409.

12

and if the general government is powerless to interfere at once for their protection — if their protection must be left to the action of the state court — ***the operations of the general government may at any time be arrested at the will of one of its members.***

*Id*. at 262-63. Such interference in the federal sphere cannot be allowed. Removal is the first line of defense in upholding the constitutional order in this context.

In *Cunningham v. Neagle*, 135 U.S. 1, 76 (1890), the Supreme Court held that "[I]f the prisoner is held in the state court to answer for an act which he was authorized to do by the law of the United States, which it was his duty to do as marshal of the United States, and if, in doing that act, he did no more than what was necessary and proper for him to do, he cannot be guilty of a crime under the law of the state of California." *Id*. at 75.

The test is not whether the federal officer's conduct violated state law, it is whether it fell within his federal authority. *See* Seth P. Waxman and Trevor W. Morrison, *What Kind of Immunity? Federal Officers, State Criminal Law, and the Supremacy Clause*, 112 YALE L.J. 2195, 2233-34 (2003).[3]

The foregoing establishes that it is a considerable understatement to characterize Mr. Clark's federal defenses as "colorable."

### III. FEDERALISM BALANCING PLAYS NO ROLE HERE AT ALL.

Near the start of its order remanding Mr. Meadows' removal, the Court stated

---

[3] Mr. Waxman has switched sides now that a Republican official is in the dock.

that "[t]here is a "'strong judicial policy against federal interference with state criminal proceedings.' *Arizona v. Manypenny*, 451 U.S. 232, 243 (1981) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 600 (1975))." But the Supreme Court did not say this to block, condition, or narrow a federal officer removal, but only to emphasize that States could appeal the merits when they lost on immunity in removed federal officer cases. *See Manypenny*, 451 U.S. at 243 ("No further purpose of the removal statute would be served by denying the State a right to seek review when that very right is available under applicable state law.").

In opposing our request for emergency relief to avoid Mr. Clark's arrest, the State argued (without rebuttal because we were denied a reply brief) that staying Mr. Clark's arrest (contrary to cases above on federal immunity) would violate *Younger* abstention and the Anti-Injunction Act. Both assertions are dead wrong. *See In re Commonwealth's Motion to Appoint Counsel Against or Directed to Defender Ass'n of Phila.*, 790 F.3d 457, 475 n.10 (3d Cir. 2015) ("The Commonwealth has pointed us to no courts that have exercised *Younger* abstention where the federal officer removal statute grants jurisdiction.") (showing error of Meadows Op. at 45 n.17); Erwin Chemerinsky, FEDERAL JURISDICTION, § 11.2, at 775-76 *Injunctions in Aid of Jurisdiction* (6th ed. 2012) (explaining removal expressly authorizes injunctions and thus falls outside of the Anti-Injunction Act) (citing 28 U.S.C. § 2283 (Reviser's Note) & "*Mitchum v. Foster*, 407 U.S. 225, 234-37 (1972) (removal as a situation

where there is an express authorization of injunction); *Dietzsch v. Huidekoper*, 103 U.S. 494 (1880) (removal as exception to the Anti-Injunction Act)"). There is no basis for engaging in an inapposite federalism-balancing analysis. The issue is conclusively resolved by federal supremacy and approximately 200 years of removal statutes and case law.

### IV. THE SPGJ PROCEEDINGS ARE REMOVABLE AS PROCEEDINGS.

The State argues that the SGPJ Proceedings cannot be removed because they are not an "action" under 28 U.S.C. § 1442(a). But Section 1442(d) defines "action[s]" to include "proceeding[s] (whether or not ancillary to another proceeding)." The SPGJ is surely that. Moreover, Section 1442(d)'s definition does not hinge on whether the "proceeding[s]" are civil or criminal, so that question can be deferred for later resolution. Finally, the remand decision in Mr. Clark's D.C. Bar case is not precedent and is on appeal to the D.C. Circuit, as it is in error. Lastly, the State argues that the SPGJ Proceedings are now moot but we removed that before the event that the State claims creates mootness occurred. The State cannot be permitted to defeat a removable proceeding at the time we removed by trying to moot it. In any event, the dispute on the mootness issue can also be resolved later.

### CONCLUSION

Removal jurisdiction plainly exists here and this Court should so hold.

Respectfully submitted this 14th day of September, 20233.

| | |
|---|---|
| **CALDWELL, CARLSON, ELLIOTT & DELOACH, LLP** | **BERNARD & JOHNSON, LLC** |
| /s/ Harry W. MacDougald<br>Harry W. MacDougald<br>Ga. Bar No. 463076<br>Two Ravinia Drive<br>Suite 1600<br>Atlanta, GA 30346<br>(404) 843-1956<br>hmacdougald@ccedlaw.com | Catherine S. Bernard<br>Ga. Bar No. 505124<br>5 Dunwoody Park, Suite 100<br>Atlanta, Georgia 30338<br>Direct phone: 404.432.8410<br>catherine@justice.law |

Attorneys for Jeffrey B. Clark

16

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

The undersigned hereby certifies that this filing was prepared in the Times New Roman size 14 font in compliance with L.R. 5.1.

This this 14th day of September 2023.

/s/ Harry W. MacDougald
Georgia Bar No. 463076
*Attorney for Defendant*

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing *Reply in Support of Removal* was hereby filed on this 14th day of September 2023 with the Court's electronic filing system which causes service to be made upon all counsel of record.

This 14th day of September 2023

>*/s/ Harry W. MacDougald*
>Georgia Bar No. 463076
>*Attorney for Defendant*

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com