# EXHIBIT 20


# Presidential Documents

Executive Order 13892 of October 9, 2019

### Promoting the Rule of Law Through Transparency and Fairness in Civil Administrative Enforcement and Adjudication

By the authority vested in me as President by the Constitution and the laws of the United States of America, it is hereby ordered as follows:

**Section 1**. *Policy.* The rule of law requires transparency. Regulated parties must know in advance the rules by which the Federal Government will judge their actions. The Administrative Procedure Act (APA), 5 U.S.C. 551 *et seq.,* was enacted to provide that "administrative policies affecting individual rights and obligations be promulgated pursuant to certain stated procedures so as to avoid the inherently arbitrary nature of unpublished *ad hoc* determinations." *Morton* v. *Ruiz,* 415 U.S. 199, 232 (1974). The Freedom of Information Act, America's landmark transparency law, amended the APA to further advance this goal. The Freedom of Information Act, as amended, now generally requires that agencies publish in the *Federal Register* their substantive rules of general applicability, statements of general policy, and interpretations of law that are generally applicable and both formulated and adopted by the agency (5 U.S.C. 552(a)(1)(D)). The Freedom of Information Act also generally prohibits an agency from adversely affecting a person with a rule or policy that is not so published, except to the extent that the person has actual and timely notice of the terms of the rule or policy (5 U.S.C. 552(a)(1)).

Unfortunately, departments and agencies (agencies) in the executive branch have not always complied with these requirements. In addition, some agency practices with respect to enforcement actions and adjudications undermine the APA's goals of promoting accountability and ensuring fairness.

Agencies shall act transparently and fairly with respect to all affected parties, as outlined in this order, when engaged in civil administrative enforcement or adjudication. No person should be subjected to a civil administrative enforcement action or adjudication absent prior public notice of both the enforcing agency's jurisdiction over particular conduct and the legal standards applicable to that conduct. Moreover, the Federal Government should, where feasible, foster greater private-sector cooperation in enforcement, promote information sharing with the private sector, and establish predictable outcomes for private conduct. Agencies shall afford regulated parties the safeguards described in this order, above and beyond those that the courts have interpreted the Due Process Clause of the Fifth Amendment to the Constitution to impose.

**Sec. 2**. *Definitions.* For the purposes of this order:

(a) "Agency" has the meaning given to "Executive agency" in section 105 of title 5, United States Code, but excludes the Government Accountability Office.

(b) "Collection of information" includes any conduct that would qualify as a "collection of information" as defined in section 3502(3)(A) of title 44, United States Code, or section 1320.3(c) of title 5, Code of Federal Regulations, and also includes any request for information, regardless of the number of persons to whom it is addressed, that is:

   (i) addressed to all or a substantial majority of an industry; or

   (ii) designed to obtain information from a representative sample of individual persons in an industry.

(c) ''Guidance document'' means an agency statement of general applicability, intended to have future effect on the behavior of regulated parties, that sets forth a policy on a statutory, regulatory, or technical issue, or an interpretation of a statute or regulation, but does not include the following:

(i) rules promulgated pursuant to notice and comment under section 553 of title 5, United States Code, or similar statutory provisions;

(ii) rules exempt from rulemaking requirements under section 553(a) of title 5, United States Code;

(iii) rules of agency organization, procedure, or practice;

(iv) decisions of agency adjudications under section 554 of title 5, United States Code, or similar statutory provisions;

(v) internal guidance directed to the issuing agency or other agencies that is not intended to have substantial future effect on the behavior of regulated parties; or

(vi) internal executive branch legal advice or legal opinions addressed to executive branch officials.

(d) ''Legal consequence'' means the result of an action that directly or indirectly affects substantive legal rights or obligations. The meaning of this term should be informed by the Supreme Court's discussion in *U.S. Army Corps of Engineers* v. *Hawkes Co.,* 136 S. Ct. 1807, 1813–16 (2016), and includes, for example, agency orders specifying which commodities are subject to or exempt from regulation under a statute, *Frozen Food Express* v. *United States,* 351 U.S. 40, 44–45 (1956), as well as agency letters or orders establishing greater liability for regulated parties in a subsequent enforcement action, *Rhea Lana, Inc.* v. *Dep't of Labor,* 824 F.3d 1023, 1030 (DC Cir. 2016). In particular, ''legal consequence'' includes subjecting a regulated party to potential liability.

