IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| THE STATE OF GEORGIA,<br><br>v.<br><br>JEFFREY BOSSERT CLARK,<br><br>    Defendant. | CIVIL ACTION FILE<br><br>No. 1:23-CV-03721-SCJ<br><br>RE: NOTICE OF REMOVAL OF FULTON COUNTY SUPERIOR COURT INDICTMENT NO. 23SC188947 |

## ORDER

This matter appears before the Court following Defendant Jeffery Bossert Clark's filing of a Notice of Removal.[1] Doc. No. [1]. This Order addresses the limited question of whether Clark has carried his burden to demonstrate the removal of the State of Georgia's criminal prosecution against him is proper under the federal officer removal statute, 28 U.S.C. § 1442(a). After considering the arguments made and evidence submitted, the Court determines that Clark has not met his burden. Accordingly, the Court **DECLINES** to assume

---

[1] All citations are to the electronic docket unless otherwise noted, and all page numbers are those imprinted by the Court's docketing software.

jurisdiction over the State's criminal prosecution of Clark under 28 U.S.C. § 1455,

**DENIES** Clark's Notice of Removal of the Special Grand Jury Proceedings under

28 U.S.C. § 1446, and **REMANDS** the case to Fulton County Superior Court.[2]

## I.    BACKGROUND

At the times relevant to this matter, Clark undisputedly served as an

Assistant Attorney General (AAG) for the United States Department of Justice

(DOJ). Doc. No. [48], 24; Hearing Tr. [3] 60:21–61:3. Following presidential

nomination and Senate confirmation, on November 1, 2018, Clark was sworn into

office and assigned to be the AAG for the Environmental and Natural Resources

---

[2]  As the Court has previously indicated, despite using the term "remand" the Court has not actually assumed jurisdiction over this case under Section 1455, and the State proceedings are ongoing. See Georgia v. Meadows, --- F.Supp.3d ---, No. 1:23-CV-03621-SCJ, 2023 WL 5829131, at *1 n.2 (N.D. Ga. Sept. 8, 2023). Nevertheless, Section 1455 itself conceives of some form of remand, 28 U.S.C. § 1455(b)(4), and other federal courts who have failed to find that federal jurisdiction exists over a criminal prosecution have "remanded" the prosecution to the state court. See, e.g., New York v. Trump, ---F. Supp. 3d----, No. 23 CIV. 3773 (AKH), 2023 WL 4614689, at *1 (S.D.N.Y. July 19, 2023).

[3]  The Court cites to the Official Certified Hearing Transcript for the September 18, 2023 evidentiary hearing provided by the court reporter. This transcript has not yet been filed on the docket.

Division. Doc. No. [48], 4.[4] In September 2020, he also began to simultaneously serve as the AAG for the Civil Division. Id.

On August 14, 2023, a grand jury indicted Clark along with 18 co-Defendants for conduct relating to the 2020 presidential election. Doc. No. [1-1]. The Indictment charged Clark specifically with violating Georgia's Racketeer Influenced and Corrupt Organizations ("RICO") Act, O.C.G.A. § 16-14-4(c), and with Criminal Attempt to Commit False Statements and Writings, O.C.G.A. §§ 16-4-1, 16-10-20. Id. at 14, 84. The Indictment's charges primarily relate to a letter Clark drafted and submitted to his superiors, Acting Attorney General Jeffrey A. Rosen and Acting Deputy Attorney General Richard Donoghue. Doc. No. [28-1]. The draft letter was addressed, but never sent, to Georgia state officials—specifically the Governor, the Georgia Speaker of the

---

[4]   At the evidentiary hearing, the Court admitted, over the State's objection, a declaration submitted by Clark from former United States Attorney General, Edwin Meese, III. Doc. No. [48]. The Court indicated that it would properly weigh Meese's declaration evidence following the State's objections that some of Meese's opinions constitute improper expert or legal opinions, and that his testimony about his personal experience as Attorney General is irrelevant to Clerk's case. To be sure, the Court does not consider any testimony rendered by Meese that would require expert designation. Moreover, to the extent that the Court considers Meese's declaration's assertions about his own personal experience at DOJ, the Court finds that this experience has limited relevance given that Clark's tenure as AAG occurred decades after Meese had left the DOJ.

3

House, and the President Pro Tempore of the Georgia Senate—encouraging Georgia to take actions with regard to its Certified Electors because of DOJ investigations into the 2020 election that showed purported irregularities. Doc. Nos. [28-1]; [1-1], 46–47 (charging that Clark "knowingly and willfully ma[de] a false writing and document . . . that the United States Department of Justice had 'identified significant concerns that may have impacted the outcome of the election in multiple States, including the State of Georgia[ ]'" and "solicited Acting United States Attorney General Jeffrey Rosen and Acting United States Deputy Attorney General Richard Donoghue to sign and send a document that falsely stated" that DOJ had these concerns).

