### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| STATE OF GEORGIA, | Case No. 1:23-cv-3721 |
| v. | (Related to: |
| JEFFREY BOSSERT CLARK, | Case Nos.   1:23-cv-03621-SCJ |
|   | 1:23-cv-03720-SCJ |
| DEFENDANT. | 1:23-cv-03792-SCJ |
|   | 1:23-cv-03803-SCJ |
|   | Judge Steve C. Jones |
|   | On removal from the Fulton County Superior Court |

## MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rule of Civil Procedure 62, Federal Rule of Appellate Procedure 8(a)(1), and (out of an abundance of caution) Local Civil Rule 7.2, Jeffrey B. Clark, Defendant in the above-entitled matter, hereby moves for stay pending appeal of the Court's Order of September 29, 2023 remanding this case to the Superior Court of Fulton County, Georgia.

### PROCEDURAL BACKGROUND

Mr. Clark was indicted in Fulton Superior Court on August 14, 2023 as a co-defendant in *State v. Trump*, Case No. 23SC188947. On August 21, 2023, he removed the prosecution against him to this Court principally pursuant to 28 U.S.C. § 1442, the federal officer removal statute, but also pursuant to 28 U.S.C. §§ 1331,

1441, 1446, and 1455. On August 24, 2023, pursuant to 28 U.S.C. § 1455(b)(4), the Court declined to summarily remand back to Fulton Superior Court. After receiving briefing, the Court held an evidentiary hearing on September 18, 2023. On September 29, 2023, the Court issued its remand order. On October 9, 2023, Mr. Clark filed his Notice of Appeal as contemplated by 28 U.S.C. § 1447(d) and Federal Rule of Appellate Procedure 4.

The Fulton Superior Court severed the case against Mr. Clark and numerous others from the case against Kenneth Chesebro and Sidney Powell. The Chesebro/Powell case will go to trial starting October 23, 2023. On September 29, 2023, the Fulton Superior Court amended the Case Specific Scheduling Order for Mr. Clark and the severed defendants to provide that their discovery is due on December 4, 2023, and their motions are due on January 8, 2023.

For these reasons, this stay motion is not filed as an emergency motion, although we respectfully request that this Court act on the stay motion before the last weekday this week (October 13, 2023), as we intend to file for a stay pending appeal pursuant to Federal Rule of Appellate Procedure 8(a)(2) on October 15, 2023, In other words, we would appreciate the ability, if a stay pending appeal is to be denied, to respond to the Court's reasoning in our impending FRAP 8(a)(2) motion.

## ARGUMENT AND CITATION OF AUTHORITY

This Court possesses the clear ability to confirm an automatic stay pending

appeal or to grant one in its discretion. *See infra* Part I. Indeed, there are three grounds for confirming the grant of a stay on a mandatory basis (*see infra* Parts II through V) and one ground for granting a stay on a discretionary basis (*see infra* Part VI).

## I.   AUTHORITY TO ORDER A STAY PENDING APPEAL

Federal Rule of Appellate Procedure 8(a)(1) vests the District Court with the authority to decide the issue of granting or denying a stay pending appeal. It specifically requires the initial motion be filed in the District Court. The Federal Rules of Appellate Procedure consider the issue of a stay pending appeal to be an ancillary matter that District Courts can decide notwithstanding appeal.

District Courts can clearly preserve the *status quo* pending appeal without trenching on the divestiture of jurisdiction in favor of appellate courts. *See, e.g.*, *Newton v. Consolidated Gas Co. of N.Y.*, 258 U.S. 165, 177 (1922) ("Undoubtedly, after appeal the trial court may, if the purposes of Justice require, preserve the status quo until decision by the appellate court. ... But it may not finally adjudicate substantial rights directly involved in the appeal.") (cites omitted).

## II.   A MANDATORY STAY AUTOMATICALLY APPLIES HERE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 62(a).

Federal Rule of Civil Procedure 62(a) provides as follows: "***Automatic Stay.*** Except as provided in Rule 62(c) and (d), execution on a judgment and proceedings

to enforce it are stayed for 30 days after its entry, unless the court orders otherwise."[1] Fed. R. Civ. P. 62(a) (emphasis added). Mr. Clark is plainly entitled to this automatic stay, which at the earliest would run from the Court's September 29, 2023 remand order. The Rule 62(a) automatic stay's last day would thus run on October 29, 2023. But that is a Sunday and so, by operation of Federal Rule of Civil Procedure 6(a)(2)(C), the period is automatically extended until Monday, October 30, 2023.