(e) ''Unfair surprise'' means a lack of reasonable certainty or fair warning of what a legal standard administered by an agency requires. The meaning of this term should be informed by the examples of lack of fair notice discussed by the Supreme Court in *Christopher* v. *SmithKline Beecham Corp.,* 567 U.S. 142, 156 & n.15 (2012).

(f) ''Pre-enforcement ruling'' means a formal written communication from an agency in response to an inquiry from a person concerning compliance with legal requirements that interprets the law or applies the law to a specific set of facts supplied by the person. The term includes informal guidance under section 213 of the Small Business Regulatory Enforcement Fairness Act of 1996, Public Law 104–121 (Title II), as amended (SBREFA), letter rulings, advisory opinions, and no-action letters.

(g) ''Regulation'' means a legislative rule promulgated pursuant to section 553 of title 5, United States Code, or similar statutory provisions.

**Sec. 3**. *Proper Reliance on Guidance Documents.* Guidance documents may not be used to impose new standards of conduct on persons outside the executive branch except as expressly authorized by law or as expressly incorporated into a contract. When an agency takes an administrative enforcement action, engages in adjudication, or otherwise makes a determination that has legal consequence for a person, it must establish a violation of law by applying statutes or regulations. The agency may not treat noncompliance with a standard of conduct announced solely in a guidance document as itself a violation of applicable statutes or regulations. When an agency uses a guidance document to state the legal applicability of a statute or regulation, that document can do no more, with respect to prohibition of conduct, than articulate the agency's understanding of how a statute or regulation applies to particular circumstances. An agency may cite a guidance document to convey that understanding in an administrative enforcement action or adjudication only if it has notified the public of such document in advance through publication, either in full or by citation if publicly available, in the *Federal Register* (or on the portion of the agency's website

that contains a single, searchable, indexed database of all guidance documents in effect).

**Sec. 4**. *Fairness and Notice in Administrative Enforcement Actions and Adjudications.* When an agency takes an administrative enforcement action, engages in adjudication, or otherwise makes a determination that has legal consequence for a person, it may apply only standards of conduct that have been publicly stated in a manner that would not cause unfair surprise. An agency must avoid unfair surprise not only when it imposes penalties but also whenever it adjudges past conduct to have violated the law.

**Sec. 5**. *Fairness and Notice in Jurisdictional Determinations.* Any decision in an agency adjudication, administrative order, or agency document on which an agency relies to assert a new or expanded claim of jurisdiction—such as a claim to regulate a new subject matter or an explanation of a new basis for liability—must be published, either in full or by citation if publicly available, in the *Federal Register* (or on the portion of the agency's website that contains a single, searchable, indexed database of all guidance documents in effect) before the conduct over which jurisdiction is sought occurs. If an agency intends to rely on a document arising out of litigation (other than a published opinion of an adjudicator), such as a brief, a consent decree, or a settlement agreement, to establish jurisdiction in future administrative enforcement actions or adjudications involving persons who were not parties to the litigation, it must publish that document, either in full or by citation if publicly available, in the *Federal Register* (or on the portion of the agency's website that contains a single, searchable, indexed database of all guidance documents in effect) and provide an explanation of its jurisdictional implications. An agency may not seek judicial deference to its interpretation of a document arising out of litigation (other than a published opinion of an adjudicator) in order to establish a new or expanded claim or jurisdiction unless it has published the document or a notice of availability in the *Federal Register* (or on the portion of the agency's website that contains a single, searchable, indexed database of all guidance documents in effect).

**Sec. 6**. *Opportunity to Contest Agency Determination.* (a) Except as provided in subsections (b) and (c) of this section, before an agency takes any action with respect to a particular person that has legal consequence for that person, including by issuing to such a person a no-action letter, notice of noncompliance, or other similar notice, the agency must afford that person an opportunity to be heard, in person or in writing, regarding the agency's proposed legal and factual determinations. The agency must respond in writing and articulate the basis for its action.