Clark filed a Notice of Removal of the Criminal Prosecution on August 21, 2023.[5] Doc. No. [1]. He asserts that removal of this proceeding is procedurally proper under 28 U.S.C. § 1455 (for removal of criminal prosecutions) and substantively permitted under 28 U.S.C. § 1442(a) (for federal officer jurisdiction). He argues that he was acting as a federal officer at the time that the

---

[5] Clark secondarily attempts to remove the Special Grand Jury Proceedings, which preceded the Indictment, as a civil matter under Sections 1441, 1442, and 1446. Doc. No. [1], 28–30. The State rejects Clark's characterization of the Special Grand Jury Proceedings as a civil matter. Doc. No. [28], 21–23. The Court resolves this particular issue *infra* Section (III)(B).

4

above-referenced letter was drafted and submitted to his DOJ superiors and that

he has a colorable federal defense for the charges against him. On August 24,

2023, the Court declined to summarily remand his case, ordered the State to

respond to Clark's attempted removal, and scheduled an evidentiary hearing to

be held on September 18, 2023.[6] Doc. No. [15]. The State responded in opposition

to Clark's removal (Doc. No. [28]) and Clark replied (Doc. No. [41]). The Court

held the evidentiary hearing on September 18, 2023. Doc. No. [50]. Clark waived

his right to appear at the hearing (Doc. No. [49]), and one State witness, Joseph

(Jody) Hunt, testified (Hearing Tr. 56:23–84:21). As will be discussed in greater

detail *infra*, only the State admitted exhibits at this hearing. Doc. No. [51].

At the conclusion of the hearing, the Court took the matter under

advisement. Having considered the arguments put forth by the Parties and the

evidence submitted, the Court now enters this Order, which concludes that there

is no federal jurisdiction over Clark's criminal prosecution.

---

[6] Before the hearing, the Court granted leave for an Amici Curiae to file a brief in
support of remand. Doc. Nos. [46]; [47].

## II.    LEGAL STANDARD

"[A] federal district court should be slow to act 'where its powers are invoked to interfere by injunction with threatened criminal prosecutions in a state court.'" Cameron v. Johnson, 390 U.S. 611, 618 (1968) (quoting Douglas v. City of Jeannette, 319 U.S. 157, 162 (1943)). An exception to these general concepts of federalism is the federal officer removal statute, 28 U.S.C. § 1442(a)(1). This statute allows for federal jurisdiction over "a criminal prosecution . . . against . . . any officer (or any person acting under that officer) of the United States . . . for or relating to any act under color of such office." 28 U.S.C. § 1442(a)(1).

Federal officer removal "is an incident of federal supremacy and is designed to provide federal officials with a federal forum in which to raise defenses arising from their official duties." Florida v. Cohen, 887 F.2d 1451, 1453 (11th Cir. 1989) (citing Willingham v. Morgan, 395 U.S. 402, 405 (1969)). Given a preference for state courts conducting their state prosecutions, it has been suggested that a "more detailed showing" of the relation between the acts charged and the federal role at issue is required. Willingham, 395 U.S. at 409 n.4. Furthermore, federal courts must maintain a balance between what Section 1442

6

allows and respect for a State's right to deal with matters properly within its domain.

Clark removed this criminal prosecution procedurally under 28 U.S.C. § 1455, which specifies the requirements for removing a state criminal prosecution to a federal district court. "28 U.S.C. § 1455 'merely provides procedures that must be followed in order to remove a criminal case from state court when a defendant has the right to do so under another provision.'" Maine v. Counts, No. 22-1841, 2023 WL 3167442, at *1 (1st Cir. Feb. 16, 2023) (quoting Kruebbe v. Beevers, 692 F. App'x 173, 176 (5th Cir. 2017)). Upon filing a notice of removal, the Court must promptly determine whether the notice and its attachments clearly fail to establish the Court's subject matter jurisdiction, and if they do, the case is summarily remanded to state court. 28 U.S.C. § 1455(b)(4). If summary remand is not granted, then the district court must "promptly" hold an evidentiary hearing to determine the "disposition of the prosecution as justice shall require." Id. § 1455(b)(5). Based on the facts adduced at the hearing and the arguments put forth by the Parties, the Court must determine whether the Defendant has met his burden in establishing that the Court has subject matter jurisdiction over his criminal prosecution. Trump, 2023 WL 4614689, at * 5 (citing

7

United Food & Comm. Workers Union v. CenterMark Props. Meriden Square, Inc., 30 F.3d 298, 301 (2d Cir. 1994)).

Under 28 U.S.C. § 1442, the question of the scope of a federal officer's authority contains issues of law and fact. See Nadler v. Mann, 951 F.2d 301, 305 (11th Cir. 1992) ("[D]etermination[s] of whether an employee's actions are within the scope of his employment involve[ ] a question of law as well as fact.").