Docket Nos. 56 and 57 (respectively, the Court's Remand Letter to the Superior Court of Fulton County and an "electronic remand" to that same court), cannot be properly viewed as obviating the Rule 62 automatic stay. Indeed, it was error for the Court to prematurely issue those docket entries—something we assume occurred because the Court was not focused on the applicability of the Rule 62 automatic stay and instead presumed that its remand order automatically became effective instantaneously.

**First**, Rule 58(a) was not complied with here because no separate document setting out the judgment[2] was entered on the docket, and the remand order is not

---

[1] Federal Rule of Civil Procedure 62(c)-(d) is not applicable, as those sub-provisions involve injunctions in one form or another and removal is not a type of injunction.

[2] Federal Rule of Civil Procedure 54(a) defines a "judgment" as "a decree and any order from which an appeal lies." And under 28 U.S.C. § 1447(d), Mr. Clark possesses an appeal as of right here to challenge the September 29 Order. Accordingly, a separate judgment needed to be entered here consistent with Rule 58(a); yet it was not.

exempt from the requirement.

**Second**, the Court did not explain why Mr. Clark should be denied the benefit of the 30-day automatic stay. Rule 62(a)'s default 30-day stay is there for a reason, and while a court is permitted to turn off that automatic stay, it should not do so *sub silentio*. The purpose of Rule 62(a) is to stay execution of judgment for 30 days to afford litigants an ample period of time to decide whether to appeal and/or to seek a stay of execution of judgment. *See McKenzie v. Kennickell*, 669 F. Supp. 529, 535 (D.D.C. 1997).[3] The Court is thus not entitled, in effect, to presume (invalidly in this case) that an appeal and/or stay pending appeal will not be sought and therefore override the 30-day automatic stay for no reason.

Therefore, until the Court (1) enters a separate judgment compliant with Rule 58; and (2) thereafter explains why the default 30-day stay should apply, Mr. Clark is entitled to the Rule 62(a) automatic stay until at least October 30, 2023.

## III. A MANDATORY/AUTOMATIC STAY SHOULD BE APPLIED UNDER *COINBASE V. BIELSKI*, 599 U.S. 736 (2023).

The Supreme Court's recent ruling in *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), also requires a mandatory stay to be entered pending appeal. *Coinbase*

---

[3] At the time *Kennickell* was decided, the automatic-stay period was 10 days. It was lengthened to 30 days in an amendment to Rule 62(a) promulgated in 2018. As the relevant Advisory Committee note indicates: "Setting the period at 30 days coincides with the time for filing most appeals in civil actions, providing a would-be appellant the full period of appeal time to arrange a stay by other means."

involved an interlocutory appeal concerning arbitrability but its logic equally controls here, as *Coinbase* applies whenever the issue on appeal is one going purely to which tribunal will hear a case. That is precisely the situation here.

The first paragraph of the *Coinbase* decision is instructive. It states:

> When a federal district court denies a motion to compel arbitration, the losing party has a statutory right to an interlocutory appeal. *See* 9 U.S.C. § 16(a). The sole question here is whether the district court must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing. The answer is yes: The district court must stay its proceedings.

*Coinbase*, 599 U.S. at 738.

The Supreme Court reached this conclusion based on the logic of the interlocutory appeals involved, not because the arbitration statute commanded it. "Section 16(a) does not say whether the district court proceedings must be stayed." *Id.* at 740. The logic instead derives from *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), which the Supreme Court called "a clear background principle," that a stay pending appeal must be granted whenever the issue on appeal is which tribunal will hear a case. *Coinbase*, 599 U.S. at 740.

The Supreme Court describe the principle as follows:

> The *Griggs* principle resolves this case. Because the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially "involved in the appeal." 459 U.S. at 58. As Judge Easterbrook cogently explained, when a party appeals the denial of a motion to compel arbitration, whether "the litigation may go forward in the district court is precisely what the court of appeals must decide." *Bradford-Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (C.A.7 1997). Stated otherwise, the question of

whether "the case should be litigated in the district court ... is the mirror image of the question presented on appeal." *Id*., at 505. ***Here, as elsewhere, it "makes no sense for trial to go forward while the court of appeals cogitates on whether there should be one."*** *Apostol v. Gallion*, 870 F.2d 1335, 1338 (C.A.7 1989). In short, *Griggs* dictates that the district court must stay its proceedings while the interlocutory appeal on arbitrability is ongoing.

*Coinbase*, 599 U.S. at 741.

This case is controlled by the same *Coinbase/Griggs/Apostol* logic. Namely, it makes no sense for trial in Fulton County, Georgia to go forward while the Eleventh Circuit cogitates on whether the case should be in that forum or this one. Mr. Clark's interlocutory appeal right under Section 1447(d) is equivalent to the interlocutory appeal right contained in 9 U.S.C. § 16(a). As the Supreme Court further explains, both the Moore's and the Wright & Miller treatises on federal procedure endorse the idea that where the appeal is, in essence, "the whole ballgame," an automatic stay pending appeal must be entered. *See Coinbase*, 599 U.S. at 741-42. Cementing the matter further is that the purpose of such an automatic-stay rule is to avoid "an entirely wasted trial"—here an entirely wasted trial in Fulton County Superior Court that is forecast to last *months*. *Id.* at 742.