(b) Subsection (a) of this section shall not apply to settlement negotiations between agencies and regulated parties, to notices of a prospective legal action, or to litigation before courts.

(c) An agency may proceed without regard to subsection (a) of this section where necessary because of a serious threat to health, safety, or other emergency or where a statute specifically authorizes proceeding without a prior opportunity to be heard. Where an agency proceeds under this subsection, it nevertheless must afford any person an opportunity to be heard, in person or in writing, regarding the agency's legal determinations and respond in writing as soon as practicable.

**Sec. 7**. *Ensuring Reasonable Administrative Inspections.* Within 120 days of the date of this order, each agency that conducts civil administrative inspections shall publish a rule of agency procedure governing such inspections, if such a rule does not already exist. Once published, an agency must conduct inspections of regulated parties in compliance with the rule.

**Sec. 8**. *Appropriate Procedures for Information Collections.* (a) Any agency seeking to collect information from a person about the compliance of that person or of any other person with legal requirements must ensure that such collections of information comply with the provisions of the Paperwork Reduction Act, section 3512 of title 44, United States Code, and section

1320.6(a) of title 5, Code of Federal Regulations, applicable to collections of information (other than those excepted under section 3518 of title 44, United States Code).

(b) To advance the purposes of subsection (a) of this section, any collection of information during the conduct of an investigation (other than those investigations excepted under section 3518 of title 44, United States Code, and section 1320.4 of title 5, Code of Federal Regulations, or civil investigative demands under 18 U.S.C. 1968) must either:

(i) display a valid control number assigned by the Director of the Office of Management and Budget; or

(ii) inform the recipient through prominently displayed plain language that no response is legally required.

**Sec. 9**. *Cooperative Information Sharing and Enforcement.* (a) Within 270 days of the date of this order, each agency, as appropriate, shall, to the extent practicable and permitted by law, propose procedures:

(i) to encourage voluntary self-reporting of regulatory violations by regulated parties in exchange for reductions or waivers of civil penalties;

(ii) to encourage voluntary information sharing by regulated parties; and

(iii) to provide pre-enforcement rulings to regulated parties.

(b) Any agency that believes additional procedures are not practicable—because, for example, the agency believes it already has adequate procedures in place or because it believes it lacks the resources to institute additional procedures—shall, within 270 days of the date of this order, submit a report to the President describing, as appropriate, its existing procedures, its need for more resources, or any other basis for its conclusion.

**Sec. 10**. *SBREFA Compliance.* Within 180 days of the date of this order, each agency shall submit a report to the President demonstrating that its civil administrative enforcement activities, investigations, and other actions comply with SBREFA, including section 223 of that Act. A copy of this report, subject to redactions for any applicable privileges, shall be posted on the agency's website.

**Sec. 11**. *General Provisions.* (a) Nothing in this order shall be construed to impair or otherwise affect:

(i) the authority granted by law to an executive department or agency, or the head thereof; or

(ii) the functions of the Director of the Office of Management and Budget relating to budgetary, administrative, or legislative proposals.

(b) This order shall be implemented in a manner consistent with applicable law and subject to the availability of appropriations.

(c) This order is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person.

(d) Notwithstanding any other provision in this order, nothing in this order shall apply:

(i) to any action that pertains to foreign or military affairs, or to a national security or homeland security function of the United States (other than procurement actions and actions involving the import or export of non-defense articles and services);

(ii) to any action related to a criminal investigation or prosecution, including undercover operations, or any civil enforcement action or related investigation by the Department of Justice, including any action related to a civil investigative demand under 18 U.S.C. 1968;

(iii) to any action related to detention, seizure, or destruction of counterfeit goods, pirated goods, or other goods that infringe intellectual property rights;

(iv) to any investigation of misconduct by an agency employee or any disciplinary, corrective, or employment action taken against an agency employee; or

(v) in any other circumstance or proceeding to which application of this order, or any part of this order, would, in the judgment of the head of the agency, undermine the national security.

*[Signature: Donald Trump]*

THE WHITE HOUSE,
*October 9, 2019.*

[FR Doc. 2019–22624
Filed 10–11–19; 11:15 am]
Billing code 3295–F0–P