Ultimately, for removal under Section 1455 to be proper, the removing party must show that there is a basis for the federal court to exercise jurisdiction over the criminal prosecution. See Leonard v. Enter. Rent a Car, 279 F.3d 967, 972 (11th Cir. 2002) ("A removing defendant bears the burden of proving proper federal jurisdiction."). If the Court lacks federal jurisdiction, then the case cannot proceed in this forum.

The Supreme Court has cautioned that "an airtight case on the merits in order to show the required causal connection" is not required and that courts are to "credit" the movant's "theory of the case" for the elements of the jurisdictional inquiry.[7] Jefferson Cnty. v. Acker, 527 U.S. 423, 432 (1999).

---

[7] Acker's "theory of the case" language refers to the colorable defense prong of the analysis. 527 U.S. at 432. Nevertheless, the Court will evaluate the theory of the case as

## III.   ANALYSIS

With the foregoing standards in mind, the Court turns to its determination of whether Clark has carried his burden to show that removal is permitted under 28 U.S.C. § 1442. Clark has raised two different proceedings for the Court to consider in its removal analysis: (A) the Indictment and its criminal prosecution against him (procedurally under 28 U.S.C. § 1455), and (B) the Special Grand Jury Proceedings (SGJP) prior to the issuance of the Indictment (procedurally under 28 U.S.C. § 1446). Clark has not shown a basis for the removal of either.

### A.   The Indictment and Criminal Prosecution

The Court first addresses Clark's removal of his criminal prosecution. For the Court to determine the jurisdictional question presented, it must address the familiar three-part test for federal officer removal: (1) that Clark was a federal officer, (2) that his actions alleged were taken under the color of his federal office, and (3) that he has a colorable federal defense. <u>Caver v. Cent. Ala. Elec. Coop.</u>, 845 F.3d 1135, 1142 (11th Cir. 2017). The Court considers each of these requirements in turn and ultimately concludes that Clark has failed to meet his

_____

it relates to the color of office because at least one district court recently has applied it in this manner. See <u>Georgia v. Heinze</u>, 637 F. Supp. 3d 1316, 1322 (N.D. Ga. 2022).

burden on the second requirement that his actions occurred under the color of his federal office.

### 1.    *Federal Officer*

Clark was a federal officer at the time of the acts alleged. There is not any real contention in this case that Clark was not a federal officer when he served as AAG over two DOJ divisions.[8]

### 2.    *Causal Connection Between Federal Office and Acts Alleged*

The Court now turns to the question of whether Clark was acting in the scope of his federal office at the time of the acts alleged. The Court concludes that Clark has not submitted evidence to meet his burden to show that his actions

_____

[8]  Clark's co-Defendant, Mark Meadows, appealed this Court's remand order to the Eleventh Circuit and moved for a stay of the remand order. See Georgia v. Meadows, No. 23-12958 (11th Cir. Sept. 8, 2023); id. at ECF No. 4. The Eleventh Circuit panel that was reviewing the motion to stay requested supplemental briefing on whether Section 1442(a)(1)'s jurisdiction covered *former*, as well as current, federal officers (Id. at ECF No. 7). The State's supplemental briefing argued that Section 1442(a)(1)'s text did not cover former federal officers. Id. at ECF No. 11. Following the briefing but before a hearing could be held, Meadows withdrew his motion to stay. Id. at ECF Nos. 28, 29. Meadows's appeal otherwise remains pending, but it is unknown whether the Eleventh Circuit panel hearing the merits of his appeal will address the question raised by the panel reviewing his motion to stay. Ultimately, the Court need not consider this issue further because Clark did not meet his burden in establishing that he was acting under the color of a federal office and the case must be remanded.

were causally related to his federal office. To reach this conclusion, the Court must first address what evidence it will consider.

### a)   <u>Evidence to be considered</u>

The first issue the Court must address is the evidence that is to be considered on behalf of Clark's removal petition. As indicated, Clark did not submit any witness testimony, and only referred to two declarations that were filed on the docket (via CM/ECF) prior to the evidentiary hearing. <u>See generally</u> Hearing Tr. In fact, Clark's presentation to the Court wholly consisted of counsel's argument and factual representations in the light of the evidence filed on the docket and in response to the briefing submitted. The State, for its part, tendered two exhibits at the hearing and offered one witness's testimony. The State also relied on significant portions of the docket evidence in support of its arguments for remand.

The Court is not aware of any prior cases that discuss what evidence is to be considered at the statutorily mandated evidentiary hearing under 28 U.S.C. § 1455(b)(5). To be sure, ordinarily—at least when showing jurisdictional facts for the amount in controversy for diversity cases (28 U.S.C. § 1442) removed under 28 U.S.C. § 1446—"substantive jurisdictional requirements of removal do not

limit the types of evidence that may be used to satisfy the preponderance of the evidence standard." <u>Pretka v. Kolter City Plaza II, Inc.</u>, 608 F.3d 744, 755 (11th Cir. 2010). That is, a defendant "may introduce [his] own affidavits, declarations, or other documentation—provided of course that removal is procedurally proper." <u>Id.</u> There is some support for a similar proposition in the context of federal officer removal. <u>See</u> <u>De Busk v. Harvin</u>, 212 F.2d 143, 146 (5th Cir. 1954) [9] ("The uncontroverted *affidavits* of appellees, *attached as exhibits* to the amended petition for removal, clearly reveal that appellant's dismissal by appellees was an 'act under color of [ ] office', within the meaning of the removal statute." (emphasis added)).