As the Supreme Court explained, a stay during interlocutory appeals like Section 16(a) concerning arbitrability—and analogously appeals under Section 1447(d)— gives meaning and purpose to the appeal: "A right to interlocutory appeal of the arbitrability issue without an automatic stay of the district court proceedings

is therefore like a lock without a key, a bat without a ball, a computer without a keyboard—in other words, not especially sensible." *Coinbase*, 599 U.S. at 743. The Supreme Court further indicated that when Congress wants to turn off the default rule that automatic stays are required in interlocutory appeal situations like this one, Congress says so explicitly—in a device the Supreme Court calls a "'non-stay' provision. *See id.* at 744 n.6 (collecting authorities ranging from the Act of Apr. 3, 1926, ch. 102, 44 Stat. 233–234 to the Tax Reform Act of 1986, § 1558, 100 Stat. 2757–2758 to Federal Rule of Civil Procedure 23(f)). And, of course, it is obvious from looking at Section 1447(d) that the interlocutory appeal right it offers as to orders remanding federal officer removals to state court is not burdened by a "non-stay provision." As discussed below in Section V, 28 U.S.C. § 1455(b)(3) does not operate as a non-stay provision in this case because (1) it does not act as an explicit non-stay provision as to interlocutory appeals; and (2) the removal and appeal here also include not just a criminal matter controlled by Section 1455(b)(3), but the ancillary civil-in-nature Special Purpose Grand Jury.

*Coinbase* is an independent ground requiring a mandatory stay the Supreme Court even describes as an "automatic stay." *E.g.,* 599 U.S. at 742. Hence, the Court should grant the requested stay pending the duration of the appeal.

IV.    **A MANDATORY STAY CONTINUING THE AUTOMATIC STAY OF SECTION 1446(d) ALSO APPLIES UNDER *BP V. MAYOR AND CITY COUNCIL OF BALTIMORE*.**

In *BP v. Mayor And City Council of Baltimore*, 141 S. Ct. 1532 (2021), the City of Baltimore brought common law nuisance and tort claims against BP involving climate change. 141 S. Ct. at 1535; *see also id.* at 1546 (Sotomayor, J., dissenting). BP removed to federal court on a variety of theories including the federal officer removal statute, Section 1442. *BP*, 141 S. Ct. at 1535.

The District of Maryland remanded, and BP appealed. The Fourth Circuit affirmed. The Supreme Court took the case to resolve a circuit split on the issue of whether all issues in the order, including non-federal-officer-based removal grounds, go up on appeal. The Supreme Court vacated the Fourth Circuit's decision and held that "when a district court's removal order rejects all of the defendants' grounds for removal, § 1447(d) authorizes a court of appeals to review each and every one of them." *Id.* at 1538.

In reaching its holding, the Supreme Court rejected several arguments put forward by the City. The first was Baltimore's argument that "[b]arring appellate review of remand orders … serves the worthy goal of allowing the parties to get on with litigating the merits of their cases in state court." *Id.* at 1542.

> For that subset of cases [*i.e.*, when Congress has provided an exception to the non-appealability of remand orders], Congress has expressed a heightened concern for accuracy, authorized appellate review, ***and accepted the delay it can entail***.

*BP*, 141 S. Ct. at 1542 (emphasis added). The inherent delay in allowing appeals in federal officer removal cases was a trade-off intended by Congress: "***Here, too,***

**Congress has deemed it appropriate to allow appellate review <u>before</u> a district court may remand a case to state court**." *BP*, 141 S. Ct. at 1536 (emphasis added).

In sum, Section 1446(d) means what it says: "a state court may not proceed 'further unless and until the case is remanded.'" *BP*, 141 S. Ct. at 1539 (quoting Section 1446(d)). Operating in conjunction with Section 1447(d) interlocutory appeals, when federal-officer removals are one of the grounds for removal involved, a remand cannot be ordered purely at the District Court stage. This would frustrate the *BP* majority's (and Congress's) "heightened concern for accuracy." Moreover, allowing trial on the merits in State Court pending the federal appeal of removal jurisdiction would defeat the whole purpose of federal officer removal and potentially moot the interlocutory appeal right.