An evidentiary hearing, however, is not required in a typical *civil* removal action. Thus, the question of whether evidence submitted on the docket is sufficient (or if it must be tendered at the hearing) has yet to be addressed, as far as the Court is aware from its independent research. The Court determines that

---

[9]  In <u>Bonner v. City of Prichard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

12

it will consider the evidence filed on the docket even if it was not tendered or referenced at the evidentiary hearing, subject to one caveat as described below.[10]

The Court's reasoning for considering this evidence rests on the aforementioned removal cases, which often involve documentary evidence submitted on the docket for the jurisdictional determination. The fact that the removal of a criminal prosecution requires an evidentiary hearing to determine if the case should remain in federal court should not, in and of itself, inhibit the consideration of attachments and other evidence on the docket. Likewise, while the Court may be cautioned to scrutinize the removal of criminal cases more closely than civil cases (given heightened federalism concerns), it does not necessarily mean that the Court should make the submission of evidence more difficult than in a typical removal case. Willingham, 395 U.S. at 409 n.4; see also, Pretka, 608 F.3d at 755. Indeed, to remove a case (even a criminal prosecution) to federal court does not require "an airtight case on the merits," and this certainly should not be the case for assessing the jurisdictional evidence from the hearing itself. Acker, 527 U.S. at 432.

---

[10]  The Court limits this ruling to the facts and circumstances of Clark's case.

13

Moreover, as a matter of fact in this case, the Court notes that some, but not all, of the docket evidence was objected to at the hearing. Specifically, the State objected to the submission of a declaration and its attachments made by Clark himself and the declaration by former Attorney General Meese. Hearing Tr. 49:13–51:8. The Court excluded the Clark affidavit and its attachments,[11] but allowed the Meese declaration subject to further weighing and consideration in this Order. Id. 52:21–53:4; see also *supra* note 4. Because the State selectively objected to some, but not all of the evidence filed on the docket, for purposes of this Order's jurisdictional inquiry, the Court deems that the State waived any objections to evidence for which an objection was not specifically raised. Clark, for his part, did not make any objection to the State's evidence filed on the docket. Rather, he referred to the Rosen and Donoghue transcripts and asked the Court

---

[11] Unlike the declarations and affidavits submitted by third parties in this case, the Court excluded Clark's declaration. The Court finds that even if it were to consider this declaration its weight would be slight given its clear self-interest and that it was not subject to cross-examination. See Fed. R. Evid. 403; cf. also Fed. R. Civ. P. 43(c); Proe v. Facts Servs., Inc., 491 F. App'x 135, 138 (11th Cir. 2012) ("A district court has 'broad discretion to admit evidence if it has any tendency to prove or disprove a fact in issue.'" (quoting Fidelity Interior Constr., Inc. v. Se. Carpenters Reg'l Council of United Bro. of Carpenters and Joiners of Am., 675 F.3d 1250, 1258–59 (11th Cir. 2012))).

to consider the "totality" of the depositions filed. [12] Hearing Tr. 23:23–24. Accordingly, because a number of filings have been made on the docket without any objection—in written motion or orally at the evidentiary hearing—the Court concludes that any objection not raised to its consideration of this evidence has been waived.

This conclusion is not to imply that the evidentiary hearing is without any purpose. Section 1455 clearly contemplates an evidentiary hearing and the evidence submitted at this hearing is assumedly for the purpose of assisting the Court to more fully consider its jurisdiction over a matter. Indeed, the ability to hear live testimony and for the Parties to submit further documentary evidence is of enormous value and should not be tossed aside under the ease of docket filings. To be sure, there is evidence in this case that was excluded or assigned little weight because the witness was not available for cross-examination.

Accordingly, the Court will generally consider the docket filings in this case as part of its jurisdictional inquiry into whether Clark was operating as a

---

[12] Clark's use of and reliance on some of the State's evidence as part of his presentation at the hearing, as far as the Court is concerned, not only suggests an implicit waiver of the objection, but in fact an affirmative waiver.

federal officer.[13] See, e.g., Doc. Nos. [29-1]; [30-1]; [31-1]; [43]. The only filing that will not be considered is Clark's declaration and its attachments (i.e., Doc. Nos. [42] & [42-1]–[42-9]). This filing, in its entirety, is excluded per the Court's oral ruling on the State's objection at the hearing. Hearing Tr. 53:3–4, 54:2–25.

### b)   Clark's burden in the light of this evidence

Having established what evidence is considered in issuing this ruling, the Court now assesses whether Clark has met his burden to show a causal connection between his federal office and the acts alleged in the criminal prosecution. The Court concludes that he has not.