Mr. Clark has maintained from the inception and argues below in Section V that Section 1446(d) automatically stays the local proceedings. Notice of Removal, Dkt. # 1 at ¶¶ 62-64 (incorporated here by reference). That bar applies to any proceedings seeking a judicial order. *See* 28 U.S.C. § 1442(d)(1). A stay is appropriate because without it Fulton County is determined to move forward.

If Mr. Clark prevails on appeal, the litigation in Fulton County would be rendered a wasteful nullity. Where the automatic stay applies, Superior Court orders issued in between the time of removal and remand are void. *See Roman Catholic*

*Archdiocese of San Juan, P.R. v. Acevedo Feliciano*, 140 S. Ct. 696, 700 (2020).[4]

Here, Mr. Clark is entitled to a federal Article III forum under Section 1442 and an

appeal as of right on that issue under Section 1447(d). He should not be put to the

trouble and expense of litigating in two forums until his appeal rights have been

exhausted.

Moreover, *Coinbase* is entirely consistent with *BP*—where both the majority

and dissent recognized that state proceedings would be halted while the interlocutory

appeal of federal officer removal progressed. The issue in appeals from remand

orders in federal officer removal cases is precisely analogous to that in *Coinbase* and

*BP*—which court will hear the case. *See Mayor and City Council of Baltimore v. BP*

*plc*, 388 F. Supp. 3d 538 (D. Md. 2019) (vacated by the Supreme Court's 2021

decision in *BP*) (but noting tug-of-war between state and federal courts).

The principal difference between *BP* and *Coinbase* is that, in *BP* the Court

had an express statute commanding an automatic district court-level stay in a civil

federal officer removal (which we contend is applicable in this case because the

---

[4] "Once a notice of removal is filed, 'the State court shall proceed no further unless and until the case is remanded.' 28 U. S. C. § 1446(d). The state court 'los[es] all jurisdiction over the case, and, *being without jurisdiction, its subsequent proceedings and judgment [are] not ... simply erroneous, but absolutely void*.' 'Every order thereafter made in that court [is] *coram non judice*," meaning 'not before a judge.'. . ." *Roman Catholic Archdiocese of San Juan*, 140 S. Ct. at 700 (cites omitted, footnote omitted).

11

ancillary Special Purpose Grand Jury Proceedings are at least part civil), whereas in *Coinbase*, the Court relied on a background principle mandating stays pending appeal, taken together with their inference that when a statute that is silent on automatic stays, such automatic stays must be granted.

## V.   SECTION 1455(b)(3) DOES NOT BAR AN AUTOMATIC STAY OF THIS HYBRID CIVIL-CRIMINAL CASE.

It would be no answer to say that 28 U.S.C. § 1455(b)(3) bars application of *Coinbase* and *BP* to this case. The criminal prosecution here is inextricably linked to the Special Purpose Grand Jury, and that matter is therefore removable as ancillary to the prosecution within the meaning of 28 U.S.C. § 1442(d)(1) ("The terms 'civil action' and 'criminal prosecution' include any proceeding (whether or not ancillary to another proceeding)…"). Special Purpose Grand Juries lack any power to indict and thus lack the defining characteristic that would make them criminal. *Kenerly v. State*, 311 Ga. App. 190, 190 (2011) ("[W]e are called upon to determine whether a special purpose grand jury is authorized to return a criminal indictment. We hold that it is not and therefore reverse."); *State v. Bartel*, 223 Ga. App. 696, 699 (1996) (special purpose grand juries conduct civil investigations). The prosecution and the lead-up use of a Special Purpose Grand Jury are thus a mixed civil-criminal hybrid, and so take on the properties of civil removals, which are automatically stayed under 28 U.S.C. § 1446(d), and are stayed pending appeal under *Coinbase* and *BP*.

This Court did not address *Kenerly's* characterization of Special Purpose

Grand Jury Proceedings as civil in nature. Rather, it only rejected our argument that complete preemption applies here. *See* September 29 Order at 29-30. That issue does not alter the civil nature of the Special Purpose Grand Jury Proceedings. The complete-preemption issue is neither here nor there right now. Mr. Clark is entitled to use Section 1442 to remove not only criminal cases but civil cases and *Kenerly* dictates that the Special Purpose Grand Jury Proceedings are civil in nature.

Finally, this Court held that it could not permit the removal of the Special Purpose Grand Jury Proceedings because it was cited to no authorities holding that a concluded proceeding of that nature can be removed. *See* September 29 Order at 30. Respectfully, that is not how Section 1442 works. We cannot be expected to cite all-fours precedent for unprecedented cases like this one. Section 1442(d) allows the removal of "any proceeding (whether or not ancillary to another proceeding)" connected to a civil or criminal proceeding. And the Special Purpose Grand Jury Proceedings so qualify textually, even if this is the first case and first attempted removal under the federal officer statute of Special Purpose Grand Jury Proceedings.