The Court fully adopts its reasoning in Georgia v. Meadows relating to what constitutes an act for purposes of the Georgia RICO statute.[14] Meadows, 2023 WL 5829131, at *4–8. While the Court necessarily engaged in a lengthy

---

[13]  The Court has reviewed the totality of the evidence in the Record. This does not mean that all filed submissions are relevant to this Order, however, and if something from the Record is omitted in this Order, the Court deems it irrelevant or to have limited value to the jurisdictional question presented.

[14]  The Court does make clear that it relies on Baucom v. Martin, 677 F.2d 1346, 1347 (11th Cir. 1982) as persuasive authority. The Court found this case to be relevant given that it involved an underlying RICO investigation. Id. ("The FBI, in cooperation with Georgia law enforcement authorities, engaged in an investigation of possible violations . . . the [federal] RICO statute."). The Court acknowledges, however, that Baucom was *not* a Georgia RICO case, and did not rely on it as such.

discussion in the <u>Meadows</u> case about the role of the overt acts specified, the Court need not do so here. The Indictment clearly specifies Clark's alleged associative acts, which also correspond to the additional substantive charge against him for attempted false writings.[15] Doc. No. [1-1], 46–47, 51, 84. The State charges that Clark engaged in criminal activity under Georgia law when he drafted the December 28 letter and solicited Rosen's and Donoghue's signatures to endorse and send the letter to Georgia officials for purposes of interfering with the 2020 presidential election. <u>Id.</u> Hence the specific question for the Court to decide is whether Clark has met his burden to show that his aforementioned actions were causally connected to (i.e., under color of) his federal office.

In December 2020, the time of the relevant actions for assessing federal office removal, Clark was a federal officer as AAG for both the Environmental and Natural Resources and the Civil Divisions of DOJ. <u>See</u> *supra* Section (III)(A)(1). Clark does not contend that the December 28 letter had anything to do with his AAG role with the Environmental and Natural Resources

---

[15] One exception may be Overt Act 110, which alleges that Clark received a phone call from a co-Defendant on January 2, 2021. Doc. No. [1-1], 51. There has been no evidence or argument pertaining to this act relevant specifically to the questions addressed in this Order for the removal proceedings and thus the Court will not linger further on it.

Division. Instead, the Court construes Clark's argument to be two-fold: (1) he first argues that his role as AAG for the Civil Division permitted him to write this letter within the scope of his office; and (2) alternatively, as AAG, he was not limited to working under a particular DOJ division, and thus he could be assigned or directed to do work for any of the DOJ subdivisions. See generally Hearing Tr. The Court now considers, and ultimately rejects, both arguments.

### (1) *The scope of Clark's role in the Civil Division*

First, the Court concludes that Clark has submitted no evidence that the December 28 letter was written within the scope of his role as AAG for the Civil Division. To the contrary, the evidence before the Court indicates the opposite: Clark's role in the Civil Division did not include any role in the investigation or oversight of State elections. The only witness subject to cross-examination at the hearing, Jody Hunt—the former AAG of Civil Division from 2018 until 2020 and whom Clark replaced (Hearing Tr. 60:4–8)—testified from his personal experience that most of the Civil Division's work was "defensive in nature" that is "defending suits that are filed against the United States or officers of the executive branch." Id. at 61:19–20. The remaining work, "affirmative enforcement matters" includes False Claims Act cases, enforcement actions in the Consumer

Protection Branch, and some matters handled by the Federal Programs Branch. Id. at 61:22–62:8. Hunt expressly disclaimed the Civil Division's role in matters relating to "election interference or allegations of voter fraud" and testified that the only election matters handled by the Civil Division would be in a defensive posture once a member of the executive branch had been named in a lawsuit. Id. at 62:14–23. Indeed, "[a]nything with respect to election irregularities or voter discrimination issues would either fall to the Civil Rights Division or to the Criminal Division." Id. at 63:1:–3. This delegation of responsibilities between the Civil Division and the other DOJ Divisions assigned to enforcement actions involving election laws and irregularities, has been, in Hunt's experience, "consistent over time" and was contained in the DOJ's Justice Manual. Id. at 65:17–25.

And, in fact, the Justice Manual and relevant regulations for the DOJ's Civil Division reinforce Hunt's testimony. The Justice Manual indicates the Civil Division's AAG has authority, as is most relevant for this case, [16] under 28 C.F.R.

---

[16] While some of the regulations consider the Civil Division involvement with international matters, see, e.g., 28 C.F.R. § 0.49, the Court does not find the evidence submitted by Clark pertaining to foreign interference with the elections (or related cybersecurity threats) to be relevant to the Court's jurisdictional inquiry of whether he

§ 0.45 and 28 C.F.R. § 0.46. Doc. No. [28-8], 4. The defensive work of the Civil Division, on behalf of federal officials sued in their official capacity, is discussed in 28 C.F.R. § 0.46, and does not cover the type of action contemplated in Clark's December 28 letter. The regulation does allow the Civil Division to affirmatively bring cases of fraud, but for "civil claims arising from fraud on the Government" such as cases under the False Claims Act, among others. 28 C.F.R. § 0.45(d). None of the statutory provisions indicated, however, have to do with *election* fraud or interference.