Nor does it matter that the Special Purpose Grand Jury Proceedings are claimed by Fulton County to have concluded. They were not concluded when we removed them. Mr. Clark thus clearly had standing to remove them while they were

live. Standing is tested at the time the complaint is filed.[5]

That leaves only mootness as a potential basis to deny the removal of the Special Purpose Grand Jury Proceedings. And those proceedings are emphatically not moot. Testimony, etc. collected by the Special Purpose Grand Jury was put before the ordinary grand jury. Mr. Clark (and, for that matter, all defendants) are entitled to test whether the Special Purpose Grand Jury Proceedings were infected with violations of the Due Process Clause or marred by other legal defects.

For the foregoing reasons, Section 1446(d)'s automatic stay continues to apply to the appellate stage pursuant to *BP* and this Court should confirm the applicability of that automatic stay, as well, to this case.

## VI.    A STAY SHOULD ALSO BE GRANTED UNDER THE TRADITIONAL FOUR-PART TEST OF A PROPER EXERCISE OF EQUITABLE DISCRETION.

The four elements of an ordinary discretionary stay pending appeal are:

(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and

---

[5] *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 189 (2000) ("The requisite personal interest that must exist at the commencement of the litigation (standing) must continue throughout its existence (mootness).") (citations omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 570 n.5 (1992) (plurality) ("[S]tanding is to be determined as of the commencement of suit."); *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989) ("The existence of federal jurisdiction ordinarily depends on the facts as they exist when the complaint is filed.").

(4) where the public interest lies.

*Nken v. Holder*, 556 U.S. 418, 434 (2009). They are all met in this case and in the alternative to the three arguments above (two arguments for automatic stays pending appeal running the entire duration of the appeal pursuant to *Coinbase* and *BP* and an argument for an automatic stay running at least until October 30, 2023), we argue this Court should also use its discretion to order a stay pending appeal based on the individual circumstances of the case. *See Nken*, 556 at 433-34.

In *Nken* the Court noted that:

> There is substantial overlap between these and the factors governing preliminary injunctions, *see Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008); not because the two are one and the same, but because similar concerns arise whenever a court order may allow or disallow anticipated action before the legality of that action has been conclusively determined.

*Id*. at 434.[6] "[F]irst two factors of the traditional standard are the most critical." *Id*.

A.   RESPONDENT HAS A STRONG LIKELIHOOD OF PREVAILING IN HIS FEDERAL APPEAL.

Mr. Clark has a strong likelihood of prevailing on appeal because the Court applied the wrong legal standard to test whether Mr. Clark had satisfied the second

---

[6] Lower courts have differed on whether *Winter* overrules the sliding scale for evaluating the four-factor test for granting a preliminary injunction. *See Sherley v. Sebellius*, 644 F.3d 388, 393 (D.C. Cir. 2011) (noting split). Especially given both that all four equitable factors are met here *and* that there are strong *Coinbase*, *BP*, and Rule 62(a)-based grounds for granting an automatic stay, even before alternatively getting to the equitable factors, the Court need not wade into that issue.

prong of federal officer removal, and because it did not consider or address unrebutted dispositive evidence satisfying that test.

Throughout the Court's Order, it applied the "causal connection" test drawn from *Willingham v. Morgan*, 395 U.S. 402, 409 (1969), and *Jefferson County v. Acker*, 827 U.S. 423 (1999). *See* September 29 Order at 8, 10, 11, 16, 17, n.21, and 27-28. There are two fundamental problems with requiring a "causal connection." ***First***, those terms do not appear in the statute. The phrase is merely a now-superseded judicial gloss applied to a former version of the statute. ***Second***, as recognized in *Caver v. Central Ala. Elec. Coop.*, 845 F.3d 1135 (11th Cir. 2017); the statute was amended in 2011 to add the emphasized language to § 1442(a)(1): "for ***or relating to*** any act under color of such office …." Textually, this is a broadening amendment, as the Eleventh Circuit explicitly recognized in *Caver*:

> In 2011, Congress amended § 1442(a)(1) to add the phrase "or relating to," which was intended to broaden the scope of acts that allow a federal officer to remove a case to federal court. *In re Commonwealth's Motion [to Appoint Counsel Against or Directed to Def. Ass'n of Phila.]*, 790 F.3d [457] at 471-72 [(3d Cir. 2015)].

*Id.* at 1144, n.8. Thus, the "causal connection" test from *Willingham* and *Acker* is not good law after the 2011 amendment to Section 1442.

As the *Caver* court recognized, "[t]he phrase 'relating to' is broad and requires only 'a connection' or 'association' between the act in question and the federal office." "The hurdle erected by this requirement is quite low...." *Id.* (cleaned up). Or,

putting the point a different way, any "relating to" test is vastly broader than any but-for causation test.