Rosen's and Donoghue's deposition testimony submitted by the State—and referenced extensively at the hearing by Clark[17]—further supports that the Civil Division did not have a role in bringing affirmative election-related suits. Rosen testified that Clark's letter was "strange" in part because Clark "didn't have responsibility for election issues." Doc. No. [30-1] (Rosen Dep. Tr.)

_____

was a federal officer acting within the scope of his office (see, e.g., Doc. Nos. [43-4]–[43-12]). Neither have the Parties argued as much. Thus, while this evidence may bear on the merits of the criminality or justification for Clark's actions alleged in the Indictment, it has no relevance to the jurisdictional questions to be answered by this Court.

[17] Clark asked the Court to "consider the totality of [Rosen and Donoghue's] testimony." Hearing Tr. 23:23–24. The Court has done so.

Tr. 99:11, 17–19. Rosen also indicated that for the processes of "vetting voter fraud and election-crime related allegations" the FBI and the Criminal Division would provide the most insight. Id. at 125:23–126:4, 127:1–4. Donoghue testified that the Civil Division was responsible for "a vast portfolio" but "[n]othing having to do with elections . . . ." Doc. No. [29-1] (Donoghue Dep. Tr.) Tr. 97:6–11. Clark's assistant in drafting the letter, Kenneth Klukowski, reaffirmed that he was "shocked" at the assignment because "election-related matters are not part of the Civil [Division's] portfolio." Doc. No. [31-1] (Klukowski Dep. Tr.) Tr. 67:6–10; see also id. at 77:18–21 ("[T]his is not part of the Civil Division. These investigations must be someone else, because I have never heard anything about any of this.").

Clark's only evidence in response is that he is named as counsel representing former Vice President Mike Pence and other officials in a civil lawsuits alleging voting irregularities around the same time as the December 28 letter (i.e., in matters related to the 2020 presidential election). Hearing Tr. 28:21–29:8, 35:20–36:4; see also Doc. No. [48], 45–135 (filings made in these election cases). The State does not dispute that Clark was involved in these cases, but rather that his involvement had nothing to do with the investigation or prosecution of election fraud. Rather, Hunt testified that Clark was involved in

21

these cases, not because of any election oversight responsibilities, but because members of the executive branch had been sued in their official capacities, and the Civil Division was tasked with defending them. Hearing Tr. 72:4–14. The subject matter of the litigation did not matter, the cases "belong[ed] to the Civil Division" by nature of their defensive posture "regardless of the subject matter of the lawsuit." Id. at 72:18–19. Hunt's testimony on Clark's involvement in these cases is unrebutted and is internally consistent with his general description of the Civil Division's responsibilities, as well as the Justice Department's Manual and the relevant regulations. Accordingly, the Court does not find Clark's evidence of being named as DOJ counsel in these defensive cases involving election matters to be evidence that he, as AAG of the Civil Division, had any authority over election fraud and interference matters or that his involvement related to his role as AAG of the Civil Division.

Accordingly, the Court concludes that Clark has not met his burden to show that he was acting within the scope of his federal office as AAG of the Civil Division in drafting the December 28 letter. The letter pertained to election fraud and election interference concerns that were outside the gamut of his federal

office. Consequently, Clark has not shown the required nexus for federal officer

removal.

### (2)    *Reassignment or delegation of Clark's duties*

Clark's next argument that he was acting in the scope of his federal office

as AAG for purposes of federal officer removal is that his assignments as AAG

to the Environmental and Natural Resources Division and the Civil Division

were not strict parameters and that he could be reassigned to other DOJ Divisions

by the Attorney General or the President. In support, Clark submits the

declaration of Edwin Meese, which attaches a Memorandum Opinion from the

former Solicitor General and AAG Ted Olson. Doc. No. [48], 21–23.  In this

Memorandum, Olson concluded that the AAGs can be assigned by the Attorney

General to "any duties he chooses . . . including the supervision of a division

other than that for which they were nominated and confirmed." Id. at 23. Meese's

declaration expounds that the President is an authority who can likewise reassign

or direct the actions of an AAG beyond the scope of the division the AAG was

tasked with in nomination and confirmation. Id. at 5–6. Clark contends that the

President could have delegated him (as AAG) the authority to write this

December 28 letter and suggests that the President had been in contact with Clark prior to his writing the letter. See, e.g., Hearing Tr. 24:21–27:16.