By applying the wrong legal standard, the Court also erred by effectively requiring Mr. Clark "to definitively 'exclude[ ] the possibility that the suit is based on acts or conduct not justified by his federal duty' before removal." *Texas v. Kleinert*, 855 F.3d. 305, 312 (5th Cir. 2017) *citing Osborn v. Haley*, 549 U.S. 225, 251 (2007). This is evident in the overly exacting examination of the contours of the internal areas of responsibility of the Civil Division of the Department of Justice, and the discounting of the declaration of former Attorney General Edwin Meese, and the authorities upon which he relied in describing the authorities of Assistant Attorney Generals like Mr. Clark.

The error in the Court's analysis is further manifested by the Court's finding that Mr. Clark failed to "definitively" prove that the President directed him to prepare the letter. September 29 Order at 25. Definitive proof is not required:

> The plaintiff in *Willingham* disputed that the defendant federal officials had acted under color of office. He alleged that they "had been acting on a frolic of their own which had no relevancy to their official duties as employees or officers of the United States." *Id*., at 407 (internal quotation marks omitted). The Court held that the officers "should have the opportunity to present their version of the facts to a federal, not a state, court." *Id*., at 409 (emphasis added).

*Osborn v. Haley*, 549 U.S. 225, 249 (2007). The officers in *Willingham* were not required to definitively prove they had acted under the color of their office, nor

should Mr. Clark be required to do so at this stage either.

Here, the Court resolved a merits question instead of a jurisdictional question by concluding that Mr. Clark had not proved he was acting within the color of his office. It is easily possible to imagine that a federal official engaging in something entirely unrelated to the kind of office he holds may be unable to call for the protections of Section 1442. But even the pleaded facts in the Fulton County indictment and those that were the subject of removal briefing and the September 18 live hearing did not reveal Mr. Clark to be involved in anything that could remotely be characterized as a "frolic and detour." The Justice Department advises on legal questions. Mr. Clark was advising on legal questions related to the election. And with respect, it is not for Fulton County to second guess the internal organization of the U.S. Justice Department or the individual taskings of the President of the United States (that violates the Supremacy Clause and any proper, right-side-up understanding of federalism doctrine). Nor is it for this Court to second guess how the President assigned duties to Mr. Clark. That is a violation of the separation of powers. It is enough that Assistant Attorney General duties are largely fungible and the President consulted with Mr. Clark (which is undisputed) and included him in a three-hour Oval Office debating session on January 3, 2021—a fact artful pleading in the indictment sought to avoid. Mr. Clark is thus entitled by the federal officer removal statute "to present [his] version of the facts to a federal, not a state, court."

*Osborn*, 549 U.S. at 249. The facts of the January 3, 2021 meeting as described in Rosen and Donoghue's testimony (assuming it to be true, *arguendo*) are sufficient to carry Mr. Clark's burden on removal.

The Court also did not address the testimony of Mr. Rosen that while he initially was against Mr. Clark having a briefing with the Director of National Intelligence, John Ratcliffe, he changed his mind "because he [Mr. Clark] was talking to the President." Rosen Depo., Dkt. 30-1 at 129-30. Mr. Rosen also said that Mr. Clark could call the U.S. Attorney in Atlanta to discuss his election investigations. *Id*. at 130. With these two decisions, Mr. Rosen—in addition to the President—put the topic of the election on Mr. Clark's plate, "because he was talking to the President." To the extent that authorization from the Acting Attorney General was required (and we submit that contrary to the popular belief many hold, the chief law enforcement officer of the United States is the President and not the Attorney General), there is sufficient evidence such authorization was given by the Acting Attorney General to clear the "quite low" bar under the second prong of the analysis.

Nor did the Court address the email that Mark Meadows sent to Mr. Rosen asking that Mr. Clark look into signature anomalies on Fulton County absentee ballots. *See* Clark Notice of Filing, Dkt. 43-2. In making that request, Mr. Meadows was obviously speaking for the President, as he described himself as the President's assistant in all matters relating to the federal government. *See, e.g.*, Meadows. Tr. at

14-22. (Exhibit 1 herein). Confirming the point, Mr. Meadows also testified that the President wanted DOJ to look into the signature matching issue in Fulton County. *Id*. at 52, 103, 107. As we demonstrated with Dkt. 43-17 (Exh. 17 attached to our Notice of Filing), in fact Fulton County ***totally failed to do any signature matching at all***, in flagrant violation of Georgia law requiring signature verification on all absentee ballots. O.C.G.A. § 21-2-386(a)(1)(B) & (C) (2020 version). The President was correct to want signature anomalies checked in Fulton County, and Messrs. Rosen and Donoghue were dead wrong to mock and disregard the request.