Preliminarily, the Court finds that this argument most clearly aligns with Clark's asserted theory of the case that "it is simply impossible for [Clark] to have done the things he is charged with doing except that he was acting under color of law." Id. at 19:3–6. Clark further argued that he wrote the letter while at his DOJ office, using DOJ equipment and software, and sent it using his DOJ email. Hearing Tr. 16:15–17:1. As required, the Court credits Clark's theory of the case (i.e., that he engaged in these activities while at the DOJ and the President could have reassigned or delegated duties to Clark within the scope of DOJ's broader delegation). It is still Clark's burden, however, to show that there is a jurisdictional basis for his removal. See Leonard, 279 F.3d at 972 ("A removing defendant bears the burden of proving proper federal jurisdiction."); cf. Maryland v. Soper, 270 U.S. 9, 34 (1926) (discussing a defendant's testimonial support of their notice of removal of a criminal indictment and collecting cases).

Other than his counsel's own vague and uncertain assertions (Hearing Tr. 25:17–27:20) the Court has no evidence that the President directed Clark to work on election-related matters generally or to write the December 28 letter to the

24

Georgia State Officials on their election procedures.[18] Rosen testified that he did

not know if the President had discussed the December 28 letter with Clark.[19]

Rosen Dep. Tr. 105:6–9. Donoghue testified that he did not recall Clark indicating

that the President was aware of the letter. Donoghue Dep. Tr. 104:21–23.

Klukowski, who drafted the letter at Clark's request, did not testify that the

President directed Clark to write the letter, but rather indicated that the letter was

for a meeting with Rosen and Donoghue. Klukowski Dep. Tr. 65:15–66:5, 73:4–15.

No evidence in the Record definitively shows that the President directed Clark

to write the letter. Instead, the evidence before this Court does not show the

President's involvement in this letter specifically until the January 3 meeting

where the President decided not to send it to the Georgia officials. Rosen Dep. Tr.

111:22–25.

--------

[18] Donoghue also testified that he was unaware of anyone else in the Civil Division who was working with Clark on the letter and that it was his impression that Clark "drafted this letter himself." Donoghue Dep. Tr. 101:8–14.

[19] Because it is fatal to Clark's argument that he submitted no evidence that the President reassigned or delegated him the task of writing the letter, the Court need not engage with the suggestion that Clark's contacts with the President contravened DOJ policy. See, e.g., Donoghue Dep. Tr. 104:3–7; Doc. No. [28-5] (Memorandum from Former Attorney General Eric Holder regarding "Communications with the White House and Congress"); see also id. at 3 (requiring initial communications be made between the White House and the AG or Deputy AG).

25

Moreover, Rosen and Donoghue's testimony makes clear that the specific contents of the December 28 letter were not within the scope of the Department of Justice's authority more broadly. In fact, it was for this reason that Rosen and Donoghue were unwilling to endorse and sign the letter. Rosen Dep. Tr. 154:23–155:1; Donoghue Dep. Tr. 103:22–23; Doc. No. [28-4], 2 ("[T]here is no chance that I would sign this letter or anything remotely like this."). Rosen testified that "there were so many problems with [the letter]" including "it's not the Justice Department's responsibility" to direct States on election procedures. Rosen Dep. Tr. 102:17–22. Donoghue's email response to the letter raises concerns about DOJ's role to make "recommendations to a State Legislature about how they should meet their [c]onstitutional obligation to appoint Electors." Doc. No. [28-4], 2. He later reaffirmed that "it was not at all the Department [of Justice's] role to be dictating to states what they should or should not be doing with regard to their presidential elections." Donoghue Dep. Tr. 98:18–21. Klukowsi also asserted that he was unaware of the DOJ ever having recommended a State legislature call itself to session. Klukowski Dep. Tr. 82:7–9.

Thus, the evidence submitted does not support Clark's argument that he was acting in the scope of his authority as AAG because the President had the

ability to delegate him the task of writing the December 28 letter. Not only has Clark failed to provide any (let alone sufficient) evidence that the President delegated him this authority,[20] but the evidence shows that any such delegation of the action alleged (i.e., the contents in the letter drafted) would have been outside the scope of DOJ more broadly. The bar for federal officer removal is indeed low, but the removing party still bears a burden to show a jurisdictional basis for the removal. Clark has failed to offer sufficient evidence that the acts alleged in the Indictment related to the color of his office.[21] Accordingly, Clark has failed to carry the second element for proper removal under Section 1442.

---

[20]  In crediting Clark's theory of the case, the Court has not questioned Clark's contention that the *President* himself has authority to reassign or delegate AAGs in the Justice Department. While Meese's declaration makes this assertion (Doc. No. [48], 6), the Olson Memorandum does not reference the President at all (id. at 21–23). The Court has no reason to doubt that the President has authority to reconfigure AAG's duties, but the evidence does not support that the President did reconfigure Clark's duties to include election investigation or oversight, or reassign Clark to the Civil Rights or Criminal Divisions, which do interact with state elections (Hearing Tr. 63:1–3). Counsel's arguments that it was possible that these events occurred and citation to the Meese declaration (which was not subject to cross examination) does not support the broad conclusion that Clark in fact had this authority, or that this authority was related to his color of office.