The notion that DOJ cannot send letters to local election officials cannot withstand scrutiny. Pamela Karlan, Principal Deputy Assistant Attorney General for the Civil Rights Division in the Biden Administration at the time, wrote a letter to the President of the Arizona Senate, with copies to the Arizona Attorney General, Secretary of State, and the Maricopa County Recorder. This letter expressed DOJ "concerns" that the Arizona Senate audit of the 2020 election in Maricopa County violated federal laws enforced by the Department: "The information of which we are aware raises concerns regarding at least two issues of potential non-compliance with federal laws enforced by the Department." *See* https://www.justice.gov/crt/case-document/file/1424586/download (last visited Oct. 9, 2023).

This letter, which is posted on DOJ's website, conclusively refutes any contention that the Department of Justice cannot ever send letters to state officials

about election matters. Such communications are inherent in the concept of federal supremacy and the deep role of the Department of Justice in protecting civil rights in locally administered elections through a broad panoply of investigative and civil and criminal enforcement powers. *See* Dkt. 43-13 through 43-18.

The Supreme Court has repeatedly stressed the need for the courts to use a broad reading of the federal officer removal statute. "The federal officer removal statute is ***not*** 'narrow' or 'limited.' *Colorado v. Symes*, 286 U.S. 510, 517 (1932). At the very least, it is broad enough to cover all cases where federal officers can raise a colorable defense arising out of their duty to enforce federal law." *Willingham v. Morgan*, 395 U.S. 402, 406-07 (1969). The statute and the oft-repeated policy of broad interpretation are to protect the supremacy of the federal government. Mr. Clark was engaged in a quintessential lawyer function in connection with law enforcement—giving legal advice about how to conduct it. This Court appeared not to contest that Mr. Clark is a federal officer but it evaded the question in the September 29 Order of whether Mr. Clark had presented a colorable legal defense. We submit that this issue—the third prong the Eleventh Circuit requires us to meet to remove—is a no-brainer here. Mr. Clark never did anything other than give legal advice. At the appropriate juncture, we will make the arguments that this entitles him to immunity under federal law but all that is necessary at this point is to observe that even if Fulton County could mount an argument to a jury that Mr. Clark gave

advice the Fulton County District Attorney does not like, that is an argument Mr. Clark is entitled at the very least to rebut before a federal jury and not just rebut before a state one. *See* Dkt. 54 (wherein Mr. Clark demands a federal jury trial).

The Court interpreted Section 1442(a)(1) too narrowly, holding Mr. Clark to a standard of proof far above that required to demonstrate entitlement to removal, and did not address or consider evidence clearly sufficient to meet the "quite low" bar of showing that the prosecution is "for or relating to" his "act under color of [his] office." Accordingly, Mr. Clark has shown a strong likelihood of prevailing on the merits on appeal.

B.    DENYING MR. CLARK THE FEDERAL FORUM TO WHICH HE IS ENTITLED WOULD CAUSE IRREPARABLE HARM BY DEFEATING THE CONGRESSIONAL DIRECTIVE TO HOLD MERITS PROCEEDINGS ONLY IN AN ARTICLE III FORUM USING A FEDERAL JURY AND/OR FEDERAL JUDGE.

Permitting the prosecution of Mr. Clark to move forward during the pendency of this appeal would irreparably deprive him of his right to have his federal defenses adjudicated in an Article III forum by federal decisionmakers—*i.e.*, an Article III Judge for threshold legal defenses and a federal jury for any remaining factual disputes. If the Superior Court of Fulton County is permitted to proceed to the merits based on an assumption of hypothetical jurisdiction, the congressional intent of Section 1442 will be overthrown—not to mention engender wasted time, trouble, judicial resources, and expense, should Mr. Clark prevail in removal after extensive

pre-trial or trial proceedings in Fulton Superior Court. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998); *Waleski v. Montgomery, McCracken, Walker & Rhoads, LLP*, 143 S. Ct. 2027 (2023) (Thomas, Gorsuch, and Barrett, JJ., dissenting from denial of *certiorari*); *Kaplin v. Central Bank of the Islamic Republic of Iran*, 896 F.3d 501 (D.C. Cir. 2018); *id.* at 517 (Edwards, J., concurring) (expressing his "concern" that the D.C. Circuit's "*Kramer*/*Chalabi* [watered-down] interpretation of *Steel Co.* appears to conflict with current Supreme Court precedent.")

On the merits, but plainly of some relevance to the jurisdictional analysis and this Motion for Stay, clear principles of federal supremacy and federalism prohibit the State from intruding into the most exclusive conclaves of the President of the United States while huddled with his senior legal advisors concerning how to exercise his core Article II law enforcement powers. *See* U.S. Const., art. II, § 3 ("[H]e [the President] shall take Care that the Laws be faithfully executed").