[21]  As an aside, in his argument at the evidentiary hearing, Clark conflated an official acting under "color of law" (as is found in different statutory provisions, such as Section 1983) with an official acting under "color of office." See, e.g., Hearing Tr. 89:3–90:21. While there may be some overlap in the way these "colorable" requirements manifest in cases, the inquiries involved are distinct. Acting under "color of office" for

### 3.    Colorable Federal Defense

Finally, the third requirement for Section 1442 removal is the removing defendant allege a colorable federal defense. Clark asserts numerous federal defenses, including immunity under the Supremacy Clause. Doc. Nos. [1], 26; [41], 9–13. Because Clark failed to carry his burden with respect to the second requirement of Section 1442—that he was acting under the color of his office at the time of the acts alleged—the Court declines to address Clark's defenses.

### B.    <u>Special Grand Jury Proceedings</u>

Clark also seeks to remove the SGJP against him, as a civil matter procedurally under 28 U.S.C. § 1446(a), because he is a federal officer under Section 1442 and there is a federal question under Section 1441. Clark relies on Section 1442(d)(1), which defines an action to be removed to include "any proceeding (whether or not ancillary to another proceeding) to the extent that in such proceeding a judicial order . . . is sought or issued." 28 U.S.C. § 1442(d)(1);

---

Section 1442 purposes requires "showing . . . a 'causal connection' between the charged conduct and asserted official authority." <u>Willingham</u>, 395 U.S. at 409 (quoting <u>Soper</u>, 270 U.S. at 33). Acting under "color of law" conversely involves "acting 'under pretense of law.'" <u>Butler v. Sheriff of Palm Beach Cnty.</u>, 685 F.3d 1261, 1268 (11th Cir. 2012) (quoting <u>United States v. House</u>, 684 F.3d 1173, 1200 (11th Cir. 2012)). Accordingly, the Court has considered the cases cited by Clark involving questions of acting under "color of law," but affords them the mere persuasive weight they are due.

Doc. No. [1], 22–24. Clark also asserts that removal would be proper under Section 1441 (for federal question jurisdiction) because the SGJP constitutes a civil proceeding that is completely preempted. Id. at 28–30. The State responds that these SGJP are not removable as civil actions under Section 1441 or Section 1442 and that the SGJP have concluded and thereby are not within the bounds of Section 1442's proceedings to be removed. Doc. No. [28], 23.

Even assuming that the complete SGJP *could* be removed as a civil or criminal matter, Clark has not asserted any viable basis for the SGJP to be removed. To the extent Clark seeks removal of the SGJP under Section 1442, the acts involved in the SGJP are the same as those charged in the Indictment (Doc. No. [32-1]) and the Court has already determined that Clark failed to carry his burden to show federal officer removal was appropriate. See *supra* Section (III)(A).

As for Clark's contention that this Court has jurisdiction under Section 1441 based on complete preemption, the Court disagrees. "Complete preemption is rare." Dorsett v. Highlands Lake Ctr., LLC, 557 F. Supp. 3d 1218, 1225 (M.D. Fla. 2021). It requires either Congress to expressly preempt state law or "wholly displace[ ] the state-law cause of action" through federal statute. Id.

at 1226 (quoting <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 8 (2003)). Here, Clark did not cite to any federal statute or congressional action that would completely preempt the State's SGJP. Clark's arguments that being AAG provides a stronger basis for finding complete preemption given that Congress has not delegated investigating this federal office to the States (Doc. No. [1], 29), is really an argument for defensive preemption, which is not a basis for removal. <u>Id.</u> at 1225 (citing <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 393 (1987)).

Furthermore, the SGJP have concluded and the findings have been published. Doc. No. [32-1]. Clark has not provided any authority showing that a *concluded* special purpose grand jury proceeding can be removed to the federal court. In the absence of binding authority, the Court declines to remove the completed SGJP.

## IV.   CONCLUSION

For the foregoing reasons, the Court **DECLINES** to assume jurisdiction over the State's criminal prosecution of Clark under Section 1455 and **REMANDS** the case to Fulton County Superior Court. The Court moreover **DENIES** Clark's attempt to remove the SGJP under Section 1446.

The Court makes clear this Order determines only that, as a federal court with limited jurisdiction, it lacks any basis for jurisdiction over Clark's criminal prosecution and the SGJP. The Court's conclusion is not to suggest any opinion about the State's case against Clark. The Court makes no ruling on the merits of the charges against Clark or any defense that he may offer. Clark maintains the presumption of innocence and bears no burden of proving that he did not commit the crimes charged against him. The burden of proof beyond a reasonable doubt remains with the State. This Order's sole determination is that there is no federal jurisdiction over the criminal case. The outcome of this case will be for a Fulton County judge and trier of fact to ultimately decide.

IT IS SO ORDERED this _29th_ day of September, 2023.

_____
HONORABLE STEVE C. JONES
UNITED STATES DISTRICT JUDGE

31