If the prosecution in Fulton Superior Court is not stayed (on a mandatory or discretionary basis), then Mr. Clark will also be put through local litigation that will irreparably harm his reputation, as printed news stories, blog entries, TV spots, YouTube rants, and other forms of media are constantly attacking him. This is especially true because the Fulton Superior Court broadcasts its hearings and trials on YouTube. The many peals of such bells cannot be un-rung and they will simply mount up more and more jury pool poisoning to Mr. Clark's detriment. Even beyond

Mr. Clark's special rights as a federal officer to a federal forum in which to defend himself, stay is warranted to avoid that irreparable harm.

The Court should rescind its acceptance of the State's invitation to open Pandora's Box. For instance, reasoning similar to that of the Court's September 29 Order could be used by state prosecutors against federal judges they disagree with and, as long as they could find a federal judge to remand on the basis that not enough evidence was adduced to support that the defendant federal judge was acting "in his lane" and for the right motives. Such a federal judge could find him or herself having to defend in a hostile state court forum. This would tear to shreds not just Section 1442 removal rights but the very supremacy of the federal government.

## C.  THERE WOULD BE NO PREJUDICE TO THE STATE FROM A STAY.

The State would not be prejudiced by a stay because it is inherent in the Supremacy Clause that States entered the Union knowing they would be subject to federal judicial forums and adjudications. Moreover, the State is so far outside of its lane here as to be driving an off-road dune buggy. It has no right to enforce state criminal law against a senior legal officer of the United States over a letter never sent, and therefore cannot suffer any prejudice from a stay.

## D.  THE PUBLIC INTEREST SUFFERS IF THE STAY IS NOT GRANTED.

Allowing appeal as of right is a relatively recent addition to the long history

of the federal officer removal statutes. *See* Pub. L. 112-239, 126 Stat. 1969, § 1087 (Jan. 2, 2013). By so providing, Congress has concluded that the public interest is served by preserving the structure of the relationship between the state or local governments, on the one hand, and the federal government, on the other, during the pendency of the appeal. That federalism interest is embodied in the Supremacy Clause. A stay pending appeal in this case will vindicate federal supremacy by preventing a politically hostile local government from penetrating into and/or second-guessing discretionary discussions or decisions at the highest levels of the Executive Branch.

## CONCLUSION

This Court should order a stay pending appeal for the entire duration of appellate proceedings or, in the alternative, at least until October 30, 2023. It is required to undertake to issue a mandatory stay (of varying durations) under *Coinbase* (*see supra* Part III), *BP/*Section 1446(d) (*see supra* Part IV), and Rule 62(a) (*see supra* Part II). Finally, a discretionary stay under the traditional four-part test of equity would also justify granting a stay for the entire duration of appellate proceedings. *See supra* Part V. And we respectfully request that the Court either confirm a mandatory stay or grant a discretionary stay on or before October 13, 2023, as a stay grant could obviate our having to brief stay issues at the Eleventh Circuit.

Respectfully submitted, this 9th day of October, 2023.

**CALDWELL, CARLSON,
ELLIOTT & DELOACH, LLP**

/s/ Harry W. MacDougald
Harry W. MacDougald
Ga. Bar No. 463076
Two Ravinia Drive
Suite 1600
Atlanta, GA 30346
(404) 843-1956
hmacdougald@ccedlaw.com

**BERNARD & JOHNSON, LLC**

/s/ Catherine S. Bernard
Catherine S. Bernard
Ga. Bar No. 505124
5 Dunwoody Park, Suite 100
Atlanta, Georgia 30338
Direct phone: 404.432.8410
catherine@justice.law

Attorneys for Jeffrey B. Clark

## CERTIFICATE OF COMPLIANCE WITH L.R. 5.1

The undersigned hereby certifies that this filing was prepared in the Times New Roman size 14 font in compliance with L.R. 5.1.

This this 9th day of October, 2023.

> */s/ Harry W. MacDougald*
> Georgia Bar No. 463076
> *Attorney for Defendant*

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing ***Motion for Stay Pending Appeal*** was hereby filed on this 9 day of October, 2023 with the Court's electronic filing system which causes service to be made upon all counsel of record.


This 9th9 day of October, 2023.

> */s/ Harry W. MacDougald*
> Georgia Bar No. 463076
> *Attorney for Defendant*

CALDWELL, CARLSON, ELLIOTT & DELOACH LLP
Two Ravinia Drive, Suite 1600
Atlanta, Georgia 30346
(404) 843-1956
hmacdougald@ccedlaw